UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE
_____
                                                      )
ELYSIUM TILES, INC., and ELYSIUM TILE      )
FLORIDA, INC.,                                        )
                                                      )
                        Plaintiffs,                   )
                                                      )
            v.                                        )        Court No. 23-00041
                                                      )
UNITED STATES,                                        )
                                                      )
                        Defendant,                    )
                                                      )
            and                                       )
                                                      )
THE COALITION FOR FAIR TRADE IN             )
CERAMIC TILE,                                         )
                                                      )
                        Defendant-Intervenor.         )
_____)

## DEFENDANT'S RESPONSE TO PLAINTIFFS'
## MOTION FOR JUDGMENT UPON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:
Vania Wang
Attorney
U.S. Department of Commerce
Office of the Chief Counsel
  for Trade Enforcement and
Compliance Washington, D.C.


December 13, 2023

CHRISTOPHER A. BERRIDGE
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-0537
E-mail: Christopher.Berridge@usdoj.gov

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGES**

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION
FOR JUDGMENT UPON THE AGENCY RECORD.......................................................1

STATEMENT PURSUANT TO RULE 56.2 ..................................................................2

    I.    The Administrative Determination Under Review.......................................2

    II.    Issue Presented For Review .......................................................................2

STATEMENT OF THE FACTS .....................................................................................2

    I.    The Antidumping and Countervailing Duty Orders....................................2

    II.    Description of Composite Tile .....................................................................3

    III.    Scope Proceeding........................................................................................3

SUMMARY OF THE ARGUMENT ...............................................................................5

ARGUMENT ..................................................................................................................6

    I.    Standard Of Review.....................................................................................6

    II.    Commerce's *Ex Parte* Visit Was Lawful ...................................................8

    III.    Commerce's Memorandum Summarizing the *Ex Parte* Visit Was More
        Than Adequate…………………………………………………………13

    IV.    Commerce's Determination That The Composite Tile Imported By
        Elysium Is Covered By The Orders Is Lawful And Supported By
        Substantial Evidence ................................................................................14

CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGES**

*Am. Silicon Techs. v. United States*,
    261 F.3d. 1371 (Fed. Cir. 2001) ...................................................................... 7

*Bernklau v. Principi*,
    291 F.3d 795 (Fed. Cir. 2002) ...................................................................... 11

*Bridgestone Ams., Inc. v. United States*,
    710 F. Supp. 2d 1359 (Ct. Int'l Trade 2010) ...................................... 9, 11, 12

*Carolina Tobacco Co. v. Bureau of Customs & Border Prot.*,
    402 F.3d 1345 (Fed. Cir. 2005) .................................................................... 14

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938) ........................................................................................ 7

*Corus Staal BV v. Dep't of Commerce*,
    395 F.3d 1343 (Fed. Cir. 2005) ...................................................................... 6

*Corus Staal BV v. United States*,
    502 F.3d 1370 (Fed. Cir. 2007) .................................................................... 19

*Crawfish Processors Alliance v. United States*,
    483 F.3d 1358 (Fed. Cir. 2007) ...................................................................... 7

*Dillinger France S.A. v. United States*,
    350 F. Supp. 3d 1349 (Ct. Int'l Trade 2018) .............................................. 19

*Duferco Steel, Inc. v. United States*,
    296 F.3d 1087 (Fed. Cir. 2002) .................................................................... 14

*Fedmet Resources Corp. v. United States*,
    755 F.3d 912 (Fed. Cir. 2014) ...................................................................... 7

*FPC v. Transcon. Gas Pipe Line Corp.*,
    423 U.S. 326 (1976) ........................................................................................ 8

*Fresh Garlic Producers Ass'n v. United States*,
    Consol. Ct. No. 14-00180, Slip Op. 17-127 (Ct. Int'l Trade Sept. 19, 2017) ............... 9

*Fujitsu Gen. Ltd. v. United States*,
    88 F.3d. 1034 (Fed. Cir. 1996) ...................................................................... 7

*Gilmore Steel Corp. v. United States*,
    585 F. Supp. 670 (Ct. Int'l Trade 1984) ...................................................... 12

*Global Commodity Group LLC v. United States,*
    709 F.3d 1134 (Fed. Cir. 2013) ............................................................. 7

*Goldlink Indus. Co. v. United States,*
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ..................................... 7

*Hung Vuong Corp. v. United States,*
    483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020) ..................................... 8

*Husteel Co. v. United States,*
    180 F. Supp. 3d 1330 (Ct. Int'l Trade 2016) .............................. 9, 10

*Jazz Photo Corp. v. United States,*
    439 F.3d 1344 (Fed. Cir. 2006) ........................................................... 10

*King Supply Co. LLC v. United States,*
    674 F.3d 1343 (Fed. Cir. 2012) ............................................................. 7

*Mid Continent Nail Corp. v. United States,*
    725 F.3d 1295 (Fed. Cir. 2013) ............................................................. 7

*Mittal Steel Point Lisas Ltd. v. United States,*
    548 F.3d 1375 (Fed. Cir. 2008) ..................................................... 18, 19

*Navigator Co., S.A. v. United States,*
    463 F. Supp. 3d 1302 (Ct. Int'l Trade 2020) ................................... 19

