## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ELYSIUM TILES, INC. AND ELYSIUM TILE FLORIDA, INC.,** | **Before:** Hon. Timothy M. Reif, Judge |
| **Plaintiffs,** | |
| v. | **Court No. 23-00041** |
| **UNITED STATES,** | |
| **Defendant,** | |
| and | |
| **THE COALITION FOR FAIR TRADE IN CERAMIC TILE,** | |
| **Defendant-Intervenor.** | |

### DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

David M. Spooner, Esq.
Nicholas Galbraith, Esq.

BARNES & THORNBURG LLP
555 12th ST NW Ste 1200
Washington, DC 20004
(202) 289-1313

*Counsel for The Coalition for Fair Trade in Ceramic Tile*

Dated:  December 13, 2023

Ct. No. 23-00041

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................I

TABLE OF AUTHORITIES..........................................................................................2

I.      INTRODUCTION.................................................................................................3

II.     RULE 56.2 STATEMENT....................................................................................3

        A.      Administrative Decision Sought to be Reviewed....................................3

III.    ISSUES PRESENTED AND SUMMARY OF ARGUMENT.............................4

        A.      Whether Commerce's Determination that Plaintiff's
                Composite Ceramic Tiles are Covered by the Scope of the
                Orders is Supported by Substantial Evidence and in
                Accordance with Law................................................................................4

        B.      Whether Commerce Properly Conducted the Scope
                Investigation and Prepared the Administrative Record in
                Accordance with Law................................................................................4

IV.     STANDARD OF REVIEW..................................................................................4

V.      STATEMENT OF FACTS...................................................................................7

VI.     ARGUMENT........................................................................................................9

        A.      Commerce's Scope Ruling Is Supported by Substantial
                Evidence on the Record Demonstrating that Plaintiff's
                Composite Ceramic Tile is Clearly Covered by the Scope of the
                Orders.........................................................................................................9
                1.      The Legal Framework for Scope Rulings.......................................10
                2.      Plaintiff's Own Commercial Invoice Demonstrates Its Products are
                        Porcelain Tile................................................................................11
                3.      Plaintiff's Products are not "Marble Articles" as Alleged in Their Brief.11
                4.      The Fact that Plaintiff's Products are not Fired Twice is Irrelevant Under
                        the Scope.......................................................................................12
                5.      The Scope Explicitly Covers Plaintiff's Further Minor Processing of
                        Porcelain Tile................................................................................12

        B.      Commerce Properly Conducted the Scope Investigation and
                Prepared the Administrative Record in Accordance with Law.................14

VII.    CONCLUSION....................................................................................................17

  
Ct. No. 23-00041

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172 (Ct. Int'l Trade 2004) ............. 11

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984) ....................... 6

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ............................................................................. 5

*Consolo v. Fed. Mar. Comm'n.*, 383 U.S. 607 (1966) ......................................................................... 5

*Daewoo Elecs. Co. v. United States*, 6 F.3d 1511 (Fed. Cir. 1993) ................................................. 7

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002) ........................................... 10

*Dupont Teijin Films USA v. United States*, 407 F.3d 1211 (Fed. Cir. 2005) ................................. 5

*FAG Italia S.p.A. v. United States*, 110 F.Supp.2d 1055 (CIT 2000) ............................................ 15

*Gilmore Steel Corp. v. United States*, 585 F.Supp. 670 (Ct. Int'l Trade 1984) ............................ 16

*INS v. Elias-Zacarias*, 502 U.S. 478 (1992) ....................................................................................... 5

*King Supply Co., LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012) ................................... 7, 11

*Koyo Seiko Co. v. United States*, 36 F.3d 1565 (Fed. Cir. 1994) ...................................................... 7

*Matsushita Elec. Indus. Co., Ltd. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) ................... 5, 6

*Meridian Prods., LLC v. United States*, 851 F.3d 1375 (Fed. Cir. 2017) ..................................... 11

*NEC Corp. v. United States*, 151 F.3d 1361 (Fed. Cir. 1998) ......................................................... 15

*Nippon Steel Corp v. United States*, 458 F.3d 1345 (Fed. Cir. 2006) .............................................. 5

*Novosteel SA v. United States*, 284 F.3d 1261 (Fed. Cir. 2002) ..................................................... 11

