UNITED STATES COURT OF INTERNATIONAL TRADE
Before: Hon. Timothy M. Reif, Judge

| | |
|---|---|
| Elysium Tiles, Inc and Elysium Tile Florida, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> United States, <br><br> Defendant <br><br> and <br><br> The Coalition for Fair Trade in Ceramic Tile, <br><br> Defendant-Intervenor. | Court No. 23-00041 |

**REPLY TO RESPONSES OF DEFENDANT AND DEFENDANT UNITED STATES TO THE RULE 56.2 MOTION OF PLAINTIFFS ELYSIUM TILES, INC  AND ELYSIUM TILE FLORIDA, INC. FOR JUDGMENT UPON THE AGENCY RECORD**

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
Counsel for Plaintiffs

Dated: January 31, 2024

# Table of Contents

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................1

    A.  Introduction ...............................................................................................................1

    B.  Summary of Argument ..............................................................................................1

II.    ARGUMENT ............................................................................................................. 2

    A.  The Department Should Not Have Held an *Ex Parte* meeting with Petitioner ...................................................................................................................2

    B.  The *Ex Parte* Memorandum was Insufficient .................................................4

    C.  The Defendant and Defendant's Arguments about the Coverage of the Order is Unavailing ...................................................................................................5

III.    CONCLUSION ........................................................................................................10

Table of Authorities

Court:

*Nippon Steel Corp. v. U.S.*, 118 F. Supp. 2d 1366, 1373 (Ct. Int'l Trade 2000) ..........................................................................................4, 5

*King Supply Company LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012) .............................................................................................7

Statutory:

19 U.S.C. 1677f(3)(B) ...................................................................................4

Administrative:

Rule 56.2 of the Rules of the U.S. Court of International Trade ...........................1

19 C.F.R. §351.104 .......................................................................................4

I. __INTRODUCTION AND SUMMARY OF ARGUMENT__

A. __Introduction__

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade and the Court's amended scheduling order of December 27, 2024, plaintiffs Elysium Tiles, Inc and Elysium Tile Florida, Inc respectfully submit this reply to the responses of defendant and defendant-intervenor to plaintiffs 56.2 motion for judgment. As demonstrated below, the arguments submitted by defendant and defendant-intervenor are unavailing and this matter should be remanded to the Department of Commerce with direction that it issue a scope ruling holding that the composite marble tile is not subject to the order on *Ceramic Tile from the People's Republic of China*.

B. Summary of Argument

- The Department should not have held an *ex parte* meeting with petitioner. While *ex parte* meetings are often held in antidumping and countervailing duty proceedings. Scope proceedings do not have the same general procedures. The Department should not have held the meeting with petitioner and compounded the problem by not granting a meeting to plaintiff. Such failure was prejudicial as it did not provide plaintiff with the opportunity to advocate for its position.

- The memorandum of the *ex parte* meeting issued by the Department was deficient on its face. The memorandum did not provide the required summary of the meeting.

- Composite Marble Tile and Ceramic Tile all have common properties as Tile along with other materials such as stone and glass. Composite Marble Tile has special and unique properties.

- The relative differences in value between marble and the ceramic base layer is relevant to the analysis and establish that the Composite Marble Tile is an article of Marble.

- The plain language of the order requires that the final product be fired. In this case, the firing was of an intermediate material, and thus the Composite Marble Tile is outside of the scope.

- The operations undertaken to produce the Composite Marble Tile were not minor. The marble component underwent significant processing.

II.    **ARGUMENT:**

A. **The Department Should Not Have Held an Ex Parte meeting with Petitioner.**

Both Defendant (8 to 13) and Defendant-Intervenor (14 to 17) argue that the Department was entitled to hold an *ex parte* meeting with the Defendant-Intervenor, and that the Department did not prejudice Plaintiff by not holding a requested *ex*

*parte* meeting with plaintiff. The gravemen of these arguments is that the Department can meet with who it wishes and does not need to provide "equal" treatment to both sides.   This is particularly egregious in scope proceedings.   In an administrative review or investigation, the process provides for both an administrative case brief and a rebuttal brief, and if requested, a public hearing in which the issues are discussed.  Furthermore, the Department has a practice where a public hearing can be canceled, and all of the parties are provided an opportunity for an *ex parte* meeting with the Department and discuss the issues.   In contrast, there are no provisions in a scope proceeding for a brief and a rebuttal brief nor is there a provision for a hearing or meeting.  This is a critical distinction.  By providing a meeting for one side, but not the other, essentially turns the proceeding into an *ex parte* proceeding where the full views of only one side are fully considered and only one side is provided the opportunity to make legal argument based upon the full record.

