A-570-108, C-570-109
Remand
Slip Op. 24-80
**Public Document**
E&C/OVI:  MF

***Elysium Tiles, Inc., and Elysium Tile Florida, Inc., v. United States***
**Court No. 23-00041, Slip. Op. 24-80 (CIT July 18, 2024)**
**Ceramic Tile from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of

redetermination pursuant to the opinion and remand order of the U.S. Court of International

Trade (CIT or the Court) in *Elysium Tiles* issued on July 18, 2024.[1]  The final results concern

Commerce's scope ruling on composite tile[2] imported by Elysium Tiles, Inc. and Elysium Tile

Florida, Inc. (collectively, Elysium) for the antidumping and countervailing duty *Orders* on

ceramic tile from the People's Republic of China (China).[3]

In its *Remand Order*, the Court held that the Elysium scope ruling is not in accordance

with law because Commerce:  (1) failed to provide an adequate summary of an *ex parte* meeting;

and (2) failed to show with substantial evidence either that under 19 CFR 351.225(k)(1), the

*Orders*' scope language contemplates products such as marble composite tile, or that under 19

CFR 351.225(k)(2), the marble composite tile truly is considered a form of ceramic tile in

---

[1] *See Elysium Tiles, Inc., and Elysium Tile Florida, Inc., v. United States,* Court No. 23-00041, Slip. Op. 24-80 (CIT July 18, 2024) (*Elysium Tiles*) (*Remand Order*).
[2] *See* Memorandum, "Ceramic Tile from the People's Republic of China:  Final Scope Ruling on Elysium's Composite Tile," dated May 22, 2023 (Final Scope Ruling).
[3] *See Ceramic Tile from the People's Republic of China:  Antidumping Duty Order*, 85 FR 33089 (June 1, 2020) (*Ceramic Tile AD Order*), and *Ceramic Tile from the People's Republic of China:  Countervailing Duty Order*, 85 FR 33119 (June 1, 2020) (*Ceramic Tile CVD Order*) (collectively, the *Orders*).

purpose, function, advertising, and use.[4]  Pursuant to the *Remand Order*, we have:  (1) placed on the record a supplement to the *ex parte* memorandum, and (2) reconsidered whether, under either a (k)(1) or a (k)(2) analysis, Elysium's composite tile is within the scope of the *Orders*.  As set forth in detail below, we continue to find that Elysium's composite tile is within the scope of the *Orders*.

## II.    SCOPE OF THE *ORDERS*[5]

The merchandise covered by these *Orders* is ceramic flooring tile, wall tile, paving tile, hearth tile, porcelain tile, mosaic tile, flags, finishing tile, and the like (hereinafter ceramic tile). Ceramic tiles are articles containing a mixture of minerals including clay (generally hydrous silicates of alumina or magnesium) that are fired so the raw materials are fused to produce a finished good that is less than 3.2 cm in actual thickness.  All ceramic tile is subject to the scope regardless of end use, surface area, and weight, regardless of whether the tile is glazed or unglazed, regardless of the water absorption coefficient by weight, regardless of the extent of vitrification, and regardless of whether or not the tile is on a backing.

Subject merchandise includes ceramic tile with decorative features that may in spots exceed 3.2 cm in thickness and includes ceramic tile "slabs" or "panels" (tiles that are larger than 1 meter$^2$ (11 ft.$^2$)).  Subject merchandise includes ceramic tile that undergoes minor processing in a third country prior to importation into the United States.  Similarly, subject merchandise includes ceramic tile produced that undergoes minor processing after importation into the United States.   Such minor processing includes, but is not limited to, one or more of the following: Beveling, cutting, trimming, staining, painting, polishing, finishing, additional firing, or any

---

[4] *See Remand Order* at 18-19 and 11 n.5 (noting that because Elysium submitted its scope application prior to Commerce's recent revisions to the scope regulation, all citations are to the prior regulations); *see also* 19 CFR 351.225(k) (2023).
[5] *See Ceramic Tile AD Order*, 85 FR at 33117; *see also Ceramic Tile CVD Order*, 85 FR at 33120.

other processing that would otherwise not remove the merchandise from the scope of the *Orders* if performed in the country of manufacture of the in-scope product.

Subject merchandise is currently classified in the Harmonized Tariff Schedule of the United States (HTSUS) under the following subheadings of heading 6907:  6907.21.1005, 6907.21.1011, 6907.21.1051, 6907.21.2000, 6907.21.3000, 6907.21.4000, 6907.21.9011, 6907.21.9051, 6907.22.1005, 6907.22.1011, 6907.22.1051, 6907.22.2000, 6907.22.3000, 6907.22.4000, 6907.22.9011,  6907.22.9051, 6907.23.1005, 6907.23.1011, 6907.23.1051, 6907.23.2000, 6907.23.3000, 6907.23.4000, 6907.23.9011, 6907.23.9051, 6907.30.1005, 6907.30.1011, 6907.30.1051, 6907.30.2000, 6907.30.3000, 6907.30.4000, 6907.30.9011, 6907.30.9051, 6907.40.1005, 6907.40.1011, 6907.40.1051, 6907.40.2000, 6907.40.3000, 6907.40.4000, 6907.40.9011, and 6907.40.9051.  Subject merchandise may also enter under subheadings of headings 6914 and 6905:  6914.10.8000, 6914.90.8000, 6905.10.0000, and 6905.90.0050.  The HTSUS subheadings are provided for convenience and customs purposes only.  The written description of the scope of these *Orders* is dispositive.

## III.    BACKGROUND

On May 24, 2022, Elysium requested that Commerce conduct a scope inquiry to determine that its composite tile, in various sizes, is not covered by the scope of the *Orders*.[6] According to Elysium, the composite tile subject to its scope request is approximately 12 to 15 mm thick.[7]  Elysium stated that the base, or bottom, layer of its composite tile is made from porcelain, a vitrified ceramic, which if imported by itself, would be subject to the scope of the

---

[6] *See* Elysium's Letter, "Scope Ruling Request Regarding Composite Marble Tile from the People's Republic of China," dated May 24, 2022 (Scope Application), at Attachment II (page 3) (describing the composite tile as produced in six sizes:  300 by 300 millimeters (mm), 300 by 600 mm, 600 by 600 mm, 800 by 400 mm, 800 by 800 mm, and 1200 by 600 mm).  Tile size is not relevant to our analysis; thus, we refer to the product as "Elysium's composite tile" or "composite tile."
[7] *See* Scope Application at Attachment II (page 3).

