IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ELYSIUM TILES, INC. AND ELYSIUM TILE FLORIDA, INC.,** | |
| Plaintiffs, | Before: Hon. Jane A. Restani, Judge |
| v. | Court No. 23-00041 |
| **UNITED STATES,** | |
| Defendant, | |
| and | |
| **THE COALITION FOR FAIR TRADE IN CERAMIC TILE,** | |
| Defendant-Intervenor. | |

**DEFENDANT-INTERVENORS' COMMENTS ON FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND**

 

**David M. Spooner, Esq.**
**Nicholas Galbraith, Esq.**

**BARNES & THORNBURG LLP**
**555 12th ST NW Ste 1200**
**Washington, DC 20004**
**(202) 289-1313**

*Counsel for The Coalition for Fair Trade in Ceramic Tile*

**Dated: December 2, 2024**

Ct. No. 23-00041

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................... ii

I. INTRODUCTION .......................................................................................................... 2

II. BACKGROUND ............................................................................................................ 2

III. ARGUMENT ................................................................................................................. 3

   A. *Substantial Evidence on the Record Supports Commerce's Determination that Plaintiff's Composite Ceramic Tile is Clearly Covered by the Scope of the Orders* ............... 3

   B. *Commerce's Scope Language Analysis and Information from the Underlying Investigations Support its Interpretation of "Ceramic Tile with Decorative Features"* ............... 5

   C. *Minor Processing is Not Dispositive to Exclude Elysium's Composite Ceramic Tiles Because All Production Occurs in China* ............... 8

   D. *Commerce Supplemental Ex Parte Communication Memorandum Provides an Adequate Summary of the Matters Discussed* ............... 10

IV. CONCLUSION ............................................................................................................ 11

Ct. No. 23-00041

## **TABLE OF AUTHORITIES**

**Cases**

*Duferco Steel, Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002) ............................................. 6, 7
*Meridian Prods., LLC v. United States*, 851 F.3d 1375 (Fed. Cir. 2017) ........................................... 6
*Saha Thai Steel Pipe Pub. Co. v. United States*, 101 F.4th 1310, 1323 (Fed. Cir. 2024) ................. 7
*Shenyang Yuanda Aluminum Indus. Engr. Co., Ltd. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015) ............................................................................................................................................ 6
*Smith Corona Corp. v. United States, 915 F.2d 683, 686 (Fed. Cir. 1990)).* ..................................... 7
*Worldwide Door Components, Inc. v. United States*, 119 F.4th 959 (Fed. Cir. 2024) .................. 5, 6

**Regulations**

19 C.F.R. § 351.225(k)(1) .............................................................................................................. 4, 5

Ct. No. 23-00041

## I.     INTRODUCTION

On behalf of Defendant-Intervenor Coalition for Fair Trade in Ceramic Tile ("Coalition" or "Petitioner"), we respectfully submit the following comments on the October 29, 2024, remand redetermination issued by the U.S. Department of Commerce ("Commerce"). *See* Final Results of Redetermination Pursuant to Court Remand in *Elysium Tiles, Inc., and Elysium Tile Florida, Inc., v. United States*, Court No. 23-00041, Slip. Op. 24-80 (CIT July 18, 2024) (Oct. 29, 2024), ECF 52-1 ("Final Remand Results").

## II.    BACKGROUND

This action arises out of Commerce's final scope ruling finding that certain composite tile imported by Elysium Tiles, Inc. and Elysium Florida Tile, Inc. (collectively, "Elysium" or "Plaintiff) fall within the scope of the antidumping and countervailing duty *Orders* on ceramic tile from the People's Republic of China ("China"). *See id*. at 1; *see also* C*eramic Tile from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 33,089 (Dep't Commerce June 1, 2020) ("AD Order"); *Ceramic Tile from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 33,119 (Dep't Commerce June 1, 2020) ("CVD Order").

On May 24, 2022, Plaintiff requested a scope ruling from Commerce that its composite tile, in various sizes, is not covered by the scope of the *Orders*. *Id*. at 3. In its scope application, Plaintiff described its composite tile as consisting of a base layer of porcelain, a vitrified ceramic, which if imported by itself, would be subject to the scope of the *Orders*, a second layer of aviation grade epoxy, and a third layer of top facing material made from natural stone, primarily marble. *Id*. at 3-4.

