Slip Op. 25-25

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ELYSIUM TILES, INC., AND ELYSIUM TILE FLORIDA, INC., | |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | Before: Jane A. Restani, Judge |
| Defendant, | Court No. 23-00041 |
| and | |
| THE COALITION FOR FAIR TRADE IN CERAMIC TILE, | |
| Defendant-Intervenor. | |

### OPINION AND ORDER

[Commerce's Final Results on the antidumping and countervailing duty order on ceramic tile from the People's Republic of China are remanded for reconsideration consistent with this opinion.]

Dated: March 11, 2025

David J. Craven, Craven Trade Law LLC, of Chicago, IL, on the brief for plaintiffs Elysium Tiles, Inc., and Elysium Tile Florida, Inc.

Christopher A. Berridge, Lead Attorney, Commercial Litigation Branch – Civil Division, U.S. Department of Justice, of Washington, DC, on the brief for the defendant. Of counsel on the brief were Leslie Mae Lewis, U.S. Department of Commerce, of Washington, DC, and Vania Y. Wang, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

David M. Spooner, Barnes & Thornburg, LLP, of Washington, DC, on the brief for defendant-intervenor The Coalition for Fair Trade in Ceramic Tile. With him on the brief were Christine J. Sohar Henter and Nicholas A. Galbraith.

Restani, Judge:

Before the court is the United States Department of Commerce's ("Commerce") Final Redetermination Pursuant to Court Order, ECF No. 52. The court remanded to Commerce to show that either the scope language contemplates products such as Elysium's marble composite tile under a (k)(1) analysis, or the marble composite tile truly is considered a form of ceramic tile in purpose, function, advertising, and use under the (k)(2) factors. Op. and Order, ECF No. 49 (July 18, 2024) ("Op. and Order"). The court further concluded that the lack of a substantive summary of the ex parte meeting allegedly held "in connection" with the proceedings renders the determination not in accordance with law. Id. at 5–10.

In Commerce's Final Results of Redetermination, Commerce (1) placed on record a supplement to the ex parte memorandum,[1] and (2) reconsidered whether, under either a (k)(1) or a (k)(2) analysis, Elysium's composite tile is within scope. Def.'s Final Results of Redetermination Pursuant to Court Remand, ECF No. 52 (Oct. 29, 2024) ("Def.'s Redetermination"). Commerce continues to find that Elysium's composite tile is within scope. For the following reasons, the court finds that Commerce's redetermination is not supported by substantial evidence and remands to Commerce for reconsideration consistent with this opinion.

## BACKGROUND

The court assumes familiarity with the facts of this case as set out in the court's previous opinion and order and recounts the facts relevant to the issues currently before the court. See generally Op. and Order. On June 1, 2020, Commerce issued antidumping and countervailing

---

[1] In its redetermination, Commerce supplemented its ex parte memorandum to provide a substantive summary of the ex parte meeting. Def.'s Final Results of Redetermination Pursuant to Court Remand, App'x 1–2, ECF No. 52 (Oct. 29, 2024) ("Def.'s Redetermination"). After reviewing the supplemental memo, Elysium stated "[t]he summary of the ex parte meeting generated by the Department was adequate." Pls.' Comments on Remand Determination at 1, ECF No. 55 (Dec. 2, 2024) ("Pls.' Comments"). The court finds that this substantive summary is sufficient.

duty orders on ceramic tile from the People's Republic of China. <u>Ceramic Tile From the People's Republic of China: Antidumping Duty Order</u>, 85 Fed. Reg. 33,089 (Dep't Commerce June 1, 2020) ("Scope Order Appendix"); <u>Ceramic Tile From the People's Republic of China: Countervailing Duty Order</u>, 85 Fed. Reg. 33,119-02 (Dep't Commerce June 1, 2020) (collectively, the "orders"). On May 24, 2022, Elysium requested that Commerce conduct a scope inquiry to determine that its composite tile is not covered by the scope of the orders. <u>Request to Reconsider and Scope Application</u>, C.R. 2, P.R. 8 (May 20, 2022) ("Scope Application").

