A-570-108, C-570-109
Remand
Slip Op. 25-25 Elysium Tile
**Public Document**
E&C/OVI:  CA

*Elysium Tiles, Inc., and Elysium Tile Florida, Inc., v. United States*
**Court No. 23-00041, Slip. Op. 25-25 (CIT March 11, 2025)**
**Ceramic Tile from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.     SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (CIT or the Court) in *Elysium Tiles* issued on March 11, 2025.[1]  The final results concern Commerce's scope ruling on composite tile[2] imported by Elysium Tiles, Inc., and Elysium Tile Florida, Inc. (collectively, Elysium), for the antidumping and countervailing duty *Orders* on ceramic tile from the People's Republic of China (China).[3]

In its *Second Remand Order*, the Court sustained in part, and remanded in part, Commerce's *First Remand Redetermination*.[4]  In the *First Remand Redetermination*, Commerce supplemented its *ex parte* memorandum to provide a substantive summary of the *ex parte* meeting held between Commerce and Florida Tile, Inc and conducted an *ex parte* meeting with Elysium's counsel.  Commerce provided additional analysis under 19 CFR 351.225(k)(1) to

---

[1] *See Elysium Tiles, Inc., and Elysium Tile Florida, Inc., v. United States*, Court No. 23-00041, Slip. Op. 25-25 (CIT March 11, 2025) (*Elysium Tiles*) (*Second Remand Order*).
[2] *See* Memorandum, "Ceramic Tile from the People's Republic of China:  Final Scope Ruling on Elysium's Composite Tile," dated January 25, 2023 (Final Scope Ruling).
[3] *See Ceramic Tile from the People's Republic of China:  Antidumping Duty Order*, 85 FR 33089 (June 1, 2020), and *Ceramic Tile from the People's Republic of China:  Countervailing Duty Order*, 85 FR 33119 (June 1, 2020) (collectively, the *Orders*).
[4] *See Final Results of Redetermination Pursuant to Court Remand*, *Elysium Tiles, Inc., and Elysium Tile Florida, Inc., v. United States*, Court No. 23-00041, Slip. Op. 24-80 (CIT July 18, 2024), dated October 29, 2024 (*First Remand Redetermination*), available at:  https://access.trade.gov/public/FinalRemandRedetermination.aspx.

continue to find Elysium's composite tile covered by the scope of the *Orders*.[5]  In the *Second Remand Order*, the Court held that the issue of the substantive summary of the *ex parte* meeting is now resolved.[6]  However, the Court remanded Commerce's *First Remand Redetermination*, instructing Commerce to consider the five additional factors set out in 19 CFR 351.225(k)(2)(i).[7]  Pursuant to the *Second Remand Order*, we analyze the factors set out in 19 CFR 351.225(k)(2)(i) to determine whether or not Elysium's composite tile is covered by the scope of the *Orders* on ceramic tile.

## II.    SCOPE OF THE *ORDERS*

The merchandise covered by these *Orders* is ceramic flooring tile, wall tile, paving tile, hearth tile, porcelain tile, mosaic tile, flags, finishing tile, and the like (hereinafter ceramic tile).  Ceramic tiles are articles containing a mixture of minerals including clay (generally hydrous silicates of alumina or magnesium) that are fired so the raw materials are fused to produce a finished good that is less than 3.2 cm in actual thickness.  All ceramic tile is subject to the scope regardless of end use, surface area, and weight, regardless of whether the tile is glazed or unglazed, regardless of the water absorption coefficient by weight, regardless of the extent of vitrification, and regardless of whether or not the tile is on a backing.

Subject merchandise includes ceramic tile with decorative features that may in spots exceed 3.2 cm in thickness and includes ceramic tile ''slabs'' or ''panels'' (tiles that are larger than 1 meter$^2$ (11 ft.$^2$)).  Subject merchandise includes ceramic tile that undergoes minor processing in a third country prior to importation into the United States.  Similarly, subject merchandise includes ceramic tile produced that undergoes minor processing after importation

---

[5] *Id*. at Appendix.
[6] *See Second Remand Order* at 2 and 4.
[7] *Id*. at 12.