*PAM S.p.A. v. United States,*
    463 F.3d 1345 (Fed. Cir. 2006) ........................................................... 12

*PSC VSMPO-Avisma Corp. v. United States,*
    688 F.3d 751 (Fed. Cir. 2012) ............................................................... 8

*Royal Brush Mfg., Inc. v. United States,*
    75 F.4th 1250 (Fed. Cir. 2023) ............................................................. 9

*Sandvik Steel Co. v. United States,*
    164 F.3d 596 (Fed. Cir. 1998) ...................................................... 7, 18

*Sango Int'l L.P. v. United States,*
    484 F.3d 1371 (Fed. Cir. 2007) ........................................................... 6

*SEC v. Chenery Corp.,*
    332 U.S. 194 (1947) ............................................................................... 8

*Spezzaferro v. Fed. Aviation Admin.,*
    4807 F.2d 169 (Fed. Cir. 1986) ......................................................... 11

*Stanley Works (Langfang) Fastening Sys., Ltd. v. United States*,
    279 F. Supp. 3d 1172 (Ct. Int'l Trade 2017) ............................................... 18

*Stupp Corp. v. United States,*
    5 F.4th 1341 (Fed. Cir. 2021) ............................................................ 8

*Suntec Indus. Co. v. United States*,
    857 F.3d 1363 (Fed. Cir. 2017) ......................................................... 12

*Timken Co. v. Regan*,
    552 F. Supp. 47 (Ct. Int'l Trade 1982) ............................................. 12

*Universal Camera Corp. v. NLRB*,
    340 U.S. 474 (1951) ........................................................................ 7

*Valeo N. Am., Inc. v. United States*,
    610 F. Supp. 3d 1322 (Ct. Int'l Trade 2022) ................................... 13

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) ........................................................................ 8

## STATUTES

19 U.S.C. § 1516a(a)(2)(B)(vi) ............................................................. 7

19 U.S.C. § 1561a(b)(1) ......................................................................... 7

19 U.S.C. § 1561a(b)(1)(B) .................................................................... 7

19 U.S.C. § 1677f(a)(3) .......................................................................... 7

## REGULATIONS

19 C.F.R. § 351.104(b) .......................................................................... 8

19 C.F.R. § 351.225 .............................................................................. 20

19 C.F.R. § 351.225(a) .......................................................................... 20

19 C.F.R. § 351.225(k)(1) ...................................................................... 8

## RULES

Rule 56.2 of the United States Court of International Trade ...................... 1, 3

## ADMINISTRATIVE DETERMINATIONS

*Ceramic Tile From the People's Republic of China*,
    85 Fed. Reg. 33,089 (Dep't of Commerce June 1, 2020) ............................. 2, 3, 15, 16, 18

*Ceramic Tile From the People's Republic of China*,
    85 Fed. Reg. 33,119 (Dep't of Commerce June 1, 2020) ............................. 2, 3, 15, 16, 18

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

_____

|  |  |  |
|---|---|---|
| ELYSIUM TILES, INC., and ELYSIUM TILE FLORIDA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Court No. 23-00041 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE COALITION FOR FAIR TRADE IN CERAMIC TILE, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

_____)

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Pursuant to Rule 56.2 of this Court's Rules, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiffs Elysium Tile, Inc. and Elysium Tile Florida, Inc (collectively, Elysium). Plaintiffs challenge two aspects of the Department of Commerce's (Commerce) final scope ruling finding that the composite tile imported by Elysium is within the scope of the antidumping and countervailing duty orders on ceramic tile from the People's Republic of China. As demonstrated below, Commerce's scope ruling is supported by substantial evidence and otherwise in accordance with law, and thus should be sustained.

<u>**STATEMENT PURSUANT TO RULE 56.2**</u>

**I.**     <u>**Administrative Determination Under Review**</u>

The administrative determination under review is Ceramic Tile from the People's Republic of China: Final Scope Ruling on Elysium's Composite Tile (Dep't of Commerce Jan. 25, 2023) (Final Scope Ruling), (P.R. 40).[1]

**II.**     <u>**Issue Presented For Review**</u>

1.     Whether Commerce's *ex parte* visit was lawful and whether Commerce's *ex parte* memorandum was adequate.

2.     Whether Commerce's scope ruling, finding Elysium's composite tile within the scope of the antidumping and countervailing duty orders, was lawful and supported by substantial evidence.

<u>**STATEMENT OF FACTS**</u>

**I.**     <u>**The Antidumping And Countervailing Duty Orders**</u>

On June 1, 2020, Commerce issued antidumping and countervailing duty orders on ceramic tile from the People's Republic of China. *Ceramic Tile From the People's Republic of China*, 85 Fed. Reg. 33,089 (Dep't of Commerce June 1, 2020) (AD order); *Ceramic Tile From the People's Republic of China*, 85 Fed. Reg. 33,119 (Dep't of Commerce June 1, 2020) (CVD order) (collectively, the *Orders*).  Commerce defined the scope of the *Orders*, in relevant part, as follows:

> The merchandise covered by these *Orders* is ceramic flooring tile, wall tile, paving tile, hearth tile, porcelain tile, mosaic tile, flags, finishing tile, and the like (hereinafter ceramic tile). Ceramic tiles are articles containing

---
[1]  Citations to the public record (P.R.) and confidential record (C.R.) refer to the record of the underlying administrative review.  ECF No. 19.  This brief does not contain any confidential information.

a mixture of minerals including clay (generally hydrous silicates of alumina or magnesium) that are fired so the raw materials are fused to produce a finished good that is less than 3.2 cm in actual thickness. All ceramic tile is subject to the scope regardless of end use, surface area, and weight, regardless of whether the tile is glazed or unglazed, regardless of the water absorption coefficient by weight, regardless of the extent of vitrification, and regardless of whether or not the tile is on a backing. Subject merchandise includes ceramic tile with decorative features that may in spots exceed 3.2 cm in thickness and includes ceramic tile "slabs" or "panels" (tiles that are larger than 1 meter$^2$ (11 ft.$^2$)).