*NSK Ltd. v. United States*, 28 CIT 1535, 346 F.Supp. 2d 1312 (2004), *aff'd*, 481 F.3d 1355 (Fed.
   Cir. 2007) ...................................................................................................................................... 6

*Nucor Corp. v. United States*, 612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ................................. 5

*OMG, Inc. v. United States*, 972 F.3d 1358 (Fed. Cir. 2020) ........................................................ 11

*Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372 (Fed. Cir. 2001) ..................... 6

*Rebar Trade Action Coalition v. United States*, 335 F.Supp.3d 1302 (Ct. Int'l Trade 2018) ........... 5

*Royal Brush Manufacturing Inc. v. United States* 75 F.4th 1250 (Fed. Cir. 2023) ....................... 17

*Spezzaferro v. Fed. Aviation Admin.*, 807 F.2d 169 (Fed. Cir. 1986) ............................................ 15

*Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330 (Fed. Cir. 2002) ..................... 7

*Tak Fat Trading Co. v. United States*, 396 F.3d 1378 (Fed. Cir. 2005) ......................................... 11

*United States Steel Group v. United States*, 96 F.3d 1352 (Fed. Cir. 1996) ................................... 6

*United Steel and Fasteners, Inc., v. United States*, 947 F.3d 794 (Fed. Cir. 2020) ........................ 7

*Walgreen Co. of Deerfield v. United States*, 620 F.3d 1350 (Fed. Cir. 2010) ................................. 7

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ............................................................................................................. 4

19 U.S.C. § 1677f(a)(3) ................................................................................................................ 15, 17

**Regulations**

19 C.F.R. § 351.104(a) ....................................................................................................................... 16

19 C.F.R. § 351.225 ............................................................................................................................ 11

19 C.F.R. § 351.225(a) ....................................................................................................................... 10

19 C.F.R. § 351.225(d) ....................................................................................................................... 11

19 C.F.R. § 351.225(k)(1) .................................................................................................................. 11

Ct. No. 23-00041

## I.    <u>INTRODUCTION</u>

Pursuant to USCIT Rule 56.2 and the Court's amended scheduling order, Defendant-Intervenor Coalition for Fair Trade in Ceramic Tile ("Coalition" or "domestic industry") respectfully submits this response brief in opposition to the Motion for Judgment of Plaintiffs Elysium Tiles, Inc. and Elysium Tile Florida, Inc. (collectively, "Plaintiff"), for Judgment on the Agency Record and the accompanying Memorandum in Support ("Plaintiff's Br.") submitted on behalf of Plaintiffs on August 31, 2023 (ECF No. 27). For the reasons set forth below, we urge this Court to reject Plaintiff's claims and to sustain the underlying agency determination.

## II.    <u>RULE 56.2 STATEMENT</u>

### A.    <u>Administrative Decision Sought to be Reviewed</u>

The administrative determination under review is the final scope ruling issued by the Department of Commerce ("Commerce") on January 25, 2023, as part of the scope inquiry of the antidumping and countervailing duty Orders on ceramic tile from the People's Republic of China (the "Orders") regarding Plaintiff's composite ceramic tiles or so called "composite marble tiles." The ruling is set out in the Memorandum from Carolyn Adie to James Maeder re Ceramic Tile from the People's Republic of China: Final Scope Ruling on Elysium's Composite Tile, (P.R. 40)[1] ("Final Scope Ruling"); C*eramic Tile from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 33,089 (Dep't Commerce June 1, 2020) (antidumping duty Order) ("AD Order"); *Ceramic Tile from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 33,119 (Dep't Commerce June 1, 2020) (countervailing duty Order) ("CVD Order").

---

[1] Documents in the administrative record are cited by their confidential and/or public record number (*i.e.*, "(C.R.__)" and "(P.R.__)") provided in the Index to the Administrative Record filed with the Court on April 25, 2023 (ECF No. 19).

Ct. No. 23-00041

## III.   ISSUES PRESENTED AND SUMMARY OF ARGUMENT

### A.   Whether Commerce's Determination that Plaintiff's Composite Ceramic Tiles are Covered by the Scope of the Orders is Supported by Substantial Evidence and in Accordance with Law

Yes. The Coalition argues that this Court should uphold Commerce's Final Scope Ruling as being supported by substantial evidence and in accordance with law. Commerce properly determined based on the record evidence that Plaintiff's composite ceramic tile products are within the meaning of the scope of the *Orders*. Specifically, Plaintiff's composite ceramic tiles are subject to the *Orders* because 1) the products are ceramic tiles with a "decorative feature" (*i.e.* marble layers); and 2) the scope explicitly covers ceramic tiles that have undergone minor processing.