It is also important to note that in those proceedings where the Department has permitted *ex parte* meetings, the Courts have noted that the Department has also provided an opportunity a similar meeting for the other side unless the other side does not desire a meeting.   In this case, it is clear that plaintiff wanted a meeting.  It filed an objection to the *ex parte* meeting (P.R. 32[1])  and also requested that it be given a meeting.  Plaintiff stated:

> While it will not be a fully complete substitute for this extraordinary, if not unprecedented, meeting, Elysium requests that the Department provide it with an opportunity to meet virtually with the Department in order to address any facts or arguments presented to the Department during the September 20, 2022 meeting. Letter from Elysium to Department of Commerce, (October 11, 2022) (P.R. 32)

The Department did not provide plaintiff this meeting.   Such failure was

---

[1] P.R. means Public Record.

prejudicial.  Plaintiff was denied the opportunity to present its case to the Department in the same fashion as permitted for the other party and in fact was deprived of any opportunity to make legal argument.   The Department issued a decision adverse to plaintiff.   Such meeting (and the denial of a meeting for plaintiff) would not have been prejudicial if the Department had found that the CMT was outside of scope as requested by plaintiff, but as the Department found against plaintiff, and as plaintiff was deprived of the opportunity to present its arguments in the same fashion, such failure to offer  a similar meeting (as well as the failure to refuse to hold a meeting with petitioner) was prejudicial and thus improper.   (See generally Elysium's Memorandum in Support of its 56.2 Motion at 21 to 25)

## B. The *Ex Parte* Memorandum was Insufficient

Both Defendant (8 to 13) and Defendant-Intervenor (14 to 17) argue that the Department's memorandum of an *ex parte* meeting was adequate.   Plaintiff disagrees.   Such disagreement turns on the requirement in 19 C.F.R. §351.104 and 19 U.S.C. 1677f(3)(B) that the memorandum include a "summary of the matters discussed or submitted".   Plaintiff submits that the memorandum does not properly summarize the matters discussed, but rather makes, at best, a very general reference to the meeting.  Defendant argues that even if this memo was not adequate, plaintiff cannot show that it was prejudiced as plaintiff cannot identify any information that was improperly withheld and that plaintiff's questions as to what may have been presented is nothing more than speculation.

This creates the absurd situation where it is impossible to identify whether the information not provided was adequate or prejudicial, because the memo does not identify such information.  As noted by the Court of International Trade:

Parties are entitled to know when and how information was conveyed; they should not have to rely on subtle judgments by Commerce officials

or employees about whether factual information is important, is already
in the record in some other form, or is even useful to the agency or to
the parties.
*Nippon Steel Corp. v. U.S.*, 118 F. Supp. 2d 1366, 1373 (Ct. Int'l Trade 2000)

Plaintiff submits that the memorandum must provide at least minimal detail as to what was discussed and that the failure to do so, does not satisfy the *Nippon Steel Corporation* standard. Further, as plaintiff thus had no opportunity to address the facts, arguments and the like presented at the meeting (and has no knowledge of what was presented), it was prejudiced by not being provided the detail. It strains credulity for the Defendant and the Defendant-Intervenor to argue that the failure to provide the same opportunity to present argument to plaintiff is not prejudicial and that any argument would have been futile. (See generally Elysium's Memorandum in Support of its 56.2 Motion at 25 to 26)

## C. **The Defendant and Defendant's Arguments about the Coverage of the Order is Unavailing.**

Both Defendant (8 to 13) and Defendant-Intervenor (14 to 17) argue that the goods are covered by the order and this is supported by substantial evidence. We cite to the substantial discussion provided in our brief in chief, and wish to supplement this by noting the following:

1.  Defendant argues at page 15 that the "composite marble tile" does not have significantly different properties than that of ceramic tile. Defendant cites to a number of properties which are possessed by ceramic tile and argue that since the composite marble tile has similar properties, it is not a different property. However, those characteristics are not "unique" to ceramic tile, rather, they are

simply the characteristics that numerous other substances possess including glass tile, marble slab, stone slab, and the like.  The Defendant discounts, if not ignores, the difference between a marble surface and a tile surface, particularly in the market place where Marble is viewed as a long lasting premium product and tile is viewed as a normal product used in ordinary applications.

2.  Defendant argues at page 17 that the undisputed fact that the marble constituent is much more valuable than the ceramic component is irrelevant as value is not one of the (k)(1) factors.  However, value is clearly relevant as it enters into the basic question as to "what" the product is.  Defendant basically argues that the composite tile is ceramic tile with a "decoration".   Plaintiff submits that the composite tile is a piece of marble to which a supporting material (the ceramic tile) is added.   And that the difference in value is an important part of determining this, whether or not it is a (k)(1) factor, as the question as to what a product "is" is a basic factor examined before the (k)(1) factors.   (See generally Elysium's Memorandum in Support of its 56.2 Motion at 34 to 36)

3.  The Defendant argues that plaintiff failed to place on record the definitions of "decorative" and "decoration" in the process.  Plaintiff notes that under the scope process in the absence of a formal brief and rebuttal process, the first time that plaintiff became aware of the Department's determination, was in the final scope ruling, and thus plaintiff had no opportunity to comment on the determination.

Furthermore, the decoration argument is a legal argument and the Court can readily ascertain the difference between functional and decorative.