*Orders*.[8]  Elysium stated that the second, or middle, layer consists of an aviation grade epoxy glue which is used to permanently bind the base layer and the top layer,[9] and that the third layer consists of top facing material made from natural stone, primarily marble.[10]  In its Scope Application, Elysium argued that the scope of the *Orders* defines ceramic tile as "articles containing a mixture of minerals including clay {…} that are fired so the raw materials are fused to produce a finished good that is less than 3.2 cm in actual thickness," and that because Elysium's composite tile is not finished when the porcelain layer is fired, and the finished composite tile is not fused together by the firing but rather by the epoxy, the composite tile is not covered by the plain language of the scope of the *Orders*.[11]

In the Final Scope Ruling, we determined that Elysium's composite tile is within the scope of the *Orders*.[12]  We found that the porcelain tile layer of the composite tile is explicitly covered by the plain language of the scope and would be subject to the *Orders*, if imported alone.[13]  We also determined, under a (k)(1) analysis, that Elysium's composite tile falls within the scope of the *Orders* as ceramic tile with a "decorative feature" (*i.e.*, porcelain tile base with a decorative marble top layer).[14]  In addition to relying on information in Elysium's Scope Application and the *Orders*' scope language, we relied on information in the Scope Decision Memorandum from the underlying investigations[15] and in the U.S. International Trade

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at Attachment II (pages 3 and 10).

[12] *See* Final Scope Ruling at 8.

[13] *Id.* at 7-8.

[14] *Id.* at 7-10.

[15] *See* Final Scope Ruling at 8 (citing Memorandum, "Scope Decision Memorandum for the Final Determinations," dated March 30, 2020 (Investigation Scope Decision Memorandum); *see also* Scope Application at Exhibit 4, Part 2 (containing Investigation Scope Decision Memorandum).

Commission (ITC) Final Determination.[16]  Both the Investigation Scope Decision Memorandum

and the ITC Final Determination are (k)(1) sources.[17]  Because we found (k)(1) sources were

dispositive with regard to whether Elysium's composite tile is included within the scope of the

*Orders*, we found it unnecessary to further consider (k)(2) factors including the product's

physical characteristics; the ultimate purchasers' expectations; and the product's ultimate use,

sales channels, and manner of advertisement and display.[18]  However, to provide a complete

explanation of our determination in response to the arguments and information submitted by

parties, we referenced certain (k)(2) factors in the Final Scope Ruling.

On January 25, 2023, Commerce issued the Final Scope Ruling.[19]  Thereafter, Elysium

challenged Commerce's scope ruling before the Court.

In its *Remand Order*, first, the Court held that Commerce's summary of the *ex parte*

meeting was "plainly insufficient"[20] and that this insufficiency "requires remediation before the

matter may be addressed by the plaintiff and reviewed by the court."[21]  The Court stated that "the

lack of a substantive summary of the *ex parte* meeting allegedly held 'in connection' with the

proceedings renders the determination not in accordance with the law."[22]  Second, the Court held

that Commerce's scope ruling was not supported by substantial evidence.[23]  Specifically, the

Court held that Commerce relied on (k)(2) information despite stating that (k)(1) sources were

dispositive and, thus, the Court assumed *arguendo* that Commerce found it necessary to consider

---

[16] *See* Final Scope Ruling at 5 and 9 (citing *Ceramic Tile from China*, Inv. Nos. 701-TA-621 and 731-TA-1447, USITC Pub. 5053 (May 2020) (Final) (ITC Final Determination)).
[17] *See* 19 CFR 351.225(k)(1).
[18] *See* 19 CFR 351.225(k)(2)(i).
[19] *See* Final Scope Ruling at 1.
[20] *See Remand Order* at 8.
[21] *Id.* at 10.
[22] *Id.* at 19.
[23] *Id.* at 10-11, 18-19.

(k)(2) factors.[24]  Next, the Court held that Commerce's focus on the marble top layer as

"decorative" is misplaced because Elysium's composite tile does not exceed 3.2 centimeters

(cm) and the Court concluded that the scope phrase "includes ceramic tile with decorative

features that may in spots exceed 3.2 cm in thickness …" was "meant only as an example of

something that could affect the thickness of the final product without impacting the dimensional

limitation in the scope description."[25]  The Court also held that record evidence does not indicate

that gluing and splitting of the marble slab to produce Elysium's composite tile constitutes

"minor processing," which, in the Court's view, is required by the scope language.[26]  Lastly, the

Court held as unreasonable Commerce's reliance on a table submitted by Elysium[27] to support

the similarity of composite and ceramic tile because the table equally supports that composite tile

is like marble tile rather than ceramic tile.[28]

Consequently, the Court remanded to Commerce for a determination consistent with its

opinion that:  (1) the lack of a substantive summary of the *ex parte* memorandum requires

remediation, and (2) Commerce must either show under a (k)(1) analysis that the scope language

contemplates products such as marble composite tile, or that, under the (k)(2) factors, the marble

composite tile truly is considered a form of ceramic tile in purpose, function, advertising, and

use.[29]

On October 8, 2024, we released our Draft Results of Redetermination to interested

parties.[30]  On October 15, 2024, Elysium[31] and the Coalition for Fair Trade in Ceramic Tile (the

---

[24] *Id.* at 13.
[25] *Id*. at 13-15.
[26] *Id.* at 15-17.
[27] *See* Scope Application at Attachment II (pages 5-6) (comparing, in a table, ceramic, marble and composite tile).
[28] *See Remand Order* at 17-18.
[29] *Id.* at 18-19.
[30] *See* Draft Results of Redetermination.
[31] *See* Elysium's Letter, "Comments on Draft Remand Determination," dated October 15, 2024 (Elysium Remand Comments).

petitioner)[32] timely submitted comments on the Draft Results of Redetermination.  On October 23, 2024, we held an *ex parte* meeting with Elysium.[33]

## IV.     SUBSTANTIVE SUMMARY OF THE *EX PARTE* MEETING

Consistent with the Court's opinion that the lack of a substantive summary of the *ex parte* meeting renders the determination not in accordance with the law, we have supplemented the *ex parte* memorandum to provide a substantive summary of the *ex parte* meeting.  The supplement to the *ex parte* memorandum is attached to this remand redetermination as an appendix.

## V.     ANALYSIS OF ELYSIUM'S COMPOSITE TILE UNDER 19 CFR 351.225(k)(1)

Pursuant to the Court's opinion, we have reconsidered whether Elysium's composite tile is within the scope of the *Orders*.  As such, we considered the product description in Elysium's Scope Application and supplemental responses, as well as the scope language of the *Orders* and the descriptions of merchandise contained in the investigations and previous determinations by Commerce.  Based on our analysis, in accordance with the Court's opinion and remand order, we continue to find Elysium's composite tile falls with the scope of the *Orders* under 19 CFR 351.225(k)(1), as detailed below.