On January 25, 2023, Commerce issued the Final Scope Ruling, concluding Plaintiff's composite ceramic tile is covered by the plain language of the *Orders'* scope. *Id*. at 3. First, Commerce found that the porcelain tile layer of the composite tile is explicitly covered by the plain

Ct. No. 23-00041

language of the scope and would be subject to the *Orders*, if imported alone. *Id*. at 4. Commerce also determined that, under a (k)(1) analysis, Elysium's composite tile falls within the scope of the Orders as ceramic tile with a "decorative feature" (*i.e.*, porcelain tile base with a decorative marble top layer). *Id*.

Elysium appealed Commerce's final scope ruling to this Court. The Court directed Commerce to either show under a 19 C.F.R. § 351.225(k)(1) that the scope language contemplates coverage of products such Elysium's composite ceramic tile or that under the 19 C.F.R. § 351.225(k)(2) factors Elysium's composite ceramic tile is subject tile in purpose, function, advertising, and use. *Elysium Tiles, Inc., and Elysium Tile Florida, Inc., v. United States*, Court No. 23-00041, Slip Op. 24-80 ("*Remand Order*"), at 18-19. Moreover, the Court directed Commerce to remediate the summary found in an *ex parte* communication memorandum of a plant tour of Coalition member Florida Tile. *Id*. at 19.

### III. ARGUMENT

#### A. Substantial Evidence on the Record Supports Commerce's Determination that Plaintiff's Composite Ceramic Tile is Clearly Covered by the Scope of the Orders

Commerce's final remand results are supported by substantial evidence and in accordance with law. The Coalition agrees with Commerce that under a (k)(1) analysis, Elysium's product falls squarely within the scope of the *Orders* covering "ceramic tile with decorative features," and that the marble top layer does not remove the ceramic tile from the scope. Final Remand Results at 10. Specifically, the Coalition agrees that the "plain language indicates that the scope covers *all ceramic tile*…inclusive of ceramic tile with decorative features." *Id*. at 11. In addition, the Coalition agrees that while the scope does not define "decorative features," neither does it limit the term. *Id*. Under a (k)(1) analysis, Commerce's understanding of the term "decorative features" is based on the scope language of the *Orders* read in its entirety and information from Commerce's Scope Decision

3

Ct. No. 23-00041

Memorandum during the investigations.

Additionally, the Coalition agrees with Commerce that minor processing is not dispositive to scope coverage. *Id.* at 14. Under a textual analysis, Commerce rightfully found that the scope language does not limit scope coverage to any particular type of production process or level of processing, and nothing in the plain language of the scope indicates that ceramic tile covered by the scope is limited to ceramic tile that has undergone only "minor processing." *Id*. Rather, the dispositive question is whether Elysium's product meets the physical description of subject merchandise in the scope of the *Orders*. Under a (k)(1) analysis, Elysium's product clearly meets the physical description of the *Orders* because it is ceramic tile with surface designs and/or decoration (a thin marble layer). Commerce's interpretation of minor processing is also supported by substantial information from Commerce's Scope Decision Memorandum during the investigations, a (k)(1) source.

Recent case opinions from the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") further supports Commerce's thorough textual analysis and understanding of the scope language at issue. In *Worldwide Door Components, Inc. v. United States,* the Federal Circuit examined and affirmed Commerce's First Remand Redetermination concerning a scope ruling for imported door thresholds and the scope of the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China. 119 F.4th 959 (Fed. Cir. 2024). The Federal Circuit held, in relevant part, that Commerce's interpretation of the "subassemblies" scope language in its First Remand Redetermination is supported by substantial evidence because: (1) Commerce "engaged in a thorough analysis of the scope language, explaining precisely how it defined a subassembly," (2) Commerce "reviewed record evidence to conclude that the goods at issue met the definition of a subassembly," and (3) Commerce "even took the additional step of analogizing the goods at issue," to other products that had been "previously categorized as subassemblies by Commerce." *Id*. at 971. The same reasoning applies here.