Elysium's composite tile is made of multiple layers of materials. Scope Application, C.R. 2 at 24, P.R. 8 at 36. The base layer is made from porcelain tile, the middle layer consists of aviation-grade epoxy used to bond the base layer to the top layer, and the top layer consists of a thin layer of marble. <u>Id.</u>; <u>Scope Application Exhibits</u>, C.R. 3 at 55, P.R. 9 at 67 (Feb. 6, 2024). To create the composite tile, two porcelain tiles are sandwiched around a 6 mm thick marble layer, creating a "biscuit" glued together with the epoxy. <u>Scope Application Exhibits</u>, C.R. 3 at 62, 64, P.R. 9 at 74, 76; <u>see</u> <u>Scope Application</u>, C.R. 2 at 28, P.R. 8 at 40; <u>Response from Diaz Trade Law to Sec. of Commerce</u>, C.R. 8 at 304, P.R. 31 at 336 (Oct. 11, 2022). Then, the biscuit is split in half, resulting in two composite tiles with a 3 mm marble top layer. <u>Scope Application Exhibits</u>, C.R. 3 at 55, 64–65, P.R. 9 at 67, 76–77.

On January 25, 2023, Commerce issued its final scope ruling which Elysium challenged before this court. <u>Final Scope Ruling on Elysium's Composite Tile</u>, P.R. 40 (Jan. 25, 2023) ("<u>Final Scope Ruling</u>"). Commerce found that the composite tile falls within the scope of the orders. <u>Id.</u> In its final scope ruling, Commerce found that the porcelain base layer would be subject to the orders if imported alone,[2] and the marble layer is a "decorative feature" that does not remove the

---

[2] "The merchandise covered by the orders is . . . porcelain tile." <u>Ceramic Tile From the</u>

composite tile from scope. Id. at 8.

On July 18, 2024, the court remanded Commerce's final scope ruling as unsupported by substantial evidence and not in accordance with law. See Op. and Order. The court instructed Commerce to reconsider its analysis of the composite tile under either the (k)(1) sources or (k)(2) factors. See id. at 18–19. The court explained that because Commerce only referenced two (k)(1) sources in its determination and focused the rest of its analysis on (k)(2) factors, its ruling was not supported by substantial evidence.[3] Id. at 13, 18–19. Further, the court concluded that the lack of a substantive summary of the ex parte meeting held between Commerce and Florida Tile, Inc.[4] rendered Commerce's determination not in accordance with law. Id. at 19. This latter issue is now resolved. See supra note 1.

Following remand, Commerce issued its redetermination finding that Elysium's composite tile continues to be within the scope of the orders. Def.'s Redetermination at 2. Commerce found that Elysium's scope application and supplemental responses, the orders' scope language, and information from the investigations were dispositive as to whether Elysium's composite tile falls within scope under the (k)(1) sources and determined the product at issue is within scope. Id. at 9. Plaintiffs challenge this result. Pls.' Comments on Remand Determination at 1, ECF No. 55 (Dec. 2, 2024) ("Pls.' Comments").

---

People's Republic of China, 85 Fed. Reg. 33,089 (Dep't Commerce June 1, 2020) ("Scope Order Appendix").

[3] The court determined that Commerce's analysis was not supported by substantial evidence, inter alia, because of Commerce's incomplete analysis of the (k)(1) sources in combination with some (k)(2) factors. Op. and Order at 13, 18–19, ECF No. 49 (July 18, 2024) ("Op. and Order"). Commerce is to reference (k)(2) factors if Commerce "determines that the sources under paragraph (k)(1) . . . are not dispositive." 19 C.F.R. § 351.225(k)(2)(i).

[4] Florida Tile, Inc. is a member of The Coalition for Fair Trade in Ceramic Tile and the petitioner in the antidumping and countervailing duty investigations which resulted in the antidumping and countervailing duty orders on ceramic tile from the People's Republic of China. Def.'s Redetermination at 28.

**JURISDICTION & STANDARD OF REVIEW**

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2020) and 19 U.S.C. § 1516a(a)(2)(B)(vi) (2020). Section 1516a(a)(2)(B)(vi) provides for judicial review of a determination of "whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi). In conducting its review, the court must set aside any determination, finding, or conclusion found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." Id. § 1516a(b)(1)(B)(i).