2

into the United States.  Such minor processing includes, but is not limited to, one or more of the following:  Beveling, cutting, trimming, staining, painting, polishing, finishing, additional firing, or any other processing that would otherwise not remove the merchandise from the scope of the investigation if performed in the country of manufacture of the in-scope product.

Subject merchandise is currently classified in the Harmonized Tariff Schedule of the United States (HTSUS) under the following subheadings of heading 6907:  6907.21.1005, 6907.21.1011, 6907.21.1051, 6907.21.2000, 6907.21.3000, 6907.21.4000, 6907.21.9011, 6907.21.9051, 6907.22.1005, 6907.22.1011, 6907.22.1051, 6907.22.2000, 6907.22.3000, 6907.22.4000, 6907.22.9011,  6907.22.9051, 6907.23.1005, 6907.23.1011, 6907.23.1051, 6907.23.2000, 6907.23.3000, 6907.23.4000, 6907.23.9011, 6907.23.9051, 6907.30.1005, 6907.30.1011, 6907.30.1051, 6907.30.2000, 6907.30.3000, 6907.30.4000, 6907.30.9011, 6907.30.9051, 6907.40.1005, 6907.40.1011, 6907.40.1051, 6907.40.2000, 6907.40.3000, 6907.40.4000, 6907.40.9011, and 6907.40.9051.  Subject merchandise may also enter under subheadings of headings 6914 and 6905:  6914.10.8000, 6914.90.8000, 6905.10.0000, and 6905.90.0050.  The HTSUS subheadings are provided for convenience and customs purposes only.  The written description of the scope of this investigation is dispositive.

### III.    BACKGROUND

On May 24, 2022, Elysium requested that Commerce conduct a scope inquiry to determine that its composite tile, in various sizes, is not covered by the scope of the *Orders*.[8] On January 25, 2023, Commerce issued its Final Scope Ruling, finding that Elysium's composite tile was covered by the scope of the *Orders*.   Thereafter, Elysium challenged Commerce's scope ruling before the Court.

---

[8] *See* Elysium's Letter, "Scope Ruling Request Regarding Composite Marble Tile from the People's Republic of China," dated May 24, 2022 (Scope Application).

In its *First Remand Order*, the Court held that the Final Scope Ruling was not in accordance with law because Commerce: (1) failed to provide an adequate summary of an *ex parte* meeting; and (2) failed to show with substantial evidence either that under 19 CFR 351.225(k)(1), the *Orders*' scope language contemplates products such as composite tile, or that under 19 CFR 351.225(k)(2), the composite tile truly is considered a form of ceramic tile in purpose, function, advertising, and use.[9]

On October 29, 2024, in response to the *First Remand Order*, Commerce issued the *First Remand Redetermination*. In the *First Remand Redetermination*, we placed on the record a supplement to the *ex parte* memorandum, and we continued to find under a (k)(1) analysis that Elysium's composite tile was subject to the scope of the *Orders*.

On March 11, 2025, the Court again remanded the determination to Commerce, finding that the *First Remand Redetermination* was not supported by substantial evidence and instructing Commerce to consider the five additional factors set out in 19 CFR 351.225(k)(2)(i). The Court held that the issue of the substantive summary of the *ex parte* meeting is now resolved.

On May 8, 2025, we released our Draft Redetermination to interested parties.[10] On May 15, 2025, Elysium and the Coalition for Fair Trade in Ceramic Tile (the petitioner) timely submitted comments on the Draft Redetermination.[11]

---

[9] *See Elysium Tiles, Inc., and Elysium Tile Florida, Inc., v. United States*, 719 F. Supp. 3d 1289 (Ct. Int'l Trade 2024) (*First Remand Order*).
[10] *See* Draft Results of Redetermination, *Elysium Tiles, Inc., and Elysium Tile Florida, Inc., v. United States*, Court No. 23-00041, Slip. Op. 25-25 (CIT March 11, 2025), dated May 8, 2025 (Draft Redetermination).
[11] *See* Elysium's Letter, "Elysium's Comments on Draft Results of Redetermination," dated May 15, 2025 (Elysium's Comments on Draft Redetermination); *see also* Petitioner's Letter, "Petitioner's Comments to Second Draft Results of Redetermination," dated May 15, 2025 (Petitioner's Comments on Draft Redetermination).