Subject merchandise includes ceramic tile that undergoes minor processing in a third country prior to importation into the United States. Similarly, subject merchandise includes ceramic tile produced that undergoes minor processing after importation into the United States. Such minor processing includes, but is not limited to, one or more of the following: Beveling, cutting, trimming, staining, painting, polishing, finishing, additional firing, or any other processing that would otherwise not remove the merchandise from the scope of the *Orders* if performed in the country of manufacture of the in-scope product.

*Orders* at Appendix.

## II.    Description Of Composite Tile

The product covered by Commerce's scope ruling is composite tile made of multiple layers of material. Scope Application at Attachment II (P.R. 8). The base layer is made from porcelain, a vitrified ceramic. *Id.* The middle layer consists of an aviation grade epoxy which is used to permanently bond the base layer to the top layer. *Id.* The top layer consists of marble. *Id.* The tile is approximately 12 to 15 mm thick. *Id.* The tile is produced in six sizes – 300 by 300 mm, 300 by 600 mm, 600 by 600 mm, 800 by 400 mm, 800 by 800 mm, and 1200 by 600 mm. *Id.*

## III.    Scope Proceeding

Elysium filed a scope application on April 11, 2022, but Commerce rejected the application because the Coalition of Fair Trade in Ceramic Tile (Coalition), a person on the inquiry service list entitled to service, was not served in accordance with the regulations.

Rejected Scope Application (Apr. 11, 2022) (P.R. 1) (C.R. 1); April 28 Coalition Letter (Apr. 28, 2022) (P.R. 2). Commerce requested proof of service from Elysium, but Elysium did not respond, and Commerce rejected the scope application but allowed for re-filing. Proof of Service Request (May 9, 2022) (P.R. 3); Rejection Letter (May 12, 2022) (P.R. 4). On May 24, 2022, Elysium refiled its scope application with an explanation regarding service. Scope Application (P.R. 8-12) (C.R. 2-6). On the same day, the Coalition filed its explanation regarding service. May 24 Coalition Letter (May 24, 2022) (P.R. 13).

On June 2, 2022, Commerce initiated a scope inquiry to determine whether Elysium's composite tile is covered by the *Orders*. Initiation Memorandum (June 2, 2022) (P.R. 15). On July 5, 2022, the Coalition filed its response to Elysium's scope application. July 5 Coalition Response (July 5, 2022) (P.R. 21). On July 19, 2022, Elysium filed a reply with rebuttal information to the Coalition's response. July 19 Elysium Response (July 19, 2022) (P.R. 24) (C.R. 7).

On September 20, 2022, Commerce officials visited the production facilities of Florida Tile, Inc. (Florida Tile), a member of the Coalition, located in Lawrenceburg, Kentucky. Memorandum of *Ex Parte* Meeting (Sept 26, 2022) (P.R. 26). During the visit, Commerce officials received a tour of Florida Tile's operations and participated in a question and answer session with Florida Tile's employees. *Id.* On September 26, 2022, Commerce issued a memorandum documenting the September 20, 2022 visit to Florida Tile's factory and provided a list of participants from Commerce and Florida Tile. *Id.*

On September 27, 2022, Commerce issued a supplemental questionnaire to Elysium in response to Elysium's rebuttal information. Supplemental Questionnaire (Sept. 27, 2022) (P.R. 27). On October 11, 2022, Elysium filed its supplemental questionnaire response. Supplemental

Questionnaire Response (Oct. 11, 2022) (P.R. 31) (C.R. 8). On the same day, Elysium also filed an objection to the September 20, 2022 *ex parte* visit and requested an *ex parte* meeting with Commerce. Elysium Objection (Oct. 11, 2022) (P.R. 32). Commerce did not grant an *ex parte* meeting to Elysium.

On October 25, 2022, the Coalition filed comments on Elysium's supplemental questionnaire response. Coalition Supplemental Questionnaire Comments (Oct. 25, 2022) (P.R. 33) (C.R. 9). On November 1, 2022, Elysium filed a reply to the Coalition's comments. Nov. 1 Elysium Response (Nov. 1, 2022) (P.R. 36). On January 25, 2023, Commerce issued a final scope ruling, determining that the composite tile imported by Elysium is within the scope of the *Orders*. Final Scope Ruling at 1 (P.R. 40).

This lawsuit followed.