### B.   Whether Commerce Properly Conducted the Scope Investigation and Prepared the Administrative Record in Accordance with Law

Yes. The Coalition urges this Court to hold that Commerce properly conducted the scope investigation and prepared a complete administrative record in accordance with law.

## IV.   STANDARD OF REVIEW

The Court must sustain Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). When reviewing agency determinations, findings, or conclusions for substantial evidence, the Court assesses whether the agency action is reasonable given the record as a whole. *Nippon Steel Corp v. United States*, 458 F.3d, 1345, 1350-51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dupont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This Court has found that "{f}undamentally . . . 'substantial evidence' is best understood as a word

Ct. No. 23-00041

formula connoting reasonableness review. Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action was reasonable given the circumstances presented by the whole record." *Rebar Trade Action Coalition v. United States*, 335 F.Supp.3d 1302, 1304 (Ct. Int'l Trade 2018) (citations omitted).

A plaintiff seeking to overturn the agency's decision must do more than simply point to contradictory evidence in the record. "{T}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n.*, 383 U.S. 607, 620 (1966) (citations omitted). Rather, when Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, as here, the agency's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *accord Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009).

In addition, a plaintiff may not ask the Court to re-weigh the evidence and decide the matter in the Commerce Department's stead. *See Matsushita Elec. Indus. Co., Ltd. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). The role of the Court is not to question the agency's decisions about the weight or quality of the evidence. *See United States Steel Group v. United States*, 96 F.3d 1352, 1356-57 (Fed. Cir. 1996); *see also Matsushita*, 750 F.2d at 933 (it is not the weight of the evidence, but whether it reasonably supports a rational decision, that is evaluated by a reviewing court). The Court may not substitute its judgment or its interpretation of the evidence for that of the agency. *See Matsushita*, 750 F.2d at 936.

In reviewing Commerce's interpretation of a statutory provision, this Court is guided by the principles set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Under *Chevron*, a court reviewing an agency's interpretation of a statute must begin

Ct. No. 23-00041

with the statutory test: "{i}f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43 (citations omitted). If this Court finds that the statute is silent or ambiguous with respect to the specific question at issue, the question for the Court is whether Commerce's interpretation is based on a permissible interpretation of the statute. *Chevron*, 467 U.S. at 842. The agency's reasonable interpretations of its statutory responsibilities are entitled to judicial deference. *Id.* at 844; *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1379-80 (Fed. Cir. 2001).

Given Commerce's special expertise in applying the antidumping and countervailing duty laws, this Court has repeatedly held that Commerce is the "master" of trade remedy law, entitling its decisions to great deference from the courts. *See NSK Ltd. v. United States*, 28 CIT 1535, 1561, 346 F.Supp. 2d 1312, 1335 (2004), *aff'd*, 481 F.3d 1355 (Fed. Cir. 2007) (citation omitted). The Federal Circuit has also noted that Commerce's "special expertise in administering the antidumping law entitles its decisions to deference from the courts." *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1335 (Fed. Cir. 2002) (citations omitted); *see also Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1570 (Fed. Cir. 1994) ("Deference to an agency's statutory interpretation is at its peak in the case of a court's review of Commerce's interpretation of the antidumping laws.") (citing *Daewoo Elecs. Co. v. United States*, 6 F.3d 1511, 1516 (Fed. Cir. 1993)).

This special deference extends to Commerce's interpretation of the scope of its antidumping duty orders. *See King Supply Co., LLC v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012) (special deference is appropriate because "the meaning and scope of antidumping orders are issues particularly within the expertise and special competence of Commerce.") (citation omitted). Indeed, the interpretation of its own orders is "at the very heart of {Commerce's}

Ct. No. 23-00041

expertise." *Walgreen Co. of Deerfield v. United States*, 620 F.3d 1350, 1355 (Fed. Cir. 2010).