4. The Defendant and Defendant Intervenor argue that the firing of the intermediate product is sufficient.   This ignores the express language of the order.  One of the primary tenets is that when Commerce is called upon to issue a scope ruling, it must take into account the plain language of the order.   The Federal Circuit stated:

> After an AD order is issued, Commerce is often called upon to issue "scope rulings" to clarify the scope of the AD order and determine whether particular products are included within its scope. *Walgreen,* 620 F.3d at 1352 (quoting 19 C.F.R. § 351.225(a)). In making such scope rulings, while the plain language of the AD order is paramount, Commerce must also take into account "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary [of Commerce] (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1); *Walgreen,* 620 F.3d at 1357. Consequently, a scope ruling is a highly fact-intensive and case-specific determination.
> *King Supply Company LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012) at 1345.

The Department analysis simply ignores the plain language of the order and "rewrite" the language.   The order states:

> *Ceramic tiles are articles containing a mixture of minerals including clay (generally hydrous silicates of alumina or magnesium)* ***that are fired so the raw materials are fused to produce a finished good*** *that is less than 3.2 cm in actual thickness.*

Plaintiff submits that this language is clear and unequivocal.  It contemplates the firing of the **raw materials** in order to fuse such raw materials to produce a

**finished good**.   The firing, in this case, does not produce the "finished good", it produces a component or material which goes into the finished good.   The composite marble tile is the finished good.    The raw materials, including the most valuable raw material, the marble, is not fired to produce a finished good. While a single input in the CMT is a mixture of minerals fired such that the materials are fused, the resultant product is an intermediate good.   The most valuable raw materials which make up the finished good are not fired and the final product is not fused together by means of such firing. Rather, the product consists of two pieces of material – one a layer of naturally occurring stone and the other a backing layer of manufactured product permanently bonded (not fused) together by epoxy. Not only is the finished product not fired, if the finished product were to be fired, the firing product would destroy the finished product.

That firing is critical to the final stage is also supported by statements by the petitioner during the investigation.   In its response to the Department's Supplemental Questionnaire, petitioner stated that a critical point was "{w}hether the constituent inputs of the tile have been fired to the point that the raw materials are fused". (P.R. 10 at 4) In this case, the constituent inputs have not been fired.   The most valuable input, the marble, has not been "fired" to the point that the raw materials are fused.   Rather it has been subject to lower temperature drying.   Rather, if the constituent inputs were fired, the raw materials

would not only **not** have been fused, but they would also have been destroyed. (See generally Elysium's Memorandum in Support of its 56.2 Motion at 31 to 34.)

5. Defendant (pages 14 - 19)  and Defendant-Intervenor (page 12) argue that the operations undertaken to produce the CMT are minor by focusing on the operations undertaken on the base material, and by not considering the multiple operations involved in producing the marble constituent.  Plaintiff submits that such operations are not minor processing.  The old adage is that a picture is worth a thousand words.

The Marble goes from this:



Picture of Marble Block (Exhibit 2 to Scope Application P.R. 9 at 17)

To this



Finished CMT (Exhibit 2 to Scope Application P.R. 9 at 23)

These pictures readily illustrate the substantive nature of the processing. These processing operations were not minor, they were significant. (See generally Elysium's Memorandum in Support of its 56.2 Motion at 31 to 34).

III.   **CONCLUSION**

In conclusion, the Defendant and Defendant-Intervenor's response does not support the ultimate decisions by the Department in this matter.  It is clear that the Department's scope investigation was procedurally defective.    This is not an investigation or review, it is a scope proceeding and thus has different procedures about argument.  The Department should not have held an *ex parte* meeting with the petitioner at the petitioner's production facility.    The Department further compounded this error by refusing to generate an adequate memorandum for the record providing details about such meeting.  The Department further compounded both of these errors by refusing to provide a meeting with Elysium. Notwithstanding Defendant and Defendant Intervenor's arguments to the contrary, such flaws were prejudicial, denying Elysium a full and fair opportunity to present

its positions to the Department and providing petitioner with significantly greater access.

Secondly, notwithstanding the procedural flaws in the investigation, based on the facts of record, it's clear that the product the subject of the scope ruling was outside of the scope of the order.   The express language of the order states that the product must be "***fired so the raw materials are fused to produce a finished good"***. The facts establish that the finished good is not fired, and that any firing occurs at an early stage of the production process.   Quite to the contrary, if all the raw materials were filed, a finished good would not result and the finished good would be destroyed.

Furthermore, the operations undertaken on the raw materials, including the marble, were substantial and were not minor processing operations.   It is also clear that the marble component, which is also the most valuable component, is more than mere decoration and is functional.

Accordingly, the Court should reject the arguments presented by defendant and defendant-intervenor in their responses.   The Court should remand this matter to the Department with instructions that the Department find that the CMT the subject of the Elysium Scope request is, as a matter of law, outside the scope of the order and that the Department issue notice of the determination and liquidation instructions to that effect.

Respectfully submitted,

/s/ David Craven
David Craven

Counsel to Elysium Tiles, Inc and Elysium Tile Florida, Inc

Dated: January 31, 2024

11