### A.     Legal Framework

When a request for a scope ruling is filed, Commerce examines the scope language of the order(s) at issue and the description of the product contained in the scope ruling application.[34] Pursuant to Commerce's regulations, in determining whether a product is covered by the scope

---

[32] *See* Petitioner's Letter, "Petitioner's Comments on Draft Results of Redetermination," dated October 15, 2024 (Petitioner Remand Comments).
[33] *See* Memorandum, "Meeting with Elysium Tile Inc.," dated October 23, 2024.
[34] *See Walgreen Co. v. United States*, 620 F.3d 1350, 1357 (Fed. Cir. 2010).

of an order, Commerce may make its determination on the basis of the scope language alone where such language is dispositive.[35]

Commerce, at its discretion, may also take into account primary interpretive sources in making a scope ruling, including the descriptions of the merchandise contained in the petition and investigation; previous or concurrent determinations by Commerce, including prior scope rulings, memoranda, or clarifications pertaining to the order at issue or other orders with same or similar language; and determinations of the ITC pertaining to the order at issue.[36]  Additionally, Commerce may consider secondary interpretive sources, such as any other determinations of Commerce or the ITC, U.S. Customs and Border Protection (CBP) rulings or determinations, industry usage, dictionaries, and any other relevant record evidence, in determining a scope ruling.  However, to the extent that these secondary interpretive sources conflict with primary interpretive sources under 19 CFR 351.225(k)(1)(i), the primary interpretive sources will normally control.[37]  If Commerce determines that these sources are determinative, it will issue a final scope ruling as to whether the merchandise is subject to the scope of the order(s) at issue.[38]

Where Commerce determines that the sources described in 19 CFR 351.225(k)(1) are not dispositive, it will further consider the five additional factors set forth at 19 CFR 351.225(k)(2)(i).  These factors are:  (A) the physical characteristics of the merchandise; (B) the expectations of the ultimate purchasers; (C) the ultimate use of the product; (D) the channels of trade in which the product is sold; and (E) the manner in which the product is advertised and

---

[35] *See* 19 CFR 351.225(k)(1).
[36] *See* 19 CFR 351.225(k)(1)(i).
[37] *See* 19 CFR 351.225(k)(1)(ii).
[38] *See* 19 CFR 351.225(h).

displayed.  In the event of a conflict among these factors, the physical characteristics of the merchandise will normally be allotted greater weight than other factors.[39]

Commerce's scope rulings are made on a case-by-case basis, and may be applied on a producer-specific, exporter-specific, or importer-specific basis, or some combination thereof, or to all products from the same country with the same relevant physical characteristics as the product at issue, on a country-wide basis, regardless of the producer, exporter, or importer of the products.[40]

B.    **Scope Analysis**

For the reasons explained below, we continue to find that the description of the product in Elysium's Scope Application and supplemental responses, the *Orders*' scope language, and information from the investigations are dispositive as to whether Elysium's composite tile falls within the scope of the *Orders*, in accordance with 19 CFR 351.225(k)(1).  Accordingly, for this redetermination, we find it unnecessary to consider the additional factors specified in 19 CFR 351.225(k)(2), and we have removed discussion of (k)(2) factors from our analysis.

As described in the scope application, Elysium's composite tile is made of multiple layers.[41]  The base layer is porcelain or vitrified ceramic,[42] which, as described by Elysium in its scope application, is the "chief weight" of its composite tile product.[43]  Porcelain tile is explicitly covered by the plain language of the *Orders* ("The merchandise covered by these *Orders* is ceramic flooring tile, wall tile, paving tile, hearth tile, *porcelain tile*, mosaic tile, flags, finishing

---

[39] *See* 19 CFR 351.225(k)(2)(ii).
[40] *See* 19 CFR 351.225(m)(1).
[41] *See* Scope Application at Attachment II (page 3).
[42] *Id.*
[43] *Id*. at Attachment II (page 4).

tile, and the like…") (emphasis added).  Accordingly, we continue to find, and Elysium agrees, that the porcelain tile layer would be subject to the *Orders*, if imported alone.[44]

On top of the ceramic tile base, the middle layer of the tile consists of an aviation grade epoxy which is used to permanently bond the base layer to the top layer, and the top layer consists of marble.[45]  According to Elysium, the marble top layer is added to the visible portion of the tile to "enhance the appearance of the tile, provide the look and feel of a natural marble surface and the appearance of a natural stone product."[46]  Elysium described that because its product's base layer and chief weight is porcelain, the tile has been classified on entry as porcelain tile under HTSUS 6907.40.90.51.[47]  Given Elysium's product description that the marble layer is added to the visible portion of the ceramic tile to "enhance the appearance of the tile," we find that the marble layer is a surface decoration or decorative feature of the ceramic tile.  Accordingly, we find that Elysium's product falls within the scope of the *Orders* covering "ceramic tile with decorative features," and that the marble top layer does not remove the ceramic tile from the scope.

The scope language states that "{s}ubject merchandise includes ceramic tile with decorative features that may in spots exceed 3.2 cm in thickness … {.}"  In its *Remand Order*, the Court held that "… the phrase 'decorative features' was meant only as an example of something that could affect the thickness of the final product without impacting the dimensional

---

[44] *Id*. at Attachment II (page 3).
[45] *See* Scope Application at Attachment II (page 3).
[46] *See*, *e.g.*, Scope Application at Attachment II (pages 5 and 13); *see also* Elysium's Letter, "Reply to Petitioner's Comments On Elysium's Supplemental Questionnaire Response," dated November 1, 2022 (Elysium Rebuttal Comments) at 2 ("…when in use, the product appears to be made solely of natural stone and the natural stone provides the essential character.").
[47] *Id*. at Attachment (page 4) (Elysium explained that because its entries had been reviewed by CBP, it assumed the HTSUS 6907.40.90.51 is the correct classification); *see also Ceramic Tile AD Order*, 85 FR at 33117; *Ceramic Tile CVD Order*, 85 FR at 33120 ("Subject merchandise is currently classified in the Harmonized Tariff Schedule of the United States (HTSUS) under the following subheadings of heading 6907: … and 6907.40.9051.").