4

Ct. No. 23-00041

Here, Commerce engaged in a thorough textual analysis of the scope language, considering both the meaning of "decorative feature" as it specifically appears in the scope, as well as the meaning of "decorative feature" when read in context with the entirety of the scope. Final Remand Results at 10-12. Commerce engaged in the same textual exercise with respect to "minor processing" focusing in particular on key words elucidating the intent of the scope language. *Id*. at 16-18. Specifically, under a textual analysis, minor processing is not dispositive to scope coverage here because there is no scope limitation on subject merchandise based on production process. *Id*. at 17.

Moreover, Commerce explained precisely how it determined that the scope language includes *all ceramic tile* regardless of decorative features – citing two textual portions of the scope itself. *Id*. at 10-12. Commerce also considered record evidence submitted by both Plaintiff, in its scope application, and the Coalition, during the investigations, to conclude Elysium's composite tile is in-scope. *Id*. at 10, 15. Commerce also took the additional step of analogizing Elysium's composite tile with a decorative marble layer to handmade decorative tile previously categorized an in-scope ceramic tile by Commerce. *Id*. at 15-16.

Accordingly, when determining that Elysium's tile is covered by the scope of the *Orders*, Commerce engaged in the same level of textual analysis that led the Federal Circuit to hold that Commerce's First Remand Redetermination regarding subassemblies was supported by substantial evidence in the W*orldwide Door Components* case. 119 F.4th 972.

    **B.**    **Commerce's Scope Language Analysis and Information from the Underlying Investigations Support its Interpretation of "Ceramic Tile with Decorative Features"**

The Federal Circuit has long recognized that the scope language of the order is the "cornerstone" of this analysis and "a predicate for the interpretive process." *See Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002); *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017) ("Meridian I"); Sh*enyang Yuanda Aluminum Indus. Engr. Co.,*

5

Ct. No. 23-00041

*Ltd. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015); *Saha Thai Steel Pipe Pub. Co. v. United States*, 101 F.4th 1310, 1323-24. Although the scope of the order can be clarified, the scope language cannot be interpreted or "changed in a way contrary to its terms." *Duferco Steel, Inc.*, 296 F.3d 1087 at 1097. "While the terms of {an} order describe the merchandise within the scope of the order, they may also expressly describe merchandise that, for whatever reason, is excluded from the scope." *Id*. (quoting *Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed. Cir. 1990)). But, here, the scope of the *Orders* contains no express exclusions.

In response to the *Remand Order's* holding about whether the scope language targets "decoration with ceramic backing," Commerce properly evaluated the plain language of the scope to determine that "the scope covers *all ceramic tile*…inclusive of ceramic tile with decorative features." Final Remand Results at 11. As explained by Commerce, although the scope does not define "decorative features," the inclusion of the language alone "nonetheless demonstrates an intent that the scope covers ceramic tile with decorative features." *Id*. The Coalition wholeheartedly agrees with Commerce's interpretation. The scope term "decorative feature" is relevant here because as Elysium concedes, its product is a porcelain tile base (which is covered by the *Orders*) with a marble surface layer. *Id*. at 10. That is, the marble surface layer is a decorative feature of the ceramic tile.

The Coalition cannot help but point out that the surface of virtually all ceramic tile products differs from the back side of the tile, so as to impart a look and feel that is appealing to the consumer. The scope contains a sentence clarifying that ceramic tile with decorative features exceeding 3.2 cm "in spots" is subject to the *Orders*. It would make no logical sense for the scope to cover ceramic tile with decorative features that "in spots" exceed the maximum thickness specified in the scope, while excluding tile with decorative features that do not result in portions of the surface exceeding the scope's thickness specification. Commerce's interpretation of

6

"decorative feature" as stated below is correct:

> {T}he scope uses the term "may," i.e., "{s}ubject merchandise includes ceramic tile with decorative features that *may* in spots exceed 3.2 cm," which we interpret to mean that the decorative features need not necessarily cause the resulting tile product to exceed 3.2 cm. In other words, the scope does not say that it includes ceramic tile with decorative features only when those decorative features cause the ceramic tile to exceed 3.2 cm. As such, we find that the clear meaning of this sentence, when read in context, is that if ceramic tile is 3.2 cm or less in thickness, regardless of whether it includes decorative features, it is covered by the scope; and, if ceramic tile with decorative features is more than 3.2 cm in thickness, whether in its entirety, because of the decorative features, or just in certain areas where the decorative features themselves cause the thickness to exceed 3.2 cm, it is still covered by the scope.