**DISCUSSION**

**I.   The Composite Tile is not Covered by the Plain Language of the Scope Order**

After remand, Commerce reconsidered whether Elysium's composite tile is within the scope of the orders. Def.'s Redetermination at 7. Commerce explained that it considered "the product description in Elysium's Scope Application and supplemental responses, as well as the scope language of the [o]rders and descriptions of merchandise contained in the investigations and previous determinations by Commerce." Id. (emphasis removed). Commerce determined based on its analysis that Elysium's tile was within the scope of the orders. Id. For the reasons that follow, Commerce's determination that Elysium's composite tiles are within scope of the orders is unsupported by substantial evidence.

The language of an antidumping and countervailing duty order is the "cornerstone" of any scope determination. See Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States, 776 F.3d 1351, 1356 (Fed. Cir. 2015) (citations omitted). Commerce's regulations authorize it to issue scope rulings to clarify whether a particular product is within the scope of an order. See 19 C.F.R. § 351.225(a) (2024). To determine whether a product is within the scope of an antidumping order,

Commerce looks at the plain language of that order. See Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2002); OMG, Inc. v. United States, 972 F.3d 1358, 1363 (Fed. Cir. 2020) ("If [the governing language] is not ambiguous, the plain meaning of the language governs.") (citation omitted). When considering the scope language, Commerce will take into account descriptions of the merchandise contained in: (1) the petition; (2) the initial investigation; and (3) past determinations by the Commission and by the Secretary of Commerce, including prior scope determinations. 19 C.F.R. § 351.225(k)(1) (collectively, "(k)(1) sources"). When the (k)(1) sources are not dispositive, Commerce will initiate a formal scope inquiry and further consider: (A) the physical characteristics of the product; (B) the expectations of the ultimate purchasers; (C) the ultimate use of the product; (D) the channels of trade in which the product is sold; and (E) the manner in which the product is advertised and displayed. 19 C.F.R. § 351.225(k)(2)(i) ("(k)(2) factors").

Commerce has broad authority "to interpret and clarify its antidumping duty orders." Ericsson GE Mobile Commc'ns, Inc. v. United States, 60 F.3d 778, 782 (Fed. Cir. 1995). Commerce, however, may not interpret an order "so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1072 (Fed. Cir. 2001) (citation omitted). Furthermore, "[s]cope orders may be interpreted as including subject merchandise only if they contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it." Duferco, 296 F.3d at 1089.

Commerce defined the scope of the orders, in relevant part, as follows:

> The merchandise covered by [these Orders] is ceramic flooring tile, wall tile, paving tile, hearth tile, porcelain tile, mosaic tile, flags, finishing tile, and the like (hereinafter ceramic tile). Ceramic tiles are articles containing a mixture of minerals including clay (generally hydrous silicates of alumina or magnesium)

>that are fired so the raw materials are fused to produce a finished good that is less than 3.2 cm in actual thickness. All ceramic tile is subject to the scope regardless of end use, surface area, and weight, regardless of whether the tile is glazed or unglazed, regardless of the water absorption coefficient by weight, regardless of the extent of vitrification, and regardless of whether or not the tile is on a backing. Subject merchandise includes ceramic tile with decorative features that may in spots exceed 3.2 cm in thickness and includes ceramic tile "slabs" or "panels" (tiles that are larger than 1 meter$^2$ (11 ft.$^2$)).
>
>Subject merchandise includes ceramic tile that undergoes minor processing in a third country prior to importation into the United States. Similarly, subject merchandise includes ceramic tile produced that undergoes minor processing after importation into the United States. Such minor processing includes, but is not limited to, one or more of the following: Beveling, cutting, trimming, staining, painting, polishing, finishing, additional firing, or any other processing that would otherwise not remove the merchandise from the scope of [these Orders] if performed in the country of manufacture of the in-scope product.

Scope Order Appendix.