4

IV.   ANALYSIS

As instructed by the Court in its *Second Remand Order*, we considered the factors under 19 CFR 351.225(k)(2) to analyze whether Elysium's composite tile is covered by the scope of the *Orders*. Section 351.225(k)(2) of Commerce's regulations states:

> (i) If the Secretary determines that the sources under paragraph (k)(1) of this section are not dispositive, the Secretary will then further consider the following factors:
> (A) The physical characteristics (including chemical, dimensional, and technical characteristics) of the product;
> (B) The expectations of the ultimate users;
> (C) The ultimate use of the product;
> (D) The channels of trade in which the product is sold; and
> (E) The manner in which the product is advertised and displayed.

The regulations further state that, in the event of a conflict between these factors, the physical characteristics of the product will normally be allotted greater weight than the other factors.[12]

*Physical Characteristics*

Elysium describes its composite tile as being composed of three layers: a porcelain tile base, which, if imported by itself, would be subject to the scope of the *Orders*; a middle layer of aviation grade epoxy which is used to permanently bind the base layer and the top layer; and a top layer of natural stone, primarily marble.[13] The tile is approximately 12 to 15 mm thick, and is produced in six sizes: 300 x 300 mm, 300 x 600 mm, 600 x 600 mm, 800 x 400 mm, 800 x 800 mm, and 1200 x 600 mm. The layers of Elysium's composite tile are held together by epoxy.[14] The surface of the composite tile is finished by polishing.[15]

Although the composite tile has a polished surface, we find that the scope contemplates polishing as an example of minor processing which ceramic tile may undergo, and which would

---

[12] *See* 19 CFR 351.225(k)(2)(ii).
[13] *See* Scope Application at Attachment II, 3.
[14] *Id*. at Attachment II, 12.
[15] *Id*.

5

not remove the product from the scope. Therefore, we find that both composite tile and ceramic tile may have a polished surface. The composite tile in question falls within the dimensions of ceramic tile considered by the scope, *i.e.*, it is less than 3.2 cm in actual thickness.

Additionally, the Court has held the table that Elysium provided comparing the characteristics of ceramic tile, marble tile, and composite tile shows that composite tile is an ambiguous middle ground between ceramic and solid marble tile on all fronts and, thus, the table does not support finding the composite tile to be more similar to either ceramic tile or solid marble tile.[16]

We find that composite tile shares some physical characteristics with ceramic tile but that it also possesses physical characteristics which ceramic tile does not. Elysium's composite tile contains a porcelain element that if imported by itself, would be subject to the scope. This porcelain element has the same physical characteristics as ceramic tile and, therefore, imbues the composite tile as a whole with some of the same physical characteristics as ceramic tile. Specifically, the base of the composite tile is non-porous and non-absorbent, like ceramic tile.[17] The porcelain tile element makes the composite tile less susceptible to breakage by dropping and gives the composite tile lighter weight than marble tile.[18]

However, the marble layer also imparts physical characteristics which ceramic tile does not possess. Ceramic and marble have different chemical and physical properties.[19] The marble layer is from a naturally occurring metamorphic rock and is absorbent and less susceptible to breakage by weight.[20]

---

[16] *See First Remand Order*, 719 F. Supp. 3d at 1301-02.
[17] *See* Scope Application at Attachment II, 5-6.
[18] *Id.*; *see also* Elysium's Rebuttal Comments at Exhibit C.
[19] *See* Elysium's Letter, "Elysium Tile Inc. Reply to Petitioner's July 5, 2022 Response," dated July 19, 2022 (Elysium's Rebuttal Comments).
[20] *See* Scope Application at Attachment II, 13, 5-6.