## SUMMARY OF THE ARGUMENT

The Court should sustain Commerce's final scope ruling because it is in accordance with the law and supported by substantial evidence. Commerce's *ex parte* visit to the production facility of a producer, which was a member of the petitioning party, was lawful, and the memorandum summarizing the visit was more than adequate to inform Elysium of the nature of the visit. Ultimately, Commerce's final scope ruling and analysis was based upon the evidence and arguments made on the record, not its visit to the production facility. Although Elysium speculates that the domestic producer provided "secret" information at Commerce's on-site visit (Pl. Br. at 22), there is no indication that Commerce received information or argument that was not on the record when Commerce made its final scope ruling, and Commerce followed the statute and its regulations in issuing the memorandum regarding the *ex parte* visit in a timely and adequate manner. Even if the Court finds that there was an error either in the factory visit or the

subsequent memorandum, Elysium has not demonstrated that it suffered any material prejudice by the visit or the memorandum.

Additionally, Commerce's final scope ruling finding that Elysium's composite tile was within scope was both lawful and supported by substantial evidence. The plain language of the scope includes porcelain tiles as a type of ceramic tile, and also includes ceramic tiles with decorative features. Elysium's composite tile is composed of a porcelain layer, epoxy glue, and a visible marble layer. Therefore, Commerce reasonably found that the porcelain layer was a ceramic tile and that the marble layer was a decorative feature. Commerce found that the additional steps taken to glue the marble layer to the porcelain layer constituted minor processing covered by the scope, and the physical characteristics of Elysium's composite tiles are substantially similar to ceramic tiles. Accordingly, Commerce's scope ruling should be sustained, and Elysium's motion should be denied.

<b>ARGUMENT</b>

I.    <u>Standard Of Review</u>

The Court may review a determination by Commerce as to "whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi). Such a "class or kind" determination is known as a "scope ruling." 19 C.F.R. § 351.225. In reviewing Commerce's scope determinations, the court "must uphold a scope ruling unless [it finds the ruling] to be 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1378 (Fed. Cir. 2007) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *Corus Staal BV v. Dep't of Commerce*, 395 F.3d 1343, 1346 (Fed. Cir. 2005). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.'" *Crawfish Processors Alliance v. United States*, 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) ("[s]ubstantial evidence is more than a mere scintilla").

But "[e]ven if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996)). "[T]he Court may not substitute its judgment for that of the [agency] when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citations and internal quotations omitted).

In undertaking its analysis, the Court grants "'significant deference to Commerce's interpretation of a scope order,' so long as Commerce's interpretation is not 'contrary to the order's terms,' and does not 'change the scope of the order.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (quoting *Global Commodity Group LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)). This is because scope rulings involve "'a highly fact intensive and case-specific determination.'" *Fedmet Resources Corp. v. United States*, 755 F.3d 912, 918 (Fed. Cir. 2014) (quoting *King Supply Co. LLC v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012)). Thus, scope rulings are "particularly within the expertise of [Commerce]." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998).

Moreover, "[a]bsent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue

methods of inquiry capable of permitting them to discharge their multitudinous duties." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (quoting *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543-44 (1978)). Courts will thus "defer to the judgment of an agency regarding the development of the agency record." *Id.* "To do otherwise would run the risk of propelling the courts into the domain which Congress has set aside exclusively for the administrative agency." *Id.* (quoting *FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (cleaned up)); *see also Stupp Corp. v. United States*, 5 F.4th 1341, 1350 (Fed. Cir. 2021).

## II.  **Commerce's *Ex Parte* Visit Was Lawful**

Commerce's *ex parte* visit was lawful because it was permitted by both the statute and regulations and Commerce recorded the *ex parte* visit and timely placed on the record the memorandum documenting the visit. Commerce's nonparticipation in a separate meeting with Elysium after one was requested was similarly consistent with the statute and regulations. However, even if this Court were to find the denial of an *ex parte* meeting to Elysium to be a procedural irregularity, it did not materially prejudice Elysium during the scope proceedings.

The presumption in the conduct of an administrative proceeding is that Commerce has followed its statutory and regulatory obligations. *See Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321, 1344-45 (Ct. Int'l Trade 2020) (setting forth the presumption of good faith that attaches to official action). Pursuant to 19 U.S.C. § 1677f(a)(3), Commerce is permitted to have *ex parte* communications with parties provided that a record of such communication is maintained and made available. 19 U.S.C. § 1677f(a)(3). *See also* 19 C.F.R. § 351.104(b) (requiring the placement of memoranda of *ex parte* meetings on the administrative record). This Court has found that Commerce's *ex parte* communication is proper when Commerce complies with its statutory duties and regulations to maintain a record of all *ex parte* communications. *See*

*e.g., Husteel Co. v. United States*, 180 F. Supp. 3d 1330, 1340 (Ct. Int'l Trade 2016);

*Bridgestone Ams., Inc. v. United States*, 710 F. Supp. 2d 1359, 1367 (Ct. Int'l Trade 2010);

*Fresh Garlic Producers Ass'n v. United States*, Consol. Ct. No. 14-00180, Slip Op. 17-127 (Ct. Int'l Trade Sept. 19, 2017).