Accordingly, parties challenging Commerce's scope determinations under substantial evidence

review "confront a high barrier to reversal." *United Steel and Fasteners, Inc., v. United States*, 947

F.3d 794, 798 (Fed. Cir. 2020).

## V.   STATEMENT OF FACTS

On April 10, 2019, the Coalition submitted a Petition to Commerce seeking relief in the

form of antidumping and countervailing duties on ceramic tile from China. *See* 84 Fed. Reg.

20,093 (Dep't of Commerce May 8, 2019) ("Notice of Initiation"). On June 1, 2020, Commerce

published the Orders on ceramic tile with the following scope description:

> The merchandise covered by these *Orders* is ceramic flooring tile, wall tile, paving
> tile, hearth tile, **porcelain tile**, mosaic tile, flags, finishing tile, and the like
> (hereinafter ceramic tile). Ceramic tiles are articles containing a mixture of minerals
> including clay (generally hydrous silicates of alumina or magnesium) that are fired
> so the raw materials are fused to produce a finished good that is less than 3.2 cm in
> actual thickness. All ceramic tile is subject to the scope regardless of end use, surface
> area, and weight, regardless of whether the tile is glazed or unglazed, regardless of
> the water absorption coefficient by weight, regardless of the extent of vitrification,
> and regardless of whether or not the tile is on a backing. Subject merchandise
> **includes ceramic tile with decorative features** that may in spots exceed 3.2 cm in
> thickness and includes ceramic tile "slabs" or "panels" (tiles that are larger than 1
> meter$^2$ (11 ft.$^2$)).
>
> Subject merchandise includes ceramic tile that undergoes minor processing in a third
> country prior to importation into the United States. Similarly, subject merchandise
> includes ceramic tile produced that undergoes minor processing after importation
> into the United States. **Such minor processing includes**, but is not limited to, one
> or more of the following: Beveling, cutting, trimming, staining, painting, polishing,
> **finishing**, additional firing, or any other processing that would otherwise not remove
> the merchandise from the scope of the order if performed in the country of
> manufacture of the in-scope product.
>
> Subject merchandise is currently classified in the Harmonized Tariff Schedule of the
> United States (HTSUS) under the following subheadings of heading 6907:
> 6907.21.1005,   6907.21.1011,   6907.21.1051,   6907.21.2000,   6907.21.3000,
> 6907.21.4000,   6907.21.9011,   6907.21.9051,   6907.22.1005,   6907.22.1011,
> 6907.22.1051,   6907.22.2000,   6907.22.3000,   6907.22.4000,   6907.22.9011,
> 6907.22.9051,   6907.23.1005,   6907.23.1011,   6907.23.1051,   6907.23.2000,
> 6907.23.3000,   6907.23.4000,   6907.23.9011,   6907.23.9051,   6907.30.1005,

> 6907.30.1011, 6907.30.1051, 6907.30.2000, 6907.30.3000, 6907.30.4000, 6907.30.9011, 6907.30.9051, 6907.40.1005, 6907.40.1011, 6907.40.1051, 6907.40.2000, 6907.40.3000, 6907.40.4000, 6907.40.9011, and 6907.40.9051. Subject merchandise may also enter under subheadings of headings 6914 and 6905: 6914.10.8000, 6914.90.8000, 6905.10.0000, and 6905.90.0050. The HTSUS subheadings are provided for convenience and customs purposes only. The written description of the scope of the order is dispositive. (emphasis added).

*Ceramic Tile from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 33,089 (Dep't Commerce June 1, 2020) (AD Order); *Ceramic Tile from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 33,119 (Dep't Commerce June 1, 2020) (CVD Order).

On April 11, 2022, Plaintiff requested a scope ruling from Commerce concerning a product it characterized as "composite marble tile." (P.R. 1). On April 28, 2022, the Coalition filed a request to reject the Plaintiff's scope application for a lack of proper service. (P.R. 2). On May 12, 2022, Commerce rejected the Plaintiff's scope application for failure to provide proof of service to the Coalition's counsel. (P.R. 4).

On May 24, 2022, Plaintiff resubmitted its scope ruling application and exhibits to Commerce. (P.R. 8 to P.R. 12, C.R. 2 to C.R. 6). On June 2, 2022, Commerce accepted the scope application and initiated a scope inquiry. (P.R. 15).