limitation in the scope description," and that this reading of the scope language is "confirmed by the lack of evidence on the record defining 'decorative feature.'"[48]  The Court stated that "{h}ad the scope language been intended to target decoration with ceramic backing, there would be evidence of this before the ITC or Commerce and the (k)(1) sources would support such an interpretation," and because Elysium's composite tile does not exceed 3.2 cm, "whether or not the marble is a decorative feature is irrelevant to the scope."[49]

We take the Court's point, in part.  The scope language itself does not target "decoration with a ceramic backing."[50]  Indeed, merchandise subject to the scope of the *Orders* is ceramic tile.  Though not dispositive of whether the product at issue falls within scope, we find that the "decorative features" language nonetheless demonstrates an intent that the scope covers ceramic tile with decorative features.  Further, the preceding sentence of the scope states that "*{a}ll ceramic tile* is subject to the scope regardless of end use, surface area, and weight, regardless of whether the tile is glazed or unglazed, regardless of the water absorption coefficient by weight, regardless of the extent of vitrification, and regardless of whether or not the tile is on a backing."[51]  Thus, when read together with the preceding sentence, the plain language indicates that the scope covers *all ceramic tile*, which we interpret to be inclusive of ceramic tile with decorative features.  In addition, while the scope does not define "decorative features," neither does it limit the term.

According to the Court, "because the product does not exceed 3.2 cm, whether or not the marble is a decorative feature is irrelevant to scope."[52]  We respectfully submit an alternative

---

[48] *See Remand Order* at 14.
[49] *Id.*
[50] *Id.*
[51] *See Ceramic Tile AD Order*, 85 FR at 33117; and  *Ceramic Tile CVD Order*, 85 FR at 33120 (emphasis added).
[52] *Id.*

view.  Our initial task in the scope inquiry was to identify the product subject to the scope ruling

request based on the description provided by Elysium in its Scope Application.[53]  Elysium

argued that its composite tile product—*i.e.*, a porcelain tile base, which Elysium itself conceded

is covered by the *Orders*' scope, with a marble surface layer—falls outside of the scope.[54]  To

address the argument, Commerce had to identify the marble surface layer with respect to

otherwise subject merchandise (the base layer of ceramic tile) and did so, based on the

descriptions of the product provided by Elysium in its Scope Application.[55]  Therefore, we find

that the marble surface layer as a decorative feature of the ceramic tile is relevant to our scope

inquiry.  Second, the scope uses the term "may," *i.e.*, "{s}ubject merchandise includes ceramic

tile with decorative features that *may* in spots exceed 3.2 cm," which we interpret to mean that

the decorative features need not necessarily cause the resulting tile product to exceed 3.2 cm.  In

other words, the scope does not say that it includes ceramic tile with decorative features *only*

*when* those decorative features cause the ceramic tile to exceed 3.2 cm.  As such, we find that the

clear meaning of this sentence, when read in context, is that if ceramic tile is 3.2 cm or less in

thickness, regardless of whether it includes decorative features, it is covered by the scope; and, if

ceramic tile with decorative features is more than 3.2 cm in thickness, whether in its entirety,

because of the decorative features, or just in certain areas where the decorative features

themselves cause the thickness to exceed 3.2 cm, it is still covered by the scope.

Information from the underlying investigations supports a determination that the intent of

the scope language was to cover ceramic tile with decorative features, regardless of whether such

features result in the tile exceeding 3.2 cm in thickness.  During the underlying investigations, in

---

[53] *See* Final Scope Ruling at 4.
[54] *See* Scope Application at Attachment II (pages 3 and 10).
[55] *See* Final Scope Ruling at 7-8.

response to an interested party's request to exclude ceramic tile with a three-dimensional, crackled glass decoration, the petitioner stated that "{t}ile that contains surface designs and/or decoration, of course, falls squarely within the scope."[56]  In its final scope decision on that product, Commerce stated:

> Finally, with regard to the 3-dimensional, crackled glass decoration on {the interested party's} tiles, the scope specifically states it "includes ceramic tile with decorative features that may in spots exceed 3.2 cm in thickness…"  As such, a ceramic tile with 3-dimensional, crackled glass decoration is covered by the scope of the investigations.  In sum, the plain language of the scope covers the tile referenced by {the interested party}.[57]

Notably, Commerce's analysis of the "decorative features" scope language was not contingent on whether the decoration caused the tile to exceed a thickness of 3.2 cm.  Commerce found that the plain language of the scope covered a tile with decorative features, without consideration of the tile's resulting thickness.[58]  Thus, we find that the investigations of these proceedings contain evidence that the petitioner intended the scope language to include ceramic tile with surface designs and/or decoration (*i.e.*, "decorative features"), regardless of whether such decoration renders the tile thicker than 3.2 cm, as well as evidence that Commerce interpreted the scope in the same way during the investigations.

The Court also held that "the determinative question is not whether the marble layer is decoration, but rather whether the process of applying the layer is so intensive that it goes beyond 'minor processing' to the degree that it brings the product out of scope."[59]  However, we respectfully disagree that minor processing is dispositive of scope coverage.  Minor processing is discussed in the second paragraph of the scope, which identifies merchandise included in the

---

[56] *See* Investigation Scope Decision Memorandum at 9-11 (citing Petitioner's Letter, "Petitioner's Scope Case Brief," dated October 14, 2019).
[57] *Id.* at 11.
[58] *Id.* at 9-11.
[59] *See Remand Order* at 15.

scope of the *Orders*.  Specifically, the second paragraph states:  "{s}ubject merchandise includes ceramic tile that undergoes minor processing in a third country prior to importation to the U.S. Similarly, subject merchandise includes ceramic tile produced that undergoes minor processing after importation into the U.S.  Such minor processing includes, but is not limited to, one or more of the following:  beveling, cutting, trimming, staining, painting, polishing, finishing, additional firing, or any other processing that would otherwise not remove the merchandise from the scope of the *Orders* if performed in the country of manufacture of the in-scope product."  The Court concluded that the scope language "painting, polishing, finishing … or any other processing that would otherwise not remove the merchandise from the scope of the *Orders* if performed in the country of manufacture of the in scope product" is "intended to convey that wherever such minor processing is performed it does not affect the scope and the parties do not appear to dispute this."[60]  The Court later states that the second scope paragraph "allows for minor processing to occur without taking the product out of scope, and provides a non-exhaustive list of examples of such minor processing."[61]  Yet, the scope language does not limit scope coverage to any particular type of production process or level of processing, and nothing in the plain language of the scope indicates that ceramic tile covered by the scope is limited to ceramic tile that has undergone only "minor processing."