Final Remand Results at 12.

The Coalition wholeheartedly agrees with Commerce's interpretation that the plain language of the scope covers "*all ceramic tile*" regardless of any decorative features present on the tile. *Id*. at 11-12. Indeed, the sentence preceding the reference to "decorative features" in the scope provides that "*{a}ll ceramic tile is subject to the scope regardless of* end use, surface area, and weight, regardless of whether the tile is glazed or unglazed, regardless of the water absorption coefficient by weight, regardless of the extent of vitrification, and regardless of whether or not the tile is on a backing." (emphasis added) 85 Fed. Reg. 33,117 (Dep't Commerce June 1, 2020); 85 Fed. Reg. 33,120 (Dep't Commerce June 1, 2020). Additionally, the Coalition agrees with Commerce's understanding that the intent of the scope language is to cover ceramic tile with decorative features, "regardless of whether such features result in the tile exceeding 3.2 cm in thickness." Final Remand Results at 12. Thus, Commerce correctly interpreted the scope so as not to change the language contrary to its terms.

Commerce's interpretation of the term "decorative feature" within the context of the scope language is also supported by substantial information from the underlying investigations. For example, during the underlying investigations, in response to an interested party's request to

Ct. No. 23-00041

exclude ceramic tile with a three-dimensional, crackled glass decoration, Petitioner stated that "{t}ile that contains surface designs and/or decoration, of course, falls squarely within the scope." *Id*. at 13. Later in its final scope decision on that product during the investigations, Commerce stated:

> Finally, with regard to the 3-dimensional, crackled glass decoration on {the interested party's} tiles, the scope specifically states it "includes ceramic tile with decorative features that may in spots exceed 3.2 cm in thickness…" As such, a ceramic tile with 3-dimensional, crackled glass decoration is covered by the scope of the investigations. In sum, the plain language of the scope covers the tile referenced by {the interested party}.

*Id*.

There, Commerce correctly determined in its Scope Decision Memorandum, a (k)(1) source, that "the plain language of the scope covered a tile with decorative features, without consideration of the tile's resulting thickness." *Id*. Furthermore, as Commerce correctly noted from its analysis during the investigations, the term "decorative features" "was not contingent on whether the decoration caused the tile to exceed a thickness of 3.2 cm." *Id*. Accordingly, the Coalition fully agrees with Commerce's Final Remand Results that Elysium's product falls squarely within the scope of the *Orders* covering "ceramic tile with decorative features" and that the marble top layer does not remove the ceramic tile from the scope under a (k)(1) analysis.

C.  **Minor Processing is Not Dispositive to Exclude Elysium's Composite Ceramic Tiles Because All Production Occurs in China**

The Coalition agrees with Commerce's finding that minor processing is *not* dispositive to scope coverage because *all* of Elysium's composite ceramic tile production occurs in China. Final Remand Results at 13-14. Minor processing is discussed in the second paragraph of the scope, providing that: "{s}ubject merchandise includes ceramic tile that undergoes minor processing in a third country prior to importation to the U.S.  Similarly, subject merchandise includes ceramic tile produced that undergoes minor processing after importation into the U.S. Such minor processing

8

Ct. No. 23-00041

includes, but is not limited to, one or more of the following: beveling, cutting, trimming, staining, painting, polishing, finishing, additional firing, or any other processing that would otherwise not remove the merchandise from the scope of the Orders if performed in the country of manufacture of the in-scope product." 85 Fed. Reg. 33,117 (Dep't Commerce June 1, 2020); 85 Fed. Reg. 33,120 (Dep't Commerce June 1, 2020). The Coalition wholeheartedly agrees with Commerce's understanding that the type of minor processing used to add decoration to a ceramic tile is not determinative as to whether a product is in- or out-of-scope when all of that processing occurs in China. Final Remand Results at 15.