In its remand, the court made a number of points regarding the language of the scope order that Commerce did not follow in its remand determination. See Op. and Order. First, the court explained that the phrase "decorative features" in the scope order is meant as an example of something that could affect the thickness of the tile, but because the composite tile at issue here does not exceed 3.2 cm, whether or not the marble is a decorative feature is irrelevant to the scope. Id. at 14. Commerce disagreed with the court's analysis and determined that the decorative features language is relevant to scope, and the marble top layer is a decorative feature that does not remove the composite tile from scope. Def.'s Redetermination at 12–13. Second, the court concluded that the evidence Commerce presented did not support its conclusion that the steps taken to produce the composite tile were "minor." Op. and Order at 15. Further, the court explained that the determinative question is whether the process of creating the composite tile "is so intensive that it goes beyond 'minor processing' to the degree that it brings the product out of scope." Id. Commerce disagreed that minor processing is dispositive of scope coverage and determined that

the processing of the composite tile does not take it out of scope. Def.'s Redetermination at 13–15. At this stage, it is not Commerce's role to disagree with the court's analysis. Its choices are: (1) to apply the road map set out by the court; (2) to do so under protest and appeal; or (3) to seek reconsideration. Rejecting the court's analysis for purposes of completing a remand determination is tantamount to disobeying the court. Commerce's redetermination does not adequately address all of the court's concerns set forth in its opinion and order.

### a. Decorative Features Language

In its remand order, the court concluded that whether or not the marble is a decorative feature is irrelevant to the scope. Op. and Order at 14. The court explained that "[h]ad the scope language been intended to target decoration with ceramic backing, there would be evidence of this before the ITC or Commerce and the (k)(1) sources would support such an interpretation." Id. In its redetermination, Commerce determined that the (k)(1) sources were dispositive but did not point to any additional evidence to show that the scope order intended to cover decoration with ceramic backing. Def.'s Redetermination at 9–13.

In its redetermination, Commerce found that the composite tile falls within the scope of the orders covering "ceramic tile with decorative features," and that the marble top layer does not remove the tile from the scope of the order. Id. at 10. Commerce focused on the language in the order that states "[s]ubject merchandise includes ceramic tile with decorative features that may exceed 3.2 cm" to support its argument. Id. at 12 (emphasis removed). Commerce urges the court to read the decorative features language with the preceding sentence that states "[a]ll ceramic tile is subject to the scope . . . regardless of whether or not the tile is on a backing." Id. at 11 (emphasis removed). Commerce argues that when the sentences are read together, the plain language indicates that the scope covers all ceramic tile, including ceramic tile with decorative features. Id.

Case 1:23-cv-00041-JAR    Document 61    Filed 03/11/25    Page 9 of 12

Case No. 23-00041                                                                                          Page 9

In its original scope ruling, however, Commerce focused on the technique being used to apply the decoration, rather than the decoration itself. Op. and Order at 15; Final Scope Ruling at 9–10. Further, Commerce determined that the relevant question was not what decoration was being added, but how the decoration was added. Op. and Order at 15; Final Scope Ruling at 9–10.

Decoration is an undefined term. All ceramic tile is essentially decorative. See Oral Argument at 1:04. Concentrating on "decoration" does not help to resolve this matter. Without more evidence that the decorative features language was meant to cover composite tile with a marble top layer, the court concludes that the scope language is not dispositive.

**b. Firing**

Elysium for its part finds the scope language determinative. It argues that Commerce "simply ignores the inconvenient plain language of the order and 'rewrites' the language of the order by writing out key words." Pls.' Comments at 5. Elysium explains that Commerce ignores that the order contemplates tiles "that are fired so the raw materials are fused to produce a finished good." Id. Commerce reiterates its previous argument that a second firing is not necessary to keep the product in scope. Def.'s Redetermination at 24. Commerce, however, fails to point to anything that supports its reading of the language "fired so the raw materials are fused to produce a finished good" as only applying to the base porcelain layer of the tile. See id. The meaning of this phrase is not clear. Commerce was on track when it focused on process originally, as this is what the "fired" language references, whatever it specifically means. See Op. and Order at 15; Ceramic Tile from the People's Republic of China: Scope Decision Memorandum for the Final Determinations at 9–11, C.R. 4, P.R. 10 (May 24, 2022) (Commerce considered whether handmade tile was excluded from the scope of the orders and focused on the technique being used to apply the decoration, rather than the decoration itself). The court noted in its previous opinion

various ambiguities that exist throughout the scope language. See Op. and Order at 11, 13, 17–18. The problem is compounded here because the "composite tile exists as an ambiguous middle ground between ceramic and marble tile." Id. at 18. Thus, the court finds the firing language, in context, too ambiguous to definitively support either party's contention.