In conclusion, we find that although composite tile shares some physical characteristics with ceramic tile, composite tile has physical characteristics which ceramic tile does not, because composite tile contains a naturally occurring metamorphic stone layer.

*Expectations of the Ultimate Users*

Purchasers of composite tile expect to purchase a tile with the look and feel of a natural marble surface, with the shine and durable surface imparted by the natural marble layer that forms the outer, visible, surface of the tile.[21]

The end-users of composite tile are seeking to buy a product with different physical characteristics than ceramic tile.[22]

We find that the ultimate users of composite tile expect to interact with (*i.e.*, see and feel) a marble surface. Although users of both ceramic and composite tile expect the products to function in construction and home projects, we find that this expectation is true of users of tile in general, regardless of the type of tile. We find that the expectations of the ultimate users of composite tile are distinguished from those of users of ceramic tile because of the expectation to interact with a natural stone surface.

*Ultimate Use of the Product*

Both composite tile and ceramic tile are primarily used as flooring or similar surface products.[23] Because both ceramic and composite tile are used as tile, primarily for flooring, we find that composite tile and ceramic tile have similar ultimate end uses, but note that we also find that composite tile is used to provide the appearance of marble, as explained in the "Expectations

---

[21] *See* Scope Application at Attachment II, 13.
[22] *See* Elysium's Rebuttal Comments at 7-8.
[23] *See* Scope Application at Attachment II, 13; *see also* Petitioner's Rebuttal Comments at 7.

of the Ultimate Users" section above.[24]  However, we find that the end use of tile is the same across many types of tile of different materials.

*Channels of Trade*

Composite and ceramic tile are sold in the same channels of trade.[25]  However, we find that many types of tile, regardless of material, are sold in the same channels of trade.

*Advertising and Display*

Elysium's product brochure includes a description of the marble facing material, an overview of the production process, a cross section of the product showing the thickness of the layers, photos of the different marble patterns, and a page listing the advantages of "laminated marble tile."[26]  Among the advertised advantages of Elysium's composite tile are that combining marble with ceramic tile reduces the natural fragility of the marble and decreases the weight of the product, that the product has the same installation procedure as tile, and the ceramic backing imparts strength to the marble surface layer.[27]  Elysium's advertising emphasizes both the marble layer and the ceramic tile layer.

Stone, tile and similar products are traditionally sold by tile stores and big box stores where a range of products, designs and colors are displayed permitting the customer to select the desired product.[28]  We find that both composite tile and ceramic tile are similarly displayed in tile stores and big box stores.  However, we find that many types of tile, regardless of material, are displayed and sold in tile stores and big box stores.

---

[24] *See* Elysium's Rebuttal Comments at 8.
[25] *See* Scope Application at Attachment II, 14; *see also* Petitioner's Rebuttal Comments at 7.
[26] *See* Elysium's Rebuttal Comments at Exhibit C.
[27] *Id.*
[28] *See* Application at Attachment II, 14; *see also* Petitioner's Rebuttal Comments at 7.

V.     **INTERESTED PARTY COMMENTS ON DRAFT REDETERMINATION**

As stated above, on May 8, 2025, we released the Draft Redetermination to interested parties. On May 15, 2025, Elysium and the petitioner timely submitted comments on the Draft Redetermination. Elysium's comments stated that it supports Commerce's (k)(2) analysis and the conclusion that composite tile is not covered by the scope of the *Orders*.[29] We address the petitioner's comments below.