Elysium attempts to distinguish Commerce's ability to grant *ex parte* meetings in scope proceedings from granting *ex parte* meetings in Commerce's investigations or antidumping duty and countervailing duty reviews, but provides no statutory text, implementing regulations, nor case law to support this distinction. Pl. Br. at 22. Elysium relies instead on general principles of administrative due process in *Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1257 (Fed. Cir. 2023); Pl. Br. at 22. But Elysium's reliance on *Royal Brush* is misplaced; as explained below, Commerce did not redact or otherwise fail to provide Elysium access to materials on the record for which it would later use to inform its scope ruling. The *Royal Brush* Court was concerned with the importer's lack of ability during the administrative process before a different agency to confront redacted record evidence that was eventually used to determine that it was violating antidumping duties. 75 F.4th at 1262. Here, not only did Commerce promptly inform Elysium of the *ex parte* visit, it also summarized the visit showing no factual information related to the scope inquiry was given to Commerce during the visit in a memorandum. Further, Commerce did not use any information it gleaned in the *ex parte* visit in making its ruling.

On September 20, 2022, Commerce officials visited the production facilities of Florida Tile. Commerce's visit "included a tour of Florida Tile's operations and a question and answer session with Florida Tile employees." Memorandum of *Ex Parte* Meeting. Because Florida Tile is a member of the Coalition, and the Coalition is the petitioner in the ceramic tile from China order and a participant in the scope inquiry, on September 26, 2022, Commerce promptly placed

on the record a memorandum summarizing the visit and listing the persons present at the meeting. *Id.* Thus, Commerce complied with both the statute and its regulations regarding *ex parte* communications.

Elysium argues that Commerce should not have conducted an *ex parte* visit because the *ex parte* visit allowed for discussion of "secret" information related to the production process for composite tile. Pl. Br. at 22. Elysium also argues that Commerce usually does not visit production facilities in scope rulings, which means that Florida Tile must have given Commerce more than legal arguments. *Id.* This is pure speculation. There is nothing in the record to indicate that "secret" information was given during the visit and that the visit was otherwise improper. As support for its speculation, Elysium contends that because Florida Tile does not produce the same type of composite tile that Elysium produces, Florida Tile would not have the equipment or technical expertise to provide meaningful information about Elysium's composite tile. Pl. Br. at 23. Because of this, Elysium argues, Commerce's visit would have only served as a pretextual vehicle for speculation and "secret" information. *Id.* But in advancing this argument, Elysium instead opts for the presumption of bad faith and plainly ignores Commerce's representations that it received a tour of Florida Tile's oeprations and participated in a question and answer session with Florida Tile employees.

Jumping to this conclusion, however, is not only inconsistent with the facts, but also inconsistent with the law. "It is presumed that Commerce complies with statutes and regulations and in this case, the statute, [19 U.S.C. § 1677f(a)(3)] specifies that if new factual information is submitted during an *ex parte* meeting, it must be indicated in the summary." *Husteel Co.*, 180 F. Supp. at 1340. *See also Jazz Photo Corp. v. United States,* 439 F.3d 1344, 1351 (Fed. Cir. 2006) ("In the absence of clear evidence to the contrary, the doctrine presumes that public officers have

properly discharged their official duties") (quoting *Bernklau v. Principi,* 291 F.3d 795, 801 (Fed. Cir. 2002)).  There is nothing to indicate that factual information or arguments that were related to the scope proceeding and not otherwise on the record were given to Commerce during the *ex parte* visit.  Therefore, absent evidence to the contrary, it can be presumed that Commerce did not receive any "secret" information or arguments to summarize in the memorandum of the *ex parte* visit.

Elysium further argues that Commerce's willingness to hold an *ex parte* visit with one of the members of the petitioning party and Commerce's refusal to hold an *ex parte* meeting with Elysium gives an impression of favoritism.  Pl. Br. at 23-24.   It contends that with a separate *ex parte* meeting, Elysium could have discussed its production process and addressed any "misinformation" presented in the *ex parte* meeting with Florida Tile.  *Id.* at 24.  Additionally, Elysium submits that "Commerce's longstanding Department practice" is to offer an *ex parte* meeting to other parties if Commerce grants an *ex parte* meeting with one party, and so Commerce's denial of an *ex parte* meeting to Elysium compromised the scope ruling process. *Id.*

However, allegations of favoritism "that are merely speculative or unsubstantiated are insufficient."  *Bridgestone Ams.*, 710 F. Supp. 2d at 1367 (citing *Spezzaferro v. Fed. Aviation Admin.*, 807 F.2d 169, 173 (Fed. Cir. 1986)).  Despite overtures decrying favoritism, Elysium offers only mere speculation to substantiate its claim.  Pl. Br. at 23-24.  As explained above, Commerce did not receive any secret information about the production process of composite tile. Indeed, in making its final scope ruling, Commerce expressly relied only upon the factual information and arguments placed on the record.  *See* Final Scope Ruling at 7-10.  Commerce's final scope ruling does not reference the *ex parte* visit or accompanying memorandum.  *Id.*

Further, Commerce's decision not to grant an *ex parte* meeting with Elysium is within Commerce's discretion; it is not required by either the statute or the regulations to grant *ex parte* meetings with each party, even if it has offered to do so in past scope rulings. *See e.g.*, *Bridgestone*, 710 F. Supp. 2d at 1367. Considering Commerce did not gather any new factual information or arguments for the scope proceeding during the *ex parte* visit with Florida Tile, it follows that there would have been no need to grant an *ex parte* visit with Elysium in an attempt to, as Elysium states, "address any 'misinformation" or rebut "unsound arguments." Pl. Br. at 23-24. Thus, without evidence to the contrary, Elysium's favoritism claims are unfounded and unsupported by the record.