In its scope application, Plaintiff described its composite marble tile as consisting of porcelain tile, epoxy, and a thin (three millimeter) layer of marble. (P.R. 8 at 7). Specifically, the porcelain tile layer is vitrified ceramic tile (P.R. 8 at 3), which is explicitly covered by the plain language of the *Orders* ("The merchandise covered by these Orders is ceramic flooring tile, wall tile, paving tile, hearth tile, **porcelain** tile, mosaic tile, flags, finishing tile, and the like…") (emphasis added).

On July 5, 2022, the Coalition submitted its response to Commerce, opposing Plaintiff's scope application and arguing that the so-called composite marble tile is covered by the plain language of the scope, which covers "porcelain tile" including such tile "with decorative features"

or that undergoes additional "minor processing" such as "finishing." (P.R. 21 at 2). On July 19, 2022, Plaintiff filed its reply to the Coalition's opposition comments. (P.R. 24, C.R. 7).

On September 26, 2022, Commerce published an *ex parte* memorandum summarizing a September 20, 2022, visit to the Lawrenceburg, Kentucky production facilities of Florida Tile, Inc., a Coalition member. (P.R. 26). The memorandum provided a summary of the matters discussed including a tour of Florida Tile's manufacturing operations and a question and answer session with Florida Tile employees. *Id*. The memorandum also includes the identities of the persons present at the meeting. (*Id*. at 2).

On September 27, 2022, Commerce issued a supplemental questionnaire to Plaintiff (P.R. 27), and on October 11, 2022, Plaintiff submitted its response. (P.R. 31, C.R. 8). On October 26, 2022, the Coalition filed comments on Plaintiff's supplemental questionnaire response (P.R. 33), and on November 1, 2022, Plaintiff submitted its reply. (P.R. 36).

On January 25, 2023, Commerce issued the Final Scope Ruling, concluding Plaintiff's composite ceramic tile is covered by the plain language of the *Orders'* scope. (P.R. 40 at 10). This appeal followed.

## VI.   ARGUMENT

### A.   Commerce's Scope Ruling Is Supported by Substantial Evidence on the Record Demonstrating that Plaintiff's Composite Ceramic Tile is Clearly Covered by the Scope of the Orders

In the Final Scope Ruling, Commerce found "that the description of the products, the scope language, and the description of the product in the petitions and investigations are, together, dispositive as  to whether the products at issue are subject merchandise, in accordance with 19 CFR 351.225(k)(1)."  (P.R. 40 at 7). The Court should uphold Commerce's finding because it is supported by substantial evidence on the record demonstrating that Plaintiff's product is porcelain tile with a thin "decorative" layer of marble glued to it and that has undergone minor processing

Ct. No. 23-00041

within the written description of the scope language.

### 1.  <u>The Legal Framework for Scope Rulings</u>

Commerce is often called upon to determine whether a product is included within the scope of an antidumping or countervailing duty order because it necessarily writes scope language in general terms. *See* 19 C.F.R. § 351.225(a); *see also Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1096 (Fed. Cir. 2002). Commerce's determinations concerning a particular product are made in accordance with its regulations. *See generally* 19 C.F.R. § 351.225.

Although "Commerce is entitled to substantial deference with regard to its interpretation of its own antidumping duty orders," *King Supply*, 674 F.3d at 1348 (citing *Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005)), "the question of whether the unambiguous terms of a scope control the inquiry, or whether some ambiguity exists, is a question of law" that the Court reviews de novo. *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1382 (Fed. Cir. 2017) (citing *Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004) (quotation omitted)). "The question of whether a product meets the unambiguous scope terms presents a question of fact reviewed for substantial evidence." *Id*. (citing*, e.g.*, *Novosteel SA v. United States*, 284 F.3d 1261, 1269 (Fed. Cir. 2002)).

Commerce's inquiry must begin with the relevant scope language. *See, e.g., OMG, Inc. v. United States*, 972 F.3d 1358, 1363 (Fed. Cir. 2020).  If the scope language is unambiguous, "the plain meaning of the language governs." *Id*. (citation omitted). If, however, the language is ambiguous, Commerce interprets the scope "with the aid of" the sources set forth in 19 C.F.R. § 351.225(k)(1).  *Meridian Prods.*, 851 F.3d at 1382 (citation omitted). Subsection (k)(1) directs Commerce to consider the descriptions of the subject merchandise in the petition, initial investigation, and prior determinations by Commerce (including prior scope determinations) or the U.S. International Trade Commission. 19 C.F.R. § 351.225(k)(1). If the (k)(1) sources are

Ct. No. 23-00041

dispositive, Commerce may issue its ruling based solely on the party's application and the (k)(1) sources. 19 C.F.R. § 351.225(d).