Elysium's composite tile is produced, in its entirety, in China.[62]  The scope expressly provides that merchandise which has undergone minor processing *in another country* is not excluded from the scope, and nothing in the scope indicates that the language operates to exclude ceramic tile which undergoes extensive, significant, or specialized processing *in China*, as long

---

[60] *See Remand Order* at 11.
[61] *Id.* at 14.
[62] *See* Scope Application at Attachment II (pages 4, 7-8).

as the product remains ceramic tile within the meaning of the scope language when the
processing is completed.  We recognize that the Final Scope Ruling was not entirely clear on this
point.  The level of processing cannot be determinative of whether a product is in-scope or not,
when all of that processing occurs in China.  Rather, all that matters is whether the product
originates in China, which it does here, and then—more to the point of this scope inquiry—
whether that product falls within the scope using the analysis in 19 CFR 351.225(k).  We clarify
that the process to produce the product in China is not dispositive as to whether a product is
covered by the scope of the *Orders*.  Because there is no record evidence that processing of
Elysium's composite tile occurred outside of China, we find that the determinative question is
whether Elysium's composite tile meets the physical description of subject merchandise in the
scope of the *Orders*.

During the investigations, Commerce considered whether handmade tile was excluded
from the scope and concluded that it was within the scope of the *Orders* because it fit "squarely"
within the description of subject merchandise.[63]  In fact, Commerce declined the requested
exclusion for handmade tile, drawing upon the petition and in consideration of circumvention
concerns, explaining that:

> The scope of the investigations makes no mention of the production process for
> producing ceramic tile; however, the Petition lays out several general, basic steps.
> The basic steps listed in the Petition for making ceramic tile do not specify that
> certain techniques or processes must be performed to make the subject
> merchandise.  In fact, the production processes elucidated by the petitioner in the
> Petition indicate there are many production processes, depending on the desired
> final product, and are not just limited to one type of production… .  As the Petition
> states that "a variety of techniques exist for applying" decoration to tile, we do not
> find that merchandise fitting squarely within the scope would be rendered outside
> the scope simply because one of those techniques may be done by hand.
>
> Commerce has an obligation to ensure that the scope … is administrable for
> Customs … and that any resulting order is not ripe for circumvention.  There

---

[63] *See* Investigation Scope Decision Memorandum at 10-11.

exists no information on the record as to how CBP would determine whether a ceramic tile was hand painted or not which raises concerns regarding potential circumvention.[64]

With respect to Commerce's handmade tile scope decision, the Court stated that "Commerce focused on the technique being used to apply the decoration, rather than the decoration itself," and that "Commerce determined that the relevant question was not *what* decoration was being added, but *how* the decoration was added."[65]  We respectfully clarify that the relevant question in Commerce's handmade tile scope decision was whether the resulting product met the physical description of the in-scope merchandise.  In fact, it was the party that requested the scope exclusion, Soho Studio Corp, Belite Ceramics (Anyang) Co., Ltd., and Beilitai (Tianjin) Tile Co., Ltd. (collectively, Soho), who argued that its product should be excluded from the scope because the three-dimensional, crackled glass finish was done by hand, rather than being machine-produced.[66]  However, as detailed in the Investigation Scope Decision Memorandum, Commerce found that the relevant question was *not* how the decoration was added, as Soho set forth, but whether the resulting product met the physical description of in-scope merchandise.[67]  Commerce focused on the physical description of the finished product, rather than the technique being used to apply the decoration, finding that the type of process used to add decoration to a ceramic tile was not determinative as to whether the product was in- or out-of-scope.[68]  Specifically, Commerce stated:

> The scope of the investigations makes no mention of the production process for producing ceramic tile; however, the Petition lays out several general, basic steps. The basic steps listed in the Petition for making ceramic tile do not specify that

---

[64] *Id.* at 9.
[65] *See Remand Order* at 15 (emphasis in original).
[66] *See* Investigation Scope Decision Memorandum at 9.
[67] *Id.* at 9-11.
[68] *Id.*

certain techniques or processes must be performed to make the subject merchandise.[69]

Accordingly, Commerce found that "{a}s the petition states that '{a} variety of techniques exist for applying' decoration to tile, we do not find that merchandise fitting squarely within the scope would be rendered outside the scope simply because one of those 'techniques' may be done by hand."[70]  Commerce also stated that it gives substantial deference to the petitioner with respect to the scope language, and the petitioner argued that "it is of no moment to Commerce's analysis how that design was applied to the surface of the tile, or that {the producer} may utilize a more labor intensive than average method in decorating its tiles."[71]  Commerce found the handmade tile to be within the scope of the investigations, regardless of the method of applying the decoration, because the resulting product fit within the description of in-scope merchandise.[72]

It was the requestor, Soho, which raised the method by which the decoration was added and argued that the production process was a basis for exclusion from the scope of the *Orders*, but did not raise the type of decoration added as a basis for exclusion.[73]  Commerce's analysis of production process in the Investigation Scope Decision Memorandum was in consideration of, and in response to, Soho's arguments.[74]  Nevertheless, Commerce declined a request for an exclusion based on the process to produce the tile or the technique used to apply the decorative feature.[75]  In Commerce's analysis, there is no consideration of whether the process was minor. As such, we find that the scope language does not include a limitation for "minor processing," and the application of a minor processing restriction and analysis of the level of intensity of the

---

[69] *Id.* at 9-10.
[70] *Id.* at 10-11.
[71] *Id.* at 9.
[72] *Id.* at 9-11.
[73] *Id.* (citing Soho's Letter, "Comments on the Scope of the Investigations," dated May 28, 2019, at 3 and 4).
[74] *See* Investigation Scope Decision Memorandum at 9.
[75] *Id.* at 9-11.

production process in China is contrary to how Commerce has previously analyzed the scope of the *Orders*. In fact, in the Investigation Scope Decision Memorandum, Commerce emphasized that the "scope language includes all products which meet the physical description of the scope and do not otherwise qualify for an exclusion."[76]

As explained above, record evidence indicates that Elysium's composite tile fits the physical description of subject merchandise because it consists of a porcelain tile base layer, that is explicitly covered by the plain language of the scope, to which decorative marble top layer has been added. Because the marble "decorative feature" is added in the country of production (*i.e.*, China), the minor processing scope language is inapt here because there is no scope limitation on subject merchandise based on production process. Consequently, we continue to find that, regardless of the type of processing involved, the marble top layer on the ceramic tile constitutes a decorative feature which does not remove the composite tile from the scope of the *Orders*. Accordingly, for the foregoing reasons, we find under 19 CFR 351.225(k)(1), that the scope language contemplates products such as Elysium's composite tile.