Moreover, the Coalition agrees with Commerce's textual analysis that: "scope language does not include a limitation for 'minor processing,' and the application of a minor processing restriction and analysis of the level of intensity of the production process in China is contrary to how Commerce has previously analyzed the scope of the *Orders*." *Id*. at 17-18. Indeed, as Commerce explains with respect to its handmade tile scope decision during the investigations, Commerce found that the relevant question was not how the decoration was added, but whether the resulting product met the physical description of in scope merchandise. *Id*. at 16.

During the investigations, Commerce rightfully focused on the "physical description of the finished product, rather than the technique being used to apply the decoration." *Id*. When applying the same analytical framework here, Commerce rightfully concluded that "the level of processing occurring in China cannot be determinative of whether a product is in-scope or not." *Id*. at 16. Interpreting otherwise would significantly alter the scope language and would be contrary to its terms.

Commerce's interpretation of minor processing is also supported by substantial information from the underlying investigations. For example, as noted above, with respect to a request to exclude handmade ceramic tile, Commerce properly found the handmade tile to be within the scope of the

9

Ct. No. 23-00041

investigations, regardless of the method of applying the decoration, because the resulting product fit within the description of in-scope merchandise. *Id*. In fact, in its Investigation Scope Decision Memorandum, a (k)(1) source, Commerce emphasized that the "scope language includes all products which meet the physical description of the scope and do not otherwise qualify for an exclusion." *Id*. at 18.

To determine whether Elysium's tile meets the physical description of the scope, Commerce relied on record evidence demonstrating that Elysium's composite tile consists of a porcelain tile base layer – that is explicitly covered by the plain language of the scope – to which a thin decorative marble top layer has been added. Using such evidence and the findings in the handmade tile scope decision, Commerce rightfully concluded that: "{b}ecause the marble 'decorative feature' is added in the country of production (i.e., China), the minor processing scope language is inapt here because there is no scope limitation on subject merchandise based on production process." *Id*.

The Coalition's understanding of the scope language is consistent with that of Commerce – regardless of the type of processing involved, the marble top layer on the ceramic tile constitutes a decorative feature which does not remove the composite tile from the scope of the Orders. Accordingly, under a (k)(1) analysis, Elysium's product clearly meets the physical description of the Orders because it is ceramic tile with surface designs and/or decoration (marble layer). Elysium's composite ceramic tile is not otherwise excluded under scope.

### D. Commerce Supplemental *Ex Parte* Communication Memorandum Provides an Adequate Summary of the Matters Discussed

Commerce's supplemental *ex parte* communication memorandum complies with the *Remand Order* as it provides a substantive summary of the matters discussed including a description of Commerce's "Hometown Tour," the types of questions asked, and the role the parties played in the question-and-answer session. As Commerce notes in its Final Remand Results, all parties agree that

Ct. No. 23-00041

the supplemental *ex parte* communication memorandum is adequate. Final Remand Results at 20. Finally, on October 23, 2024, and pursuant to Elysium's request, Commerce met with Elysium on an *ex parte* basis to discuss the process for producing composite tile. *Id*.

## IV.     CONCLUSION

For the reasons discussed above, the Coalition Defendant-Intervenors respectfully submit that the Court should sustain Commerce's results on redetermination consistent with the evidence on the record demonstrating that Elysium's composite tile is within the scope of the *Orders* .

Respectfully submitted,

*/s/ David M. Spooner*
David M.  Spooner
Nicholas Galbraith, Esq.

**BARNES & THORNBURG LLP**
555 12th ST NW Ste 1200
Washington, DC 20004
(202) 289-1313
David.Spooner@btlaw.com

*Counsel for The Coalition for Fair Trade in Ceramic Tile*

Dated:  December 2, 2024

11

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for the Defendant-Intervenors' Response to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, as computed by Barnes & Thornburg LLP's word processing system (Microsoft Word 365), is 3,071 words.

/s/ David M. Spooner
Nicholas Galbraith, Esq.

**BARNES & THORNBURG LLP**
555 12th ST NW Ste 1200
Washington, DC 20004
(202) 289-1313

*Counsel for The Coalition for Fair Trade in Ceramic Tile*

Dated: December 2, 2024