   c. **Minor Processing Language**

In the court's remand order, the court explained that "the determinative question is not whether the marble layer is decoration, but rather whether the process of applying the layer is so intensive that it goes beyond 'minor processing' to the degree that it brings the product out of scope." Id. at 15. In its original scope ruling, Commerce asserted that so long as each process is minor, there is no limit or combination of minor processing that would remove the composite tile from the scope. Id. at 15–16; Def.'s Resp. to Pls.' Mot. for J. on the Agency R. at 17–18, ECF No. 35 (Dec. 13, 2023). Further, Commerce argued that the splitting and gluing together of the composite tile constitutes minor processing. See Final Scope Ruling at 9. Now, Commerce changes its tune, stating in its remand determination that "nothing in the scope indicates that the language operates to exclude ceramic tile which undergoes extensive, significant, or specialized processing." Def.'s Redetermination at 14.

In its redetermination, Commerce "respectfully disagree[d] that minor processing is dispositive of scope coverage." Id. at 13. That, of course, is not a full recitation of the court's opinion on this point. Commerce states that "the determinative question is whether Elysium's composite tile meets the physical description of the subject merchandise in the scope of the Orders" rather than the impact of the level of processing. Id. at 15. Commerce explained that the composite tile "fits the physical description of subject merchandise because it consists of a porcelain tile base layer, that is explicitly covered by the plain language of the scope, to which decorative marble top

layer has been added." Id. at 18.  The court disagrees with the simplicity of Commerce's description.  The composite tile is not created simply by gluing on "decoration," whatever that is.  Rather, the composite tile goes through a complicated process of splitting and gluing that "requires specialized equipment, and must be conducted at a facility designed for the creation of composite tile."  Op. and Order at 16; see Pls.' Mot. for J. on Agency R. at 14–18, 31–34.  The processing cannot be neatly excluded from the physical description of the product.  It is part of it.

Elysium argues that "the operations undertaken on the 'composite tile' are [sic] significant, going far beyond the types of operations enumerated in the order." Pls.' Comments at 6.  Elysium explains "that the significant operations undertaken after production of the completed ceramic tile component" results in a "new and different article of commerce." Id. at 6–7.  Elysium's contention focuses on the proper inquiry in this regard.  Minor processing would not normally change a good from one covered product to another product outside of scope.  That is the point.  Whatever is done to the product in China or elsewhere will keep it within the scope if the product remains the same – the described ceramic tile.  Here, however, the product is not just ceramic tile.  It is a composite of ceramic tile and marble; this is recognized by all parties.  See Def.'s Redetermination at 12; Pls.' Comments at 5; Scope Application, C.R. 2 at 33, P.R. 8 at 45.  Further, Elysium argues that the marble feature of the tile dominates because the natural marble stone comprises sixty to eighty percent of the final cost of the composite tile, and the marble is added to the visible portion of the tile to "provide the look and feel of natural marble surface and the appearance of a natural stone product." Def.'s Redetermination at 10; see Pls.' Mot. for J. on Agency R. at 30.  Thus, it is unclear based on scope language alone and any (k)(1) sources whether the composite tile is under the scope of the orders as a ceramic tile.

The court finds that the scope language is not so clear that either party must prevail, and

Commerce did not provide evidence using the (k)(1) sources to substantially support its conclusion that the composite tile is covered by the scope orders. The court instructs Commerce on remand to consider the five additional factors set out in 19 C.F.R. § 351.225(k)(2)(i). These factors are: (A) the physical characteristics of the merchandise; (B) the expectations of the ultimate purchasers; (C) the ultimate use of the product; (D) the channels of trade in which the product is sold; and (E) the manner in which the product is advertised and displayed. Id. If there is conflict among these factors, the physical characteristics of the merchandise will normally be allotted greater weight than the other factors. See 19 C.F.R. § 351.225(k)(2)(ii).

## CONLCUSION

For the foregoing reasons, the court remands to Commerce for a determination consistent with this opinion on the issues. The remand determination shall be issued within 90 days hereof. Comments may be filed 30 days thereafter and any response 15 days thereafter.

/s/ Jane A. Restani
Jane A. Restani, Judge

Dated: March 11, 2025
New York, New York