**Comment 1:  Whether Commerce Should Preserve its Determination from the Final Scope Ruling as Further Explained in its *First Remand Redetermination***

*Petitioner's Comments:*

- The petitioner disagrees with Commerce's conclusion in the Draft Redetermination that Elysium's composite tile is not covered by the scope of the *Orders*. Commerce should preserve its determination from the original scope ruling as further explained in the *First Remand Redetermination*.[30]
- Commerce previously determined that the language of the scope of the *Orders* and the (k)(1) factors support a determination that Elysium's composite tile is not covered by the scope of the *Orders*. Because the (k)(1) "primary interpretive sources" supersede the sources found in (k)(2), Commerce should maintain its determination that Elysium's composite tile is within the scope of the *Orders*.[31]
- The Federal Circuit has made it clear that "it is the language of Commerce's final order that defines the scope of the order."[32]
- The scope language of the *Orders* describes ceramic tile covered by these *Orders* as "ceramic flooring tile, wall tile, paving tile, hearth tile, *porcelain tile*, mosaic tile, flags, finishing tile, and the like…{including} *ceramic tile with decorative features* that *may* in spots exceed 3.2 cm in thickness…." (emphasis added by petitioner).[33]
- In the *First Remand Redetermination*, Commerce correctly determined that Elysium's composite tile is covered by the plain scope language of the *Orders* covering "ceramic tile with decorative features." Commerce further supported this analysis by considering information from the subject investigation.[34]
- To conclude, as the Court did in this case, "that whether or not the marble is a decorative feature is irrelevant to the scope," reads out of the scope language the decorative features language purposely included in the scope.[35]

---

[29] *See* Elysium's Comments on Draft Redetermination at 1.
[30] *See* Petitioner's Comments on Draft Redetermination at 2.
[31] *Id*. at 3.
[32] *Id*. at 4.
[33] *Id*.
[34] *Id*. at 5-6.
[35] *Id*. at 6-7 (internal citations omitted).

9

**Commerce's Position:** We disagree with the petitioner that Commerce should maintain its Final Scope Ruling as further explained in the *First Remand Redetermination*. The Court remanded Commerce's Final Scope Ruling, holding that Commerce did not show under a (k)(1) analysis that the scope language contemplates products such as marble composite tile, and that Commerce's ruling was not supported by substantial evidence.[36] In the *First Remand Redetermination*, Commerce provided additional analysis under 19 CFR 351.225(k)(1) to support the Final Scope Ruling. However, the Court remanded Commerce's *First Remand Redetermination*, finding that it was not supported by substantial evidence.[37] The Court wrote, "{w}ithout more evidence that the decorative features language was meant to cover composite tile with a marble top layer, the court concludes that the scope language is not dispositive."[38] The Court instructed Commerce on remand to consider the five additional factors set out in 19 CFR 351.225(k)(2)(i).[39] Further, the Court stated that, "{a}t this stage, it is not Commerce's role to disagree with the court's analysis. Its choices are: (1) to apply the road map set out by the court; (2) to do so under protest and appeal; or (3) to seek reconsideration."[40] Therefore, we find that preserving the Final Scope Ruling as further explained in the *First Remand Redetermination* would not comply with the Court's order to consider the five additional factors set out in 19 CFR 351.225(k)(2)(i). Upon consideration of the (k)(2) factors, in compliance with the Court's *Second Remand Order*, we find that Elysium's composite tile is not covered by the scope of the *Orders*.

---

[36] *See First Remand Order,* 719 F. Supp. 3d at 1302.
[37] *See Second Remand Order* at 2.
[38] *Id*. at 9.
[39] *Id*. at 12.
[40] *Id*. at 8.

**Comment 2: Whether Commerce Should Reconsider its (k)(2) Analysis**

*Petitioner's Comments:*

- Commerce should reconsider its (k)(2) analysis, and in particular, whether, in this instance, Commerce should afford greater weight to the physical characteristics factor.[41]
- A proper (k)(2) analysis, although unnecessary, supports a determination that Elysium's composite tile is within the scope of the *Orders*.[42]
- Although Commerce's regulations state that, in the event of a conflict between the (k)(2) factors, the physical characteristics factor will normally be allotted greater weight, the preamble to the regulations recognizes that there could be scenarios in which Commerce determines that the physical characteristics factor should not be given greater weight in its analysis.[43]
- The surface of all ceramic tile products differs from the back side and body of the tile. For example, the paint and the crackled glass on the 3-dimensional crackled glass finished tile considered by Commerce in the investigation's scope memo would have different physical and chemical characteristics than the ceramic tile layer. However, Commerce did not find the physical characteristics of these decorative features to be a distinguishing factor from ceramic tile.[44]
- Because of the large variety of surface features among ceramic tiles, Commerce should consider whether it is appropriate in this case to assign greater weight in its (k)(2) analysis to the physical characteristics factor. The fact that a decorative surface imparts a "physical characteristic" to the tile does not remove the tile from the scope of the *Orders*.[45]