Assuming *arguendo* that Commerce's *ex parte* visit with Florida Tile or the lack thereof with Elysium were somehow procedural irregularities, Elysium must also demonstrate material prejudice. *See Bridgestone Ams.,* 710 F. Supp. 2d at 1367 (citing *Gilmore Steel Corp. v. United States*, 585 F. Supp. 670, 679 (Ct. Int'l Trade 1984). *See also Timken Co. v. Regan*, 552 F. Supp. 47, 52 (Ct. Int'l Trade 1982) ("It is basic that procedural irregularities by an administrative agency are not per se prejudicial. . . . Material prejudice to the interests of the complaining party must clearly appear.") (internal citations omitted). Additionally, the Federal Circuit has applied traditional harmless error analysis in evaluating procedural errors and explained that a person seeking relief "has the burden of showing prejudice caused by the error." *Suntec Indus. Co. v. United States*, 857 F.3d 1363, 1368-72 (Fed. Cir. 2017) (finding lack of prejudice based on notice error); *PAM S.p.A. v. United States*, 463 F.3d 1345, 1347-49 (Fed. Cir. 2006). In this case, Elysium has not demonstrated how it was materially prejudiced. Elysium's arguments regarding non-record information or scope proceeding arguments are based upon speculation and are otherwise unsupported. Elysium was able to respond to all the arguments and factual

information related to the scope inquiry that Commerce considered in its scope ruling. It is

Commerce's evaluation of these arguments and factual information that the Court reviews in this

case. *See* 19 U.S.C. 1516a(b)(1) (stating that the standard of review is substantial evidence on

the record and otherwise in accordance with law). Thus, to the extent that the Court finds that

the *ex parte* visit with one of the Coalition's members and lack thereof with Elysium was an

error, Elysium was not materially prejudiced by the error.

### III.    Commerce's Memorandum Summarizing the *Ex Parte* Visit Was More Than Adequate_____

Commerce's memorandum adequately summarized the *ex parte* visit to Florida Tile

because Commerce complied with the statute and its regulations. The statute requires Commerce

to "maintain a record of any ex parte meeting between . . . interested parties" and the agency "if

information relating to proceeding was presented or discussed at such meeting." 19 U.S.C. §

1677f(a)(3). "The record of such an ex parte meeting shall include the identity of the persons

present at the meeting, the date, time, and place of the meeting, and a summary of the matters

discussed or submitted. The record of the ex parte meeting shall be included in the record of the

proceeding." *Id.* The summary of the matters discussed is not required to be fulsome. *Valeo N.*

*Am., Inc. v. United States*, 610 F. Supp. 3d 1322, 1343 (Ct. Int'l Trade 2022).

Here, on September 26, 2022, Commerce issued a memorandum regarding the *ex parte*

visit on September 20, 2022 to Florida Tile. Memorandum of *Ex Parte* Meeting. In accordance

with the statute, the memorandum documented that the Coalition was a participant in the scope

inquiry, that Commerce's visit "included a tour of Florida Tile's operations and a question and

answer session with Florida Tile employees," and also provided a detailed list of participants. *Id.*

Elysium argues that because the *ex parte* visit was a tour of a production facility, the

Court can assume that the *ex parte* meeting discussed factual information and arguments

germane to this scope ruling, and that because of the inadequate summary, Elysium was prejudiced by being unable to comment. Pl. Br. at 26. However, as explained above, this is merely speculation and such a presumption is contrary to law. *Husteel*, 180 F. Supp. 3d at 1340. *See also Carolina Tobacco Co. v. Bureau of Customs & Border Prot.*, 402 F.3d 1345, 1350 (Fed. Cir. 2005) ("Government officials are presumed to do their duty, and one who contends they have not done so must establish that defect by 'clear evidence.'") (citations omitted)). Elysium disregards the simplest and most reasonable explanation for the lack of details of the production process for composite tile in the memorandum: no such information was exchanged during the *ex parte* visit. Had factual information or arguments been exchanged, Elysium would have been informed of this exchange in the summary of the *ex parte* meeting and would have had a chance to respond. Accordingly, both the *ex parte* meeting and the memorandum summarizing the meeting complied with the statute and regulations and thus do not merit disturbing Commerce's final scope ruling.

**IV.** **Commerce's Determination That The Composite Tile Imported By Elysium Is Covered By The *Orders* Is Lawful And Supported By Substantial Evidence**

Commerce's scope ruling finding that the composite tile imported by Elysium was within the scope of the *Orders* is lawful and supported by substantial evidence because the plain language of the scope, which explicitly includes ceramic tile with decorative features, covers Elysium's composite tile.

Commerce is often called upon to determine whether a product is included within the scope of an antidumping or countervailing duty order because it necessarily writes scope language in general terms. *See* 19 C.F.R. § 351.225(a); *see also Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1096 (Fed. Cir. 2002). Commerce's scope determinations concerning a particular product are made in accordance with its regulations. *See* 19 C.F.R. § 351.225. Under

Commerce's regulations, Commerce examines the scope language of the order or orders at issue and the description of the product contained in the scope ruling application, and in determining whether a product is covered by the scope, "Commerce will consider the language of the scope and may make its determination on this basis alone if the language of the scope, including the descriptions of merchandise expressly excluded from the scope, is dispositive." 19 C.F.R. § 351.225(k)(1).