### 2. **Plaintiff's Own Commercial Invoice Demonstrates Its Products are Porcelain Tile**

Plaintiff's products that are the subject of the Final Scope Ruling are porcelain tile, a type of ceramic tile expressly covered by the *Orders*. Both Plaintiff's product description and the commercial documents Plaintiff submitted on the Commerce record clearly demonstrate the products are porcelain tile and thus within the written description of the scope language.

According to Plaintiff's scope ruling request, Plaintiff's products are "porcelain tile" to which a "thin" sheet of stone (typically, marble) is glued. (P.R. 8, Att. II at 3, 7).  They are approximately 12 to 15 mm thick (*Id.*, Att. II at 3), such as a 9mm porcelain tile base covered by a 3mm stone sheet (P.R. 9, Ex. 2 at 8), i.e., "a finished good that is less than 3.2 cm in actual thickness" as covered by the scope.  Thus, the plain language unambiguously covers Elysium's porcelain tile.

In support of its scope ruling request, Plaintiffs submitted a commercial invoice between Elysium and its Chinese exporter, Foshan Dingli Ceramics Co., Ltd. This commercial invoice lists the "Description of goods" as "PORCELAIN TILE".  (P.R. 12, Ex. 5 at 5). [2] This description evinces a clear commercial understanding that the products are porcelain tile.

### 3. **Plaintiff's Products are not "Marble Articles" as Alleged in Their Brief**

Plaintiff alleges that Commerce's scope determination "expanded the scope to incorporate *marble articles* within the Ceramic Tile order." Plaintiff's Br. at 28 (emphasis added). However, the

---

[2]   In this respect, it is also worth noting that certain of the entities which Elysium listed as producing "composite tile" do not actually advertise "composite tile" on their English-language websites, but do advertise ceramic tile with the appearance of marble.  *See* P.R. 40 at 7 (summarizing Coalition comments to Commerce regarding the web sites of suppliers to Elysium).

Ct. No. 23-00041

record is clear that Plaintiff's products are not "marble articles."  Rather, they are porcelain tile that have undergone further minor processing to glue on a marble layer as a decorative feature.  As discussed in Sec. V.B.2 above, even Plaintiff's own commercial invoices list the products at issue as porcelain tile, *not* marble tile.

### 4. The Fact that Plaintiff's Products are not Fired Twice is Irrelevant Under the Scope

Plaintiff misapplies the language in the scope of the Orders providing that "{c}eramic tiles are articles containing a mixture of minerals including clay (generally hydrous silicates of alumina or magnesium) that are fired so the raw materials are fused to produce a finished good." *Id*. Plaintiff argues that, for its products, "{t}he raw materials which make up the finished good are not fired and the final product is not fused together." *Id*.

Plaintiff, however, concedes that its porcelain tile is fired to produce it:  it is a "ceramic made by taking a . . . mixture of materials and fired {sic} at a high temperature." *See Id*. at 9. Then, Plaintiff glues a thin layer of marble on top.  In other words, simply because the porcelain tile is not fired again after the porcelain tile undergoes additional minor finishing processes is irrelevant.  Porcelain tile is a type of ceramic tile expressly covered by the scope, including porcelain tile that undergoes additional minor processing.  In fact, as noted by Commerce in its scope ruling, "{s}ome of these examples of minor processing {in the scope} cannot be performed prior to firing, such as trimming or polishing." (P.R. 40 at 9).  In other words, "the scope language does not require firing to be the final stage in the production of ceramic tile." *Id*.

### 5. The Scope Explicitly Covers Plaintiff's Further Minor Processing of Porcelain Tile

Plaintiff's additional minor processing to glue a thin layer of decorative marble on top of porcelain tile do not take its products outside of the scope of the Orders, which explicitly cover "ceramic tile with decorative features" and ceramic tile that undergoes further "minor processing."