Finally, the Court held that Commerce's consideration of key evidence, namely a table submitted by Elysium which compares ceramic, marble, and composite tile, was unreasonable.[77] The Court found that Commerce relied on this table to show that composite tile is like ceramic tile and therefore should be found within scope.[78] Elysium submitted the table as evidence in support of its arguments that the product is excluded based on the uses of the product, a (k)(2) factor.[79] Because we have found that Elysium's composite tile falls within the scope of the *Orders* in accordance with 19 CFR 351.225(k)(1), we have not relied on the source (the table

---

[76] *Id.* at 9.
[77] *See Remand Order* at 17; *see also* Final Scope Ruling at 8.
[78] *See Remand Order* at 18.
[79] *See* Scope Application at Attachment II (pages 4-6).

provided by Elysium) to make this redetermination.  Nevertheless, the fact that the table indicates that composite tile is between ceramic and solid marble tile does not detract from our determination in this remand.

## VI.    INTERESTED PARTY COMMENTS ON DRAFT RESULTS OF REDETERMINATION

As stated above, on October 8, 2024, we released our Draft Results of Redetermination to interested parties.[80]  On October 15, 2024, Elysium[81] and the petitioner[82] timely submitted comments on the Draft Results of Redetermination.  We address the comments below.

**Comment 1:  Summary of *Ex Parte* Meeting**

*Elysium's Comments*

The following is a verbatim summary of arguments submitted by Elysium.  For further details, *see* the Elysium Remand Comments at 1-2.

> {Commerce}'s new memorandum on the *ex parte* meeting appears to be adequate. Critically, this memorandum also reveals that information relevant to the scope ruling process (the production process for Tile) was presented to {Commerce} during the meeting.  Accordingly, {Commerce} erred when it refused to provide to Elysium the meeting that it requested with {Commerce}.

*Petitioner's Comments*

The following is a verbatim summary of arguments submitted by the petitioner.  For further details, *see* the Petitioner Remand Comments at 8.

> Commerce's supplemental *ex parte* communication memorandum complies with the *Remand Order* as it provides a substantive summary of the matters discussed including a description of Commerce's "Hometown Tour," the types of questions asked, the role the parties played in the question and answer session, and explicit reminder not to discuss ongoing case matters.

---

[80] *See* Draft Results of Redetermination.
[81] *See* Elysium Remand Comments.
[82] *See* Petitioner Remand Comments.

**Commerce's Position:**

As stated above, we have supplemented the *ex parte* memorandum to provide a substantive summary of the *ex parte* meeting.  The supplement to the *ex parte* memorandum is attached to this remand redetermination as an appendix.  All parties agree that it is adequate. Additionally, with respect to Elysium's claim that Commerce erred in not providing Elysium an opportunity to meet with Commerce, although we disagree with Elysium's argument that Commerce was required to grant Elysium a meeting,[83] based on Commerce's discretion to hold meetings with parties, on October 23, 2024, we met with Elysium pursuant to its request.[84]  In this meeting, Elysium reviewed for Commerce officials information provided at Exhibit 3(a) of its original request for a scope ruling regarding the process for producing composite tile.[85]

**Comment 2:  Whether Elysium's Composite Tile Is Within the Scope of the *Orders***

*Elysium's Comments*

The following is a verbatim summary of arguments submitted by Elysium.  For further details, *see* the Elysium Remand Comments at 2-4.

> The {Commerce} analysis does not support its decision that the composite tile falls within the scope of the antidumping and countervailing duty orders on ceramic tile from China.  The marble component was significant and provided more than decoration.  The operations undertaken to produce the composite tile were significant and produced a new and different article of commerce which was neither a ceramic tile nor a marble tile.

*Petitioner's Comments*

The following is a verbatim summary of arguments submitted by the petitioner (internal footnotes omitted and paragraphs condensed).  For further details, *see* the Petitioner Remand Comments at 4-8.

---

[83] *See* Appendix ("Commerce did not discuss, and Florida Tile officials did not present, information on the Elysium scope inquiry or whether Elysium's composite tile falls within the scope of merchandise subject to the ceramic tile from China orders during the visit."); *see also* Remand Order at 5 n.1 ("The CIT found that "Elysium fails to adequately support this assertion with any precedent, regulation, or statute requiring such a meeting, and the relevant statute makes no reference to such a requirement.").
[84] *See* Memorandum, "Meeting with Elysium Tile Inc.," dated October 23, 2024.
[85] *Id.*

The Coalition agrees with Commerce that Elysium's product falls within the scope of the *Orders* covering "ceramic tile with decorative features," and that the thin marble decorative top layer does not remove the ceramic tile from the scope. Specifically, the Coalition agrees that the scope language covers "ceramic tile with surface designs and/or decoration (*i.e.*, "decorative features"), regardless of whether such decoration renders the tile thicker than 3.2 cm." Indeed, ceramic tile, of course, commonly includes a decorative surface; the scope explicitly refers to coverage of ceramic tile with decorative features; and it would make absolutely no logical sense for the scope to cover such tile only when the decorative features exceed 3.2 cm "in spots." Under a (k)(1) analysis, Commerce's understanding of the term "decorative features" is based on the scope language of the *Orders* read in its entirety and information from Commerce's Scope Decision Memorandum during the investigations. The Coalition agrees with Commerce that minor processing is not dispositive to scope coverage. Under a textual analysis, Commerce found that the minor processing scope language is inapposite here because there is no scope limitation on subject merchandise based on production process. Rather, the dispositive question is whether Elysium's product meets the physical description of subject merchandise in the scope of the *Orders*. Under a (k)(1) analysis, Elysium's product clearly meets the physical description of the *Orders* because it is ceramic tile with surface designs and/or decoration (a thin marble layer). Commerce's interpretation of minor processing is also supported by substantial information from Commerce's Scope Decision Memorandum during the investigations, a (k)(1) source.

**Commerce's Position:**

In these final results of redetermination, we continue to find that Elysium's composite tile is within the scope of the *Orders*.