**Commerce's Position:** We disagree with the petitioner. We find that the petitioner has not provided sufficient justification for Commerce to deviate from our consistent practice of giving greater weight to the physical characteristics factor. Although the *Preamble* does recognize "that there could be scenarios in which Commerce considers and determines that the physical characteristic factor should not be given greater weight in its analysis," the *Preamble* also states:

> …it has been Commerce's consistent practice to give greater weight to our analysis of the physical characteristics of the particular product. This is because the scopes of orders are generally written to cover products with certain physical characteristics, and it is an established principle in our scope practice that the objective characteristics of merchandise, including the physical descriptions of

---

[41] *See* Petitioner's Comments on Draft Redetermination at 3.
[42] *Id*. at 3.
[43] *Id*. at 8.
[44] *Id*. at 8-9.
[45] *Id*. at 9.

merchandise, should be given greater weight in case of a conflict between the factors under consideration.[46]

As further explained in the *Preamble*, the other factors by their nature lend themselves to a more subjective outcome.[47] Additionally, in the present case, we have found that the ultimate use, channels of trade, and manner in which the product is advertised and displayed are similar across many types of tile, regardless of material.

The petitioner argues that analyzing the physical characteristics of each tile's surface material to determine whether the surface material makes for an out-of-scope product is a Sisyphean task that runs counter to the plain language of the scope.[48] The petitioner points to the three-dimensional crackled glass example and other features such as polish and paint which impart physical characteristics and are decorative features.[49] We agree that ceramic tiles may have a variety of surface features, each with unique physical characteristics, and that many of these features were contemplated either in the scope language or in the underlying investigation. The scope covers all ceramic tile whether glazed or unglazed, and also contemplates staining, painting, and polishing as kinds of minor processing that ceramic tile may undergo. Thus, glaze, staining, painting, and polishing are surface features contemplated by the scope language. The petition further discusses potential surface features of ceramic tile:

> **Glazing and/or digital printing**
>
> The surface of the green tile {a newly formed tile} can be decorated before firing through a surface application of materials that bond to the surface when fired. A variety of techniques exist for applying such materials from a simple waterfall

---

[46] *See Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 FR 52300, 52324 (September 20, 2021) (*Preamble*).
[47] *Id*. (stating that the physical characteristics factor "is distinguishable from other factors, such as the expectations of the ultimate users under (k)(2)(i)(B) or the manner in which a product is advertised, and displayed under (k)(2)(i)(E), which might incorporate elements such as "intended end use" or "design" into Commerce's analysis, but also by their nature lend themselves to a more subjective outcome.").
[48] *See* Petitioner's Comments on Draft Redetermination at 9.
[49] *Id*. at 9-10.

> coating the surface, to spray applications, and now commonly with materials being digitally applied.[50] Surface decoration can also be achieved at the time of forming by adding dry powders before forming that impart decorative effects to the surface upon firing. Surface decoration can also be done on a fired tile before a secondary firing operation.[51]

And:

> **Post-firing operations**
>
> After firing, various post-firing operations may be employed. Polished tiles, for example, will go to a polishing line using abrasives to create a fine polish on the surface.[52]