Here, Commerce found that Elysium's composite tile consists of layers of porcelain tile, epoxy glue, and marble. Scope Ruling at 7. Because the porcelain tile layer is vitrified ceramic tile and the *Orders* explicitly cover porcelain tile, Commerce found that the porcelain tile layer would be subject to the *Orders* if imported alone. *Id.* at 7-8. Commerce then looked at the composite tile as a whole and found that the marble layer is a decorative feature, which does not remove the ceramic tile from the scope of the *Orders*. *Id.* at 8. The scope states that "[s]ubject merchandise includes ceramic tile with decorative features that may in spots exceed 3.2 cm in thickness…." *Orders* at Appendix. The marble layer enhances the appearance, providing the look and feel of a marble surface, but the composite tile retains many of the same qualities as ceramic tile. Scope Ruling at 8. Both composite tile and ceramic tile function as "high-strength, light-weight, easily installed flooring options" and are similarly installed on floors and walls. Scope Ruling at 8 (citing Scope Application at Attachment II, page 5 and Exhibit 2). Both composite tile and the ceramic tile have a similar weight, have non-porous and non-absorbent bases, are similarly durable, and are similarly easy to maintain. Scope Ruling at 8. *See also* July 19 Elysium Response at 5-6.

Elysium argues that Commerce improperly expanded the scope of the *Orders*. Pl. Br. at 28. Specifically, Elysium argues that the language of the *Orders* describes a firing of raw

materials to produce a finished good and that the porcelain base is not a finished good, and further that the finished good is the composite tile, which is not fired. *Id.* Elysium also argues that firing would destroy the finished product, and the Coalition stated that firing was a critical point in the investigation. *Id*. at 28-29. However, Commerce explained that "it is not necessary for a tile to undergo a second firing after additional processing in order to be considered subject merchandise." Scope Ruling at 9. Ceramic tiles are defined in the scope of the *Orders* as "articles containing a mixture of minerals…that are fired so the raw materials are used to produce a finished good…." but the Orders also say that additional minor processing such as "additional firing" does not remove the tiles from scope. *Orders* at Appendix. "Additional firing" is among a non-exhaustive list of voluntary minor processing that does not *need* to be done to a ceramic tile to bring it within scope, but rather something that *may* be done to a ceramic tile and that tile would remain in scope. *Id.*; Scope Ruling at 9. The tile needs to be fired at some point to be in scope, but does not need to be finished with a second, third, or any sort of additional firing once the decoration is complete. Scope Ruling at 9. Accordingly, Commerce examined the language of the scope and found that Elysium's arguments misinterpreted the *Orders* as erroneously requiring a second or final firing to remain within scope. *Id.*

Commerce also found that the scope also covers ceramic tile regardless of whether the tile is on a backing. *Id.*; *Orders* at Appendix. Commerce observed that some types of mesh backing would be destroyed by firing yet their addition would not remove the product from the scope. Scope Ruling at 9. Therefore, because the scope language provides examples of processing operations that must occur post-firing and these operations do not remove ceramic tile

from the *Orders*, Commerce reasonably concluded that "the scope language does not require firing to be the final stage in the production of ceramic tile." *Id.*

In further support of its improper expansion argument, Elysium explains that the marble layer of its composite tile is more valuable than the porcelain layer. Pl. Br. at 29-31. However, because added value and cost of materials are not factors considered in 19 C.F.R. § 351.225(k)(1), Commerce found that this argument was not relevant to its determination. Scope Ruling at 8. Elysium claims that composite tile *could* be made with a non-porcelain tile base, using, for example, granite, aluminum hydroxide, or artificial stone instead. Pl. Br. at 29. However, Commerce examined the actual product subject to the scope inquiry, which was the composite tile made with a porcelain tile base layer, not hypothetical composite tiles. Scope Ruling at 8-9. As a result, Commerce properly found that this claim was not relevant to the scope inquiry. Scope Ruling at 8.

Elysium also argues that the operations undertaken to fuse the marble layer to the porcelain layer are not minor processing. Pl. Br. at 31-33. Elysium argues that marble undergoes more than six processing steps and splitting is more complex than cutting. Pl. Br. at 33-34. But the fact that Elysium's composite tile undergoes multiple minor processes after the firing stage does not turn the minor processes into ones that would take Elysium's composite tile out of scope. Scope Ruling at 9-10. Commerce rightly found that interpreting the scope in this manner would undermine the *Orders* because this would mean that any ceramic tile that had gone through multiple minor processes, such as cutting, trimming, and polishing, or "been affixed to a backing after the firing stage" is categorically outside the scope of the *Orders*. Scope Ruling at 10. However, the scope plainly states that minor processes that would not take ceramic tile out of the scope of the *Orders* include but are not limited to: "beveling, cutting,

trimming, staining, painting, polishing, finishing, [and] additional firing." *Orders* at Appendix.