Ct. No. 23-00041

Indeed, Commerce found that "even after undergoing additional processing, the finished product

maintains the characteristics of ceramic tile" (*Id*. at 10) and found that:

> We find that the examples of beveling, cutting, trimming, staining, painting, polishing, finishing, and additional firing, while defined as "minor" in the scope language, are involved operations, especially when combined. A tile which is cut *and* trimmed *and* beveled *and* polished, for example, still has undergone only "minor processing." With regard to the argument that the production process of composite tile involves processes not usually undertaken in the production of ceramic tile, we find that these processes do not remove the composite tile from the scope of the Orders. (*Id*. at 9-10).

The record is clear that porcelain tile, rather than the thin decorative marble element glued on

top, give the porcelain tile its key characteristics. Indeed, the scant advertising literature Elysium

placed on the Commerce record emphasizes the physical benefits of porcelain tile, including:

> The waterproof nature of the "strong porcelain backing";
> Marble is "non-renewable" but ceramic tile is "Environment-Friendly";
> Marble is fragile but ceramic tile is "High Strength"; and
> Ceramic tile is "lighter than" marble, saving on transportation costs.        (P.R. 9, Ex. 2 at 12).

Elysium has argued that marble can also be added to other backings such as aluminum and

sponge. However, the alternative bases would not provide the benefits of porcelain tile described

above, and the fact that marble could be glued to alternative materials is irrelevant to a determination

of whether the products at issue in this proceeding – ceramic tile topped by a thin layer of marble –

are subject to the scope of the ceramic tile Orders . Indeed, based on the record evidence, Commerce

found:

> {D}espite the change in the appearance of the tile with the addition of the marble layer, record evidence indicates that the composite tile retains many of the same qualities as ceramic tile. Specifically, information provided by Elysium shows that both composite tile and ceramic tile function as high-strength, light-weight, easily installed flooring options. Further, the scope language covers ceramic flooring tile and wall tile, and a product brochure for Elysium's composite tile shows the product similarly installed on floors and walls. We find that the marble layer alters the appearance of the ceramic tile, serving as a natural-stone decoration, but does not significantly alter the function of the tile. Accordingly, we find that the composite tile is a ceramic tile with a "decorative feature," and is, thus, within the scope of the

Ct. No. 23-00041

Orders. (P.R. 40 at 8).

The record evidence clearly supports Commerce's determination.

**B.** **Commerce Properly Conducted the Scope Investigation and Prepared the Administrative Record in Accordance with Law**

Plaintiff argues that Commerce's scope investigation was procedurally defective and that Commerce should not have toured a Coalition member's production facilities. Plaintiff's Br. at 3. Furthermore, Plaintiff alleges that Commerce "refus{ed} to generate an adequate memorandum for the record providing details about such meeting." *Id.*

Contrary to Plaintiff's claims and consistent with the Government's brief, Commerce did not violate any statute or policy concerning *ex parte* meetings, because Commerce prepared and placed on the record *ex-parte* meeting memoranda about the September 20, 2022, visit to a ceramic tile production facility.

"The right to an impartial decision maker is unquestionably an aspect of procedural due process." *NEC Corp. v. United States*, 151 F.3d 1361, 1371 (Fed. Cir. 1998); *see FAG Italia S.p.A. v. United States*, 110 F.Supp.2d 1055, 1061 (Ct. Int'l Trade 2000). Allegations of favoritism, however, that are merely speculative or unsubstantiated are insufficient. *Spezzaferro v. Fed. Aviation Admin.*, 807 F.2d 169, 173 (Fed. Cir. 1986).

The statute requires Commerce to "maintain a record of any ex parte meeting between . . . interested parties" and the agency "if information relating to {the relevant} proceeding was presented or discussed at such meeting." 19 U.S.C. § 1677f(a)(3). "The record of such an ex parte meeting shall include the identity of the persons present at the meeting, the date, time, and place of the meeting, and a summary of the matters discussed or submitted. The record of the ex parte meeting shall be included in the record of the proceeding." *Id.*; *cf.* 19 C.F.R. § 351.104(a) (requiring placement of ex parte memoranda on the administrative record). Commerce has issued

a policy statement requiring ex parte memoranda to "be drafted expeditiously in all cases, reviewed by a person in attendance at the meeting, and placed in the record as soon as possible, so that parties may comment effectively on the factual matters presented." *Policy Statement Regarding Issuance of Ex-Parte Memoranda*, 66 Fed. Reg. 16,906, 16,906 (Dep't Commerce Mar. 28, 2001). Additionally, "memoranda are required whether or not the factual information received was received previously, is expected to be received later in the proceeding, or is expected to be used or relied on." *Id*.