Regarding Elysium's contention that Commerce "continues to argue that the Elysium product is produced 'through minor processing,'"[86] Elysium misstates Commerce's conclusion. We explained above that Elysium's composite tile is produced, in its entirety, in China, and that the level of processing is not relevant or determinative as to whether or not the product is in-scope when that processing is done entirely in China. The scope expressly provides that merchandise which has undergone minor processing *in another country* is not excluded from the scope, but nothing in the scope indicates that the language operates to exclude ceramic tile which

---

[86] *See* Elysium's Remand Comments at 3.

undergoes extensive, significant, or specialized processing *in China* and remains ceramic tile fitting the description of subject merchandise in the scope at the end of this processing. As such, we have not found that Elysium's composite tile has undergone only minor processing, as Elysium claims; rather, we have found that the nature and complexity of processing occurring within China to make ceramic tile is immaterial to the scope analysis. The country-of-origin of Elysium's composite tile is China, and all manufacturing occurred in China.[87] Therefore, it does not matter how much processing occurred during the production of the merchandise in China; it matters only whether the resulting product meets the physical description of in-scope merchandise. Elysium claims that "substantial processing" in China means that a product is no longer within the scope, as it has taken on a new character and is a new article. We disagree that substantial or complex processing in China automatically removes a product from the scope of the *Orders*. A product may undergo a complex manufacturing process in China, but if that manufacturing and processing in China results in a product that meets the physical definition of in-scope merchandise, then the resulting product would be in-scope.

Elysium argues that its claim that the product becomes "a new article of commerce – a composite tile" is "reflected in the table ignored by {Commerce} in the original scope investigation and in the draft remand determination."[88] Although Commerce did consider the table in its Scope Ruling, the Court found that the table was ambiguous.[89] We acknowledge the Court's opinion that the table "does not support Commerce's interpretation that it indicates the composite tile is essentially ceramic tile with marble decoration,"[90] but we also find that the

---

[87] *See* Scope Application at Attachment II (pages 4, 7-8); *see also* Elysium's Letter, "Supplemental Questionnaire Response," dated October 11, 2022, at 3-4.
[88] *See* Elysium Remand Comments at 3.
[89] *See* Remand Order at 18 ("The table plainly indicates that composite tile exists as an ambiguous middle ground between ceramic and marble tile. There are no calculations or values to indicate that the composite tile is more like marble, or more like ceramic.")
[90] *Id.*

table's ambiguity means that it equally does not support Elysium's claim that the product is more like marble than ceramic tile. Accordingly, we have considered the table for these final results of redetermination, but we find it not determinative.

With respect to the prior Commerce scope decision regarding handmade tile that Commerce cited in the "Analysis of Elysium's Composite Tile Under 19 CFR 351.225(k)(1)" section, above, Elysium contrasts its composite tile product with the product that was the subject of that prior scope decision, *i.e.*, handmade tile with three-dimensional, crackled glass decoration. Elysium argues that the handmade tile scope determination is not directly relevant to its composite tile, and that the processing in Elysium's product converts the materials to a new and different product. Elysium further argues that the end user interacts directly with the tile and decoration in that case, whereas the end user only interacts with the marble layer of its composite tile.[91] However, the purpose of citing the decision regarding the handmade tile product with crackled glass decoration had nothing to do with whether the crackled glass equated to the marble layer, but rather stood for the proposition that the amount of time, effort, and complexity of process which went into producing that tile was not relevant to whether the tile met the physical description of the scope of the *Orders* – a proposition we continue to maintain. Additionally, to the extent that Elysium argues that "end user interaction" is a determinative factor in our 19 CFR 351.225(k)(1), analysis, we disagree. Elysium has not cited any (k)(1) sources that consider the component of the product that an end user "interacts with" as a factor in determining whether the product meets the physical description of in-scope merchandise. Even if this were a factor under consideration, we note that it is true of many ceramic tiles that are covered with glaze, crackled glass, marble, or other decorative features, that the end user would

---

[91] *See* Elysium's Remand Comments at 3-4.

only "interact" with the decorative surface layer of the product, in the same manner that Elysium describes for its composite tile.

Regarding Elysium's argument that its composite tile could not be fired without the destruction of the product, we find that it is not necessary for a tile to undergo a second firing to be considered subject merchandise. Some products, such as ceramic tile on mesh backing, could also be destroyed by a second firing, yet all ceramic tile, "regardless of whether or not the tile is on a backing" are covered by the scope of the *Orders*. Further, we disagree with Elysium's claim that a second firing "might only destroy certain decoration" of other products, but the "fired product would still function as tile."[92] Not only is this distinction unsupported, but it is also irrelevant. A second firing is not required for a product to be subject to the scope, and thus, the degree of destruction of Elysium's composite tile product versus other ceramic tile products were they to undergo a second firing is not pertinent to determining whether a product is within the scope. Because the scope language includes other ceramic tile products that do not undergo a second firing, and Elysium has not pointed to anything in the scope language or (k)(1) sources that requires firing to be the final production stage, we find Elysium's argument that its composite tile would be destroyed by a second firing unconvincing.

Elysium also argues that its composite tile product is "better described as marble tile with a ceramic back, rather than decorated ceramic tile."[93] However, regardless of the way Elysium chooses to describe its product, it reported that the composite tile is approximately 12 to 15 mm thick,[94] and that the marble layer is 3 mm of that thickness.[95] Therefore, only 20 to 25 percent of the total composite tile (3 of 15 mm and 3 of 12 mm, respectively) is composed of marble;

---

[92] *Id.* at 4.
[93] *Id.*
[94] *See* Scope Application at Attachment II (page 3).
[95] *See* Elysium's Letter, "Elysium Tile Inc. Reply to Petitioner's July 5, 2022 Response," dated July 19, 2022.

conversely, 75 to 80 percent of the total composite tile is composed of ceramic tile.[96]  Thus, we find that the composite tile fits the description of the subject merchandise within the scope – a ceramic tile with marble decoration.

Elysium claims that Commerce has ignored critical facts of record, that the marble component is approximately 60 percent of the value of the substrate and the ceramic base material is about 40 percent.[97]  However, Commerce finds that neither added value, nor cost of materials, are considered in the 19 CFR 351.225(k)(1) sources Commerce is using to conduct its scope analysis.[98]  Elysium has not provided any further explanation of how the added value and cost of materials would properly be considered under the 19 CFR 351.225(k)(1) analysis. Therefore, we continue to find this argument is not relevant to our determination.

Lastly, Elysium again argues that "… the use of ceramic tile as a backing material is a volitional choice and composite marble tile can also be made on multiple bases including granite, aluminum hydroxide, or artificial stone."[99]  We find that this argument is not relevant to our scope analysis.  Commerce examines the actual product that is subject to the scope inquiry; in this case, the product at issue in this scope inquiry is composite tile made with a porcelain tile base layer.  The fact that a similar product may be manufactured with other materials is irrelevant to our consideration of the actual product at issue in this scope inquiry.