However, although the scope also includes language regarding decorative features, the Court stated, "{c}oncentrating on "decoration" does not help to resolve this matter. Without more evidence that the decorative features language was meant to cover composite tile with a marble top layer, the court concludes that the scope language is not dispositive."[53] Moreover, other surface decorations, such as three-dimensional crackled glass, were contemplated in the Final Scope Memorandum.[54] And, in the *First Remand Order,* the Court pointed to Commerce's reliance on the crackled glass decoration in the Final Scope Memorandum and determined that "{s}uch language does not expand the scope to include all instances where the ceramic tile is used as a backing for decoration, or other additions."[55] Additionally, the Court assumed, *arguendo*, that Commerce found it necessary to consider (k)(2) factors because Commerce

---

[50] The first two applications refer to "glaze" being applied while the latter refers 10 "ink-jet printing" using glaze-like compounds.
[51] *See* Scope Application at Attachment II, Exhibit 4.
[52] *Id.*
[53] *See Second Remand Order* at 9.
[54] *See* Memorandum, "Scope Decision Memorandum for the Final Determinations," dated March 30, 2020 (Final Scope Memorandum).
[55] *See First Remand Order*, 719 F. Supp. 3d at 1300.

considered the purpose, function, and physical characteristics.[56] Therefore, consideration of the marble layer or physical additions does not run counter to the plain language of the scope.

Moreover, Elysium's composite tile contains a layer of marble permanently bonded to the ceramic tile, which is not a physical characteristic contemplated either in the scope language or in the underlying investigation. While ceramic tile may have a large variety of surface finishes, the scope provides information on the types of finishes covered by the scope. Although we agree that a surface finish such as paint imparts physical characteristics that unpainted tile does not have, and that such characteristics would not remove a tile from the scope of the *Orders*, Elysium's composite tile does not have a surface finish contemplated by the scope language.

We find that analyzing the physical characteristics of the product is still informative in making a scope determination. Therefore, we find it is appropriate to follow Commerce's consistent practice and assign greater weight to the physical characteristics factor.

**Comment 3:   Whether Commerce's Findings Regarding Physical Characteristics and Expectations of the Ultimate Users are Erroneous and Unsupported by Substantial Evidence**

*Petitioner's Comments:*

- Commerce previously determined that Elysium's composite tile maintains the characteristics of ceramic tile.[57]
- Although the petitioner agrees with Commerce's analysis regarding the dimensions, polished surface, and porcelain layer of the composite tile, the petitioner disagrees with analyzing the physical characteristics of the marble layer alone and separate from the composite tile.[58]
- Commerce's finding that the 3 mm marble layer of Elysium's composite tile imparts a physical characteristic that makes the entire product differ from subject merchandise, particularly marble-look tile, is erroneous and unsupported by substantial evidence.[59]

---

[56] *Id.* at 1299.
[57] *See* Petitioner's Comments on Draft Remand at 3.
[58] *Id*. at 8.
[59] *Id*. at 10.

14

- Although thick blocks or pieces of marble may be less susceptible to breakage than ceramic tile, there is no evidence on the record that the 3 mm marble layer of Elysium's composite tile makes the product less susceptible to breakage.[60]
- There is no evidence on the record that the absorbency of the 3 mm of marble has any meaningful impact on the product's physical characteristics or performance.[61]
- Commerce's finding that ultimate users of Elysium's composite tile have different expectations than ultimate users of ceramic tile, particularly polished marble-look tile, is unsupported by substantial evidence.[62]
- Elysium's statements regarding the expectations of the ultimate users are unsubstantiated and are contradicted by evidence on the record demonstrating that marble-look flooring tile is indistinguishable from marble.[63]
- Elysium's commercial invoice describes the products as "porcelain tile," supporting a determination that users do not expect Elysium's product to differ from in-scope ceramic tile.[64]
- In its marketing material, Elysium repeatedly touts the tile-like properties of its composite tile, evincing a clear understanding that its product serves the same market niche as marble-look tile.[65]
- The petitioner agrees with Commerce's analysis regarding ultimate use of the product, channels of trade, and advertising and display.[66]

**Commerce's Position:**

*Physical Characteristics*:

We disagree with the petitioner. In the Final Scope Ruling, Commerce did find that composite tile maintained the physical characteristics of ceramic tile.[67] However, the Court remanded the Final Scope Ruling to Commerce, finding that it was not supported by substantial evidence.[68] The Court found that "these purposes, functions, and characteristics are shared, to some extent, by all flooring options" and specifically addressed Commerce's analysis from the

---

[60] *Id.*
[61] *Id.*
[62] *Id.* at 11.
[63] *Id.*
[64] *Id.* at 12.
[65] *Id.*
[66] *Id.* at 12-13.
[67] *See* Final Scope Ruling at 10.
[68] *See First Remand Order*.

Final Scope Ruling quoted by petitioner.[69]  Accordingly, we have reconsidered our analysis consistent with the Court's *Second Remand Order*.

We agree with the petitioner that nothing on the record indicates the marble layer can be separated from the rest of the composite tile.[70]  It is precisely because the solid layer of marble is permanently bonded to the porcelain base that we find the composite tile, as a whole, shares some physical characteristics with marble.  Although we do not have information on the record to compare the strength or absorbency of a 3 mm sheet of marble compared to that of a block of marble, this does not change the fact that a marble layer is not a physical characteristic of ceramic tile contemplated by the scope or during the underlying investigation.  Therefore, we find that the marble layer imparts physical characteristics which ceramic tile does not possess.

*Expectations of Ultimate Users*:

The petitioner argues that evidence on the record demonstrates that marble-look flooring tile is indistinguishable from marble, thus contradicting Elysium's claims about the expectations of end users.[71]  In support of this claim, the petitioner cites to Exhibit A.3.a of the petitioner's ITC Post-Conference brief.[72]  This exhibit contains the product brochure of a U.S. tile manufacturer, which contains photos of ceramic tile in a variety of colors and designs, including several that appear to look like stone.[73]  However, we find that these photos alone do not demonstrate that "marble-look" tile is indistinguishable from either marble or composite tile.  This product brochure does not mention marble or draw a comparison between ceramic tile and marble or composite tile.  Moreover, visual appearance is only one aspect of both physical

---

[69] See *First Remand Order*, 719 F. Supp. 3d at 1301-02.
[70] *See* Petitioner's Comments on Draft Redetermination at 8.
[71] *Id*. at 11.
[72] *See* Scope Application at Attachment II, Exhibit 4.
[73] *Id*.

characteristics and the expectations of the end user. For example, the U.S. manufacturer's brochure on the record does not provide any information on how the feel of ceramic tile compares to that of a product with a marble surface. As previously discussed, neither the scope nor documents from the initial investigation contemplate marble as a possible surface for ceramic tile.

The petitioner additionally argues that Elysium's product brochure highlights the benefits of the ceramic base; therefore evincing a clear understanding that composite tile serves the same market niche as marble-look tile.[74] However, we find that Elysium's product brochure also advertises the "high quality," "natural," and "superior" marble and its "unique beauty."[75] Therefore, we find it is ambiguous what market niche composite tile fills, based on the information on the record. However, we continue to find that the ultimate users of composite tile expect to interact with a natural stone surface.

Lastly, the commercial invoice from the Chinese exporter to Elysium is not a document that the ultimate user typically has access to, and, therefore, we find that the description of the product on the commercial invoice to Elysium does not provide evidence for the expectations of the ultimate users.[76]

---

[74] *See* Petitioner's Comments on Draft Redetermination at 12.
[75] *See* Scope Application at Attachment II, Exhibit 2.
[76] *Id*. at Attachment II, Exhibit 5.

## VI. FINAL RESULTS OF REDETERMINATION

For these final results of redetermination, we find that Elysium's composite tile is not covered by the scope of the *Orders*. Upon a final and conclusive decision in this litigation, as appropriate, Commerce will issue appropriate instructions to CBP consistent with these final results of redetermination.

6/5/2025

X _____

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary for Policy and Negotiations
Performing the non-exclusive functions and Duties
Of the Assistant Secretary for Enforcement and Compliance