There is no limit or combination of minor processing that removes the tile from the scope of the

*Orders*. As such, Commerce found that a ceramic tile, which has had multiple minor processes

performed upon it such as cutting *and* trimming *and* beveling *and* polishing, still has undergone

only "minor processing." Scope Ruling at 10 (emphasis in original). Therefore, "the additional

processing of Elysium's composite tile, in which a decorative marble layer is attached to the

ceramic base layer using epoxy, does not remove it from the scope of the *Orders*, as it continues

to meet the definition of in-scope merchandise, based on the scope language." *Id.*

Elysium cites various dictionaries to argue that the marble on their composite tiles does

not qualify as mere decoration based upon several definitions of "decorative." Pl. Br. at 34-35.

Procedurally, aside from the definition supplied by Merriam-Webster, these dictionary

definitions were not presented to Commerce during the scope inquiry. Elysium could have

included the remainder of the definitions in its response to the Coalition but did not. As Elysium

included the definition from Merriam-Webster in its response filed on November 1, 2022,

Elysium could have easily included these additional definitions in that submission. Nov. 1

Elysium Response at 2. It did not. As such, Elysium failed to exhaust its arguments using these

dictionary definitions. *See* 28 U.S.C. § 2637(d) ("[T]he Court of International Trade shall, where

appropriate, require the exhaustion of administrative remedies."); *Sandvik Steel*, 164 F.3d at 599

(Fed. Cir. 1998) (a party is not "'entitled to judicial relief for a supposed or threatened injury

until the prescribed administrative remedy has been exhausted'") (citations omitted); *Stanley*

*Works (Langfang) Fastening Sys., Ltd. v. United States*, 279 F. Supp. 3d 1172, 1189 (Ct. Int'l

Trade 2017) (stating that exhaustion promotes judicial efficiency "by enabling an agency to

correct its own errors so as to moot judicial controversies."); *Mittal Steel Point Lisas Ltd. v.*

*United States*, 548 F.3d 1375, 1383–84 (Fed. Cir. 2008); *Navigator Co., S.A. v. United States*,

463 F. Supp. 3d 1302 (Ct. Int'l Trade 2020) (applying the exhaustion requirement to a remand

proceeding).  Moreover, none of the exceptions to the exhaustion doctrine such as futility, an

intervening judicial act, or a pure legal question applies here.  The futility exception is narrow

and strictly viewed, and the "mere fact that an adverse decision may have been likely does not

excuse a party from a statutory or regulatory requirement that it exhaust administrative

remedies."  *Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349, 1371 (Ct. Int'l Trade

2018) (quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1378-81 (Fed. Cir. 2007)).

There was no intervening judicial act, and this is an argument about the facts and evidence on the

record.

Setting aside the procedural defects with this argument, these dictionary definitions do

not contradict and are consistent with Commerce's determination that the marble layer is a

decorative feature.  Despite its supplied brochures displaying attractive composite tile with its

marble appearance in no fewer than fourteen patterns, Elysium maintains that the marble layer

was "[not] 'intended to look pretty or attractive.'"  Scope Application at Attachment II, Exhibit 2

(containing copies of brochures); Pl. Br at 35 (quoting the dictionary definition from Collins).

This argument clearly fails, and it strains credulity to suggest Elysium was not attempting to

produce attractive tiles.  Elysium even describes the marble layer as decorative.  July 19 Elysium

Response at 8 ("the product is advertised and displayed much more so for its decorative, marble

properties").  To the extent that Elysium is arguing that the marble layer does not *solely* serve a

decorative purpose because Merriam-Webster defines the term as "serving to decorate

especially: purely ornamental," Elysium misconstrues Commerce's scope ruling.  *See* Nov. 1

Elysium Response at 2; Scope Ruling at 8.  Commerce did not find that the marble layer was

purely decorative, but rather was primarily a "decorative feature" under the scope, one which does not significantly alter the function of the tile such to remove it from the scope. Scope Ruling at 8. Accordingly, Commerce's scope ruling should be sustained.

**CONCLUSION**

For these reasons, we respectfully request that the Court deny plaintiff's motion and sustain Commerce's final scope ruling.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

/s/ Christopher A. Berridge
CHRISTOPHER A. BERRIDGE

OF COUNSEL:                          Trial Attorney
Vania Wang                           U.S. Department of Justice
Attorney                             Civil Division
U.S. Department of Commerce          Commercial Litigation Branch
Office of the Chief Counsel          P.O. Box 480
  for Trade Enforcement and Compliance   Ben Franklin Station
Washington, D.C.                     Washington, D.C. 20044
                                     Telephone: (202) 353-0537
                                     E-mail: Christopher.Berridge@usdoj.gov

December 13, 2023                    Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains 5,932 words, including text, footnotes, and headings.


/s/Christopher A. Berridge

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

———————————————————————————

|  |  |  |
|---|---|---|
| ELYSIUM TILES, INC., and ELYSIUM TILE FLORIDA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 23-00041 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) ) | |
| and | ) ) | |
| THE COALITION FOR FAIR TRADE IN CERAMIC TILE, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

———————————————————————————)

## **ORDER**

Upon consideration of the motion for judgment upon the administrative record filed by plaintiff, responses thereto, plaintiffs' reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED;

ORDERED that the Department of Commerce's determination is sustained; and it is further

ORDERED that judgment is entered in favor of the United States.


———————————————————
                                                            JUDGE

Dated: ——————————————