Here, Commerce's *ex parte* memorandum is sufficient on its face. The statute requires Commerce to summarize "the matters discussed or submitted." 19 U.S.C. § 1677f(a)(3). Commerce's September 26 *Ex Parte* Memorandum summarized the "matters discussed" as "a tour of Florida Tile's operations and a question and answer session with Florida Tile employees." (P.R. 26). Plaintiff has not shown that the statute requires more.

Even if Commerce's meeting at Florida Tile's production facility was a procedural irregularity, Plaintiff must demonstrate material prejudice. *See Gilmore Steel Corp. v. United States,* 585 F.Supp. 670, 679 (Ct. Int'l Trade 1984). Plaintiff claims that Commerce failed to provide a summary of the *ex parte* meeting and that this is "particularly prejudicial." Plaintiff's Br. at 26. But, Commerce did provide an *ex parte* summary and Plaintiff cannot point to any material prejudice resulting from Commerce's published *ex parte* memorandum or further demonstrate an alleged material prejudice in their brief.

Finally, Plaintiff cites to a recent U.S. Court of Appeals for the Federal Circuit's ("Federal Circuit") opinion for the proposition that "administrative trade actions should not be based on 'secret' information and that due process requires that parties be provided with such information and an opportunity to respond." Plaintiff's Br. at 22. Plaintiffs further allege that Commerce's "*ex parte* meeting allowed petitioner to provide 'secret' information and argument about the purported

Ct. No. 23-00041

production process of the {composite ceramic tile} and about tile." *Id.*

The Federal Circuit's decision *Royal Brush Manufacturing Inc. v. United States* (75 F.4th 1250 (Fed. Cir. 2023)) is inapposite to this case, does not demonstrate that Commerce's scope investigation is procedurally defective, and is not persuasive authority for Plaintiff's arguments. In *Royal Brush*, the Federal Circuit analyzed the due process rights of an importer in a U.S. Customs and Broder Protection's ("CBP") evasion investigation under the Enforce and Protect Act of 2015 ("EAPA"). In the EAPA investigation, CBP relied on confidential information that was not provided to the importer. *Id.* at 1257. The Federal Circuit held that CBP violated the importer's due process. *Id.* at 1259.

Here, however, Commerce's scope ruling relied entirely on information on the agency record and available to Plaintiff – not some unspecified "secret" information – and Plaintiff has not provided any evidence to the contrary. Commerce did not violate Plaintiff's due process rights when it published its *ex parte* memorandum. Moreover, Commerce did not violate Plaintiff's due process rights when the agency held an *ex parte* meeting. Indeed, the statute contemplates the occurrence of *ex parte* meetings. *See* 19 U.S.C. § 1677f(a)(3). Therefore, the Coalition respectfully requests that this Court hold that Commerce properly conducted the scope investigation and prepared a complete administrative record in accordance with law.

Ct. No. 23-00041

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, the Coalition respectfully requests that the Court uphold Commerce's final scope ruling as supported by substantial evidence and in accordance with law.

<div style="margin-left: 40%">

Respectfully submitted,
<u>/s/ David M. Spooner</u>
David M.  Spooner
Nicholas Galbraith, Esq.

**BARNES & THORNBURG LLP**
555 12th ST NW Ste 1200
Washington, DC 20004
(202) 289-1313
David.Spooner@btlaw.com

*Counsel for The Coalition for Fair Trade in Ceramic Tile*

</div>

Dated:  December 13, 2023

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for the Defendant-Intervenors' Response to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, as computed by Barnes & Thornburg LLP's word processing system (Microsoft Word 2016), is 5,429 words.

/s/ David M. Spooner
Nicholas Galbraith, Esq.

**BARNES & THORNBURG LLP**
555 12th ST NW Ste 1200
Washington, DC 20004
(202) 289-1313

*Counsel for The Coalition for Fair Trade in Ceramic Tile*

Dated:  December 13, 2023