---

[96] *See* Scope Application at Attachment II (page 3) ("The base, or bottom, layer is made from porcelain, a vitrified ceramic, which if imported by itself, would be subject to the scope of the order.").
[97] *See* Elysium Remand Comments at 4.
[98] *See*, *e.g.*, Memorandum, "Scope Decision Memorandum for the Final Determinations," dated March 30, 2020. Commerce declined to consider costs of production or labor as a factor in determining products within the scope of the investigation.  *See also* 19 CFR 351.225(k)(1):  (A) The descriptions of the merchandise contained in the petition pertaining to the order at issue; (B) The descriptions of the merchandise contained in the initial investigation pertaining to the order at issue; (C) Previous or concurrent determinations of the Secretary, including prior scope rulings, memoranda, or clarifications pertaining to both the order at issue, as well as other orders with same or similar language as that of the order at issue; and (D) Determinations of the Commission pertaining to the order at issue, including reports issued pursuant to the Commission's initial investigation.
[99] *See* Elysium Remand Comments at 4.

## IV.     FINAL RESULTS OF REDETERMINATION

For these final results of redetermination, we continue to find that Elysium's composite

tile is within the scope of the *Orders*.  Upon a final and conclusive decision in this litigation, as

appropriate, Commerce will issue appropriate instructions to CBP consistent with these final

results of redetermination.

10/28/2024

X _____

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

**APPENDIX**

UNITED STATES DEPARTMENT OF COMMERCE
**International Trade Administration**
Washington, D.C. 20230

A-570-108 / C-570-109
REMAND
Slip Op. 24-80
E&C/OVI:  CA

October 8, 2024

**MEMORANDUM TO:**      The File

**THROUGH:**      Erin Kearney  *EK*
Program Manager
AD/CVD Operations, Office VI

**FROM:**      Carolyn Adie
International Trade Compliance Analyst
AD/CVD Operations, Office VI

**SUBJECT:**      Ceramic Tile from the People's Republic of China – Supplement to
Original Memorandum

___

In response to the order of the U.S. Court of International Trade (CIT) in Slip Opinion 24-80 (Court No. 23-00041),[1] we are placing a memorandum to the file on the record of this remand, regarding the scope inquiry on Elysium composite tile, documenting the U.S. Department of Commerce (Commerce)'s visit to Florida Tile, Inc. (Florida Tile) in Lawrenceburg, Kentucky. The purpose of this memorandum is to supplement the original memorandum.[2]

On September 19-21, 2022, Commerce officials conducted a three-day "Hometown Tour"[3] at the University of Kentucky in Lexington, Kentucky; production facilities located in Georgetown, Kentucky; Berea College in Berea, Kentucky; and the Lawrenceburg, Kentucky, production facility of U.S. ceramic tile manufacturer, Florida Tile.

Florida Tile, is a member of the Coalition for Fair Trade in Ceramic Tile, the petitioner in the antidumping duty (AD) and countervailing duty (CVD) investigations which resulted in the AD and CVD orders on ceramic tile from the People's Republic of China (China).[4]

___

[1] *See Elysium Tiles, Inc. v. United States*, No. 23-00041, Slip. Op. 24-80, 2024 Ct. Int'l Trade LEXIS 79 (Ct. Int'l Trade July 18, 2024) (*Remand Opinion*).

[2] The *ex parte* memorandum, including its appendix with the list of personnel in attendance from both Commerce and Florida Tile, is incorporated by reference to this memorandum. *See* Memorandum, "Visit to Florida Tile, Inc. Production Facilities," dated September 26, 2022 (Memorandum). Several of the personnel who attended the Hometown Tour visit are no longer with Commerce, including Assistant Secretary Lisa Wang.

[3] Commerce conducted a series of "Hometown Tours" or outreach visits, during which Commerce personnel visited U.S. companies affected by Commerce's work and engaged in recruitment efforts at colleges or universities.

[4] *See Ceramic Tile from the People's Republic of China:  Antidumping Duty Order*, 85 FR 33,089 (June 1, 2020); *Ceramic Tile From the People's Republic of China: Countervailing Duty Order*, 85 FR 33,119 (June 1, 2020); *see*



During the Hometown Tour, 10 Commerce officials visited Florida Tile on September 20, 2022, between approximately 2:30 p.m. and 4:30 p.m.  Prior to the visit, and again at the beginning of the visit, Commerce officials reminded Florida Tile officials that Commerce would not discuss any ongoing case matters.

The two-hour visit commenced with a welcome and presentation by Florida Tile, during which Florida Tile explained the following:

- Founded in Lakeland, Florida, Florida Tile grew its product listing to include a large range of shapes and colors of tile.  At its domestic production facility in Lawrenceburg, Florida Tile can transform raw materials to a packaged, shippable product within its facility.
- Florida Tile pioneered using product classifications which allow customers to understand the slip resistance and other safety information for its flooring products, and the company advocates for industry-wide compliance with the American National Standards Specifications.
- Florida Tile officials referred to publicly available information indicating a surge of imports of tile from certain countries in 2019 after the AD and CVD investigations on ceramic tile from China.
- Florida Tile officials invited Commerce to the upcoming tile conference in April 2023, in Orlando, Florida.[5]
- Florida Tile officials stated that they understood that neither Commerce nor Florida Tile could discuss ongoing case matters, which included the ongoing scope segment.

After Florida Tile's presentation, Commerce officials conducted a walk-through of Florida Tile's operations and facilities.  During the walk-through, Commerce officials observed the U.S. manufacturer's production process for ceramic tile.  In the remaining time, Commerce officials posed a few non-technical questions about the ceramic tile observed that day and about Florida Tile's ceramic tile manufacturing process in general, and engaged in goodwill exchanges reflecting the outreach purpose of the Hometown Tour visit.

Commerce did not discuss, and Florida Tile officials did not present, information on the Elysium scope inquiry or whether Elysium's composite tile falls within the scope of merchandise subject to the ceramic tile from China orders during the visit.  After concluding comments by Florida Tile and Commerce officials, Commerce departed Florida Tile's facility.

---

*also Ceramic Tile from the People's Republic of China:  Final Affirmative Determination of Sales at Less Than Fair Value, and Final Partial Affirmative Critical Circumstances Determination*, 85 FR 19,425 (April 7, 2020); *Ceramic Tile from the People's Republic of China: Countervailing Duty Order*, 85 FR 33,119 (June 1, 2020); and Memorandum at 1 (explaining that Florida Tile is a member of the petitioning party in the ceramic tile from China proceedings).
[5] No Commerce officials attended or participated in this event.