# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

| | |
|---|---|
| ELYSIUM TILES, INC. AND ELYSIUM TILE FLORIDA, INC., | |
| Plaintiffs, | |
| v. | Court No. 23-00041 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| THE COALITION FOR FAIR TRADE IN CERAMIC TILE, | |
| Defendant-Intervenor. | |

## DEFENDANT-INTERVENOR'S COMMENTS OPPOSING THE FINAL RESULTS OF THE SECOND REMAND REDETERMINATION

David M. Spooner, Esq.
Christine J. Sohar Henter, Esq.
Nicholas Galbraith, Esq.
Hendricks Valenzuela, Esq.

BARNES & THORNBURG LLP
555 12th ST NW Ste 1200
Washington, DC 20004
(202) 289-1313

*Counsel for The Coalition for Fair Trade in Ceramic Tile*

Dated: July 21, 2024

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ...........................................................................................................i

TABLE OF AUTHORITIES ................................................................................................. ii

I.    INTRODUCTION .........................................................................................................1

II.   BACKGROUND............................................................................................................1

III.  ARGUMENT ................................................................................................................4

    A.   Commerce's Prior Interpretation of the Plain Language of the Scope and (k)(1) Analysis was Supported by Substantial Evidence and in Accordance with Law ...................................................4

    B.   Commerce's (k)(2) Analysis is Unsupported by Substantial Evidence ..................................7

IV.  CONCLUSION ...........................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Elysium Tiles, Inc. et al. v. United States,* 762 F. Supp. 3d 1352 (Ct. Int'l Trade 2025) ...................4

*Elysium Tiles, Inc. v. United States*, 719 F. Supp. 3d 1289 (Ct. Int'l Trade 2024) .....................2, 3, 7

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*,

   216 F.3d 1027 (Fed. Cir. 2000) ......................................................................3

*Fedmet Resources Corp. v. United States*, 755 F.3d 912 (Fed. Cir. 2014) .......................................7

*King Supply Co. v. United States*, 674 F.3d 1343 (Fed Cir. 2012) ....................................................5

*Meridian Products v. United States*, 890 F.3d 1272 (Fed. Cir. 2018) ...........................................5

*Saha Thai Steel Pipe Public Company Limited v. United States*,

   101 F.4th 1310 (Fed. Cir. 2024) .................................................................4, 5, 7

*Smith Corona Corp v. United States*, 915 F.2d 683 (Fed Cir. 1990) ..................................................7

*Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350 (Fed. Cir. 2010) ...........................7

**Regulations**

19 C.F.R. § 351.225(k)(1) ....................................................................................2, 3, 4

19 C.F.R. § 351.225(k)(2) ....................................................................................2, 4, 8

**Other Authorities**

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty*

   *Laws*, 86 Fed. Reg. 52,300 (September 20, 2021)..........................................6, 7, 8, 14

## I.     **INTRODUCTION**

On behalf of Defendant-Intervenor the Coalition for Fair Trade in Ceramic Tile ("Coalition" or "Defendant-Intervenor"), we respectfully submit the following comments on the June 5, 2024, second remand redetermination issued by the U.S. Department of Commerce ("Commerce"). *See* Final Results of Redetermination Pursuant to Court Remand in *Elysium Tiles, Inc., and Elysium Tile Florida, Inc., v. United States*, Court No. 23-00041, Slip. Op. 25-25 (CIT March 11, 2025) (June 5, 2025), ECF 62 ("Second Remand Results") (Second Remand P.R. 4) [1].

## II.     **BACKGROUND**

This action arises out of Commerce's final scope ruling finding that certain composite tile imported by Elysium Tiles, Inc. and Elysium Florida Tile, Inc. (collectively, "Elysium" or "Plaintiffs") fall within the scope of the antidumping and countervailing duty *Orders* on ceramic tile from China. *See generally* Memorandum to James Maeder, "Ceramic Tile from the People's Republic of China: Final Scope Ruling on Elysium's Composite Tile," dated January 25, 2023 ("Final Scope Ruling") (P.R. 40 ); *see also Ceramic Tile from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 33,089 (Dep't Commerce June 1, 2020) ("AD Order"); *Ceramic Tile from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 33,119 (Dep't Commerce June 1, 2020) ("CVD Order") (collectively, "the *Orders*").

### A.     **Commerce's Final Scope Ruling and the Court's First Remand Order**

On May 24, 2022, Elysium submitted a scope ruling application request for Commerce to determine whether Elysium's composite tile is covered by the scope of the *Orders*. *See* Final Scope Ruling at 1. Elysium's composite tile is made up of a base layer made from porcelain, a vitrified

---

[1] Citations to the public record "P.R.\_" and confidential record "C.R.\_" refer to the underlying scope inquiry record. Citations to "First Remand P.R.\_" and "Second Remand P.R.\_" refer to the public record of the first and second remand redeterminations, respectively. All documents in the first and second remand redetermination records are public.

ceramic, glued to a top layer of marble with an aviation grade epoxy. *Id.* at 4. On January 25, 2023, Commerce issued the Final Scope Ruling, concluding that Elysium's composite ceramic tile is covered by the scope of the *Orders*. *Id.* at 10. Commerce determined that the porcelain tile layer of the composite tile is explicitly covered by the plain language in the scope of the *Orders*. *Id.* at 7-8. Commerce also determined that, with respect to the composite tile as a whole, the marble layer is a "decorative feature" which does not remove the ceramic tile from the scope of the *Orders*. *Id.* at 8-10.

Elysium subsequently appealed Commerce's final scope ruling to this Court. On July 18, 2024, the Court issued its first remand order. The Court remanded Commerce to either show under a 19 C.F.R. § 351.225(k)(1) analysis that the scope language contemplates coverage of products such as Elysium's composite tile or that under the 19 C.F.R. § 351.225(k)(2) factors Elysium's composite ceramic tile is subject tile "in purpose, function, advertising, and use." *See Elysium Tiles, Inc. et al. v. United States*, 719 F. Supp. 3d 1289, 1302 (Ct. Int'l Trade 2024) ("*Elysium I*" or "*First Remand Order*"). Moreover, the Court directed Commerce to remediate the summary found in an *ex parte* memorandum of a plant tour of Coalition member Florida Tile. *Id.* at 1297.

In the first remand order, the Court disagreed with the parties' focus on the language in the scope which states that "{s}ubject merchandise includes ceramic tile with decorative features that may in spots exceeds 3.2 cm in thickness…." *See Elysium I*, 719 F. Supp. 3d at 1299-1300. Instead, the Court concluded "that because the product does not exceed 3.2 cm, whether or not the marble is a decorative feature is irrelevant to the scope." *Id.* at 1299. The Court further held that evidence does not indicate that the gluing and splitting of the marble slap is "minor processing," and that "Commerce's consideration of key evidence was unreasonable."[2] *Id.* at 1300-1302.

---

[2] Questions of law, including questions of statutory interpretation, are reviewed de novo; evidentiary decisions are reviewed for abuse of discretion; and findings of fact are reviewed for

**B. Commerce's First Remand Results and the Court's Second Remand Order**

On October 28, 2024, Commerce issued its first remand redetermination further explaining that, pursuant to 19 C.F.R. 351.225(k)(1), Elysium's composite tile is within the scope of the *Orders. See generally* Final Results of Redetermination Pursuant to Court Remand in *Elysium Tiles, Inc., and Elysium Tile Florida, Inc., v. United States*, Court No. 23-00041, Slip. Op. 24-80 (CIT July 18, 2024) (Oct. 28, 2024) ("First Remand Results") (First Remand P.R. 5). Commerce considered the product description in Elysium's scope application and supplemental responses, the plain language in the scope of the *Orders*, and the description of the merchandise contained in the investigations and previous determinations by Commerce to find that Elysium's composite tile falls within the scope. *See* First Remand Results at 7-19, 21-25. Additionally, Commerce supplemented the *ex parte* memorandum to provide a substantive summary of the *ex parte* meeting. *Id.* at Appendix.

On remand, Commerce explained that "Elysium's product falls within the scope of the *Orders* covering 'ceramic tile with decorative features,' and that the marble top layer does not remove the ceramic tile from the scope." *Id.* at 10. Commerce further explained that while the scope does not define "decorative features," neither does it limit the term. Therefore, in Commerce's view, whether the marble surface layer was a decorative feature of the ceramic tile was relevant to the scope inquiry. *Id.* at 12. Commerce also clarified that the Investigation Scope Decision Memorandum supports an analysis that focuses on whether the tile meets the physical description of subject merchandise in the scope rather than how the decoration is added and whether

---

clear error. *See F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1031 (Fed. Cir. 2000). In its opinion and analysis in which it held that "Commerce's use of the table as evidence that the composite tile is within scope is plainly unreasonable" the Court does not mention nor appear to apply the "clear error" standard in remanding Commerce's interpretation of the "key evidence." *See Elysium I*, 719 F. Supp. 3d at 1301-02.

it is "minor processing." *Id.* at 13-18. Particularly, the level of processing cannot be determinative of whether a product is in-scope or not when all of the processing occurs in the subject country. *Id.* at 15. Moreover, because its analysis under 19 C.F.R. § 351.225(k)(1) was dispositive, Commerce found it unnecessary to consider the additional factors specified in 19 C.F.R. § 351.225(k)(2). *Id.* at 9.

On March 11, 2025, this Court issued its second remand order sustaining Commerce on the substantive summary for the *ex parte* memorandum, but remanded the scope redetermination to "consider the five additional factors set out in 19 C.F.R. § 351.225(k)(2)(i)." *See Elysium Tiles, Inc. et al. v. United States,* 762 F. Supp. 3d 1352 (Ct. Int'l Trade 2025) ("*Elysium II*" or "Second Remand Order"). In the second remand order, the Court explained that "it is not Commerce's role to disagree with the court's analysis" of the scope inquiry. *Elysium II*, 762 F. Supp. 3d at 1358. Instead, because the Court held that the scope language was not dispositive, it instructed "Commerce on remand to consider the five additional factors set out in 19 C.F.R. § 351.225(k)(2)(i)." *Id.* at 1360.

### C. Commerce's Second Remand Results

On June 5, 2025, Commerce issued its second remand redetermination conducting its scope analysis pursuant to 19 C.F.R. 351.225(k)(2)(i), as instructed by the Court. *See generally* Second Remand Results. As a result, Commerce determined that consideration of the (k)(2) factors now weigh in favor of finding Elysium's composite tile outside the scope of the *Orders. Id.* at 18.

## III. ARGUMENT

### A. Commerce's Prior Interpretation of the Plain Language of the Scope and (k)(1) Analysis was Supported by Substantial Evidence and in Accordance with Law

Because of its particular expertise, Commerce is afforded significant deference in its interpretation of the scope language in its countervailing and antidumping duty orders. *See Saha*

*Thai Steel Pipe Public Company Limited v. United States*, 101 F.4th 1310, 1322 (Fed. Cir. 2024) ("*Saha Thai*") ("we accord deference to Commerce's own interpretation of its antidumping duty orders…because determinations as to the meaning and scope of antidumping duty orders are matters 'particularly within the expertise' of Commerce and its 'special competence'"); *see also Meridian Products v. United States*, 890 F.3d 1272, 1277 (Fed. Cir. 2018); *King Supply Co. v. United States*, 674 F.3d 1343, 1348 (Fed Cir. 2012). Defendant-Intervenor respectfully maintains that Commerce's prior scope determination, as further explained in the first remand results, lawfully interpreted the plain language of the scope and properly incorporated a (k)(1) analysis to determine that Elysium's composite tile is in-scope merchandise.[3]

Commerce previously explained that because the marble top layer of Elysium's composite tile is added to the visible portion of the ceramic composite tile to "enhance the appearance of the tile," it is a "surface decoration or decorative feature of the ceramic tile." *See* First Remand Results at 10-11. Commerce correctly reasoned that "while the scope does not define 'decorative features,' neither does it limit the term." *Id.* at 11. Moreover, the use of the term "may" in "decorative features that *may* in spots exceed 3.2 cm," does not restrict the scope to include ceramic tile with decorative features *only* if the decorative feature causes the ceramic tile to exceed 3.2 cm. *Id.* at 12 (emphasis added). Indeed, it would be illogical to declare that the scope includes tile with decorative features that "may in spots" exceed 3.2 cm (the industry-accepted maximum width for tile), while excluding tile with a decorative feature that does not exceed 3.2 cm. Therefore, we respectfully submit that Commerce correctly determined that Elysium's composite tile is covered by the plain scope language of the *Orders* covering "ceramic tile with decorative features." *Id.*

---

[3] Although Commerce's second remand results do not address the issue of minor processing to determine that the product is in-scope, we also preserve our position that minor processing is not dispositive to exclude Elysium's composite tile because all the production occurs in China, and the process by which the marble laminate layer is added to the composite tile is indeed minor.

Commerce further supported its analysis of the scope language by considering information from the subject investigation, *i.e.*, (k)(1) materials. *Id.* at 13, 15-18. Commerce considered, in detail, its analysis of the request to exclude handmade tile in the investigation's scope decision memorandum – specifically, its determination that 3-dimensional, crackled glass decoration on handmade tile was covered by the scope. *Id.* at 13 (citing to Memorandum to James Maeder, "Scope Decision Memorandum for the Final Determinations," at 9-11, dated March 30, 2020 ("Investigation Scope Decision Memorandum") (P.R. 10)). Notably, Commerce explained that its analysis of "decorative features" in the investigation "was not contingent on whether the decoration caused the tile to exceed a thickness of 3.2 cm." *Id.* This is also in line with the Coalition's intent during the investigation, as reflected in the investigations scope memorandum, that "ceramic tile that contains surface designs and/or decorations, of course falls squarely within the scope…and it is of no moment to Commerce's analysis how that design {is} applied to the surface of the tile." *See* Investigation Scope Decision Memorandum at 9 (summarizing the Coalition's scope comments); *see also Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,323 (September 20, 2021) (*2021 Final Rule*) ("the intentions and interpretations of Commerce…and the injured domestic parties themselves at the time of the underlying investigation should be given primary consideration in defining and interpreting the scope of the order").

Commerce correctly explained that the "clear meaning of {the scope language}, when read in context, is that if ceramic tile is 3.2 cm or less in thickness, regardless of whether it includes decorative features, it is covered by the scope; and, if ceramic tile with decorative features is more than 3.2 cm in thickness, whether in its entirety, because of the decorative features, or just in certain areas where the decorative features themselves cause the thickness to exceed 3.2 cm, it is still covered by the scope." *See* First Remand Results at 12. To conclude "that because the product does not

exceed 3.2 cm, whether or not the marble is a decorative feature is irrelevant to the scope," reads out of the scope language express terms contained therein and interprets the scope language in a way contrary to its terms. *Elysium I*, 719 F. Supp. 3d at 1299; *cf. Saha Thai*, 101 F.4th at 1324; *Smith Corona Corp v. United States*, 915 F.2d 683, 686 (Fed Cir. 1990). Such a conclusion would allow foreign producers and exporters to circumvent the *Orders* by adding any number of "decorative features" while maintaining the ceramic tile under a 3.2 cm thickness. *Cf. Saha Thai*, 101 F.4th at 1331. The terms of the scope language were purposely written in general terms to avoid the very kind of loophole created by such a limitation. *See e.g., Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1352 (Fed. Cir. 2010) (explaining that "descriptions of subject merchandise contained in Commerce's determinations must be written in general terms"); *see also 2021 Final Rule*, 86 Fed. Reg. at 52,323 (agreeing with commenters that "in most scope inquiries the language of the scope is written in more general or broad terms…"). For these reasons, we respectfully maintain that Commerce's prior determination that Elysium's composite tile was covered by scope of the *Orders* was supported by substantial evidence and in accordance with law.

###### B. Commerce's (k)(2) Analysis is Unsupported by Substantial Evidence

Because a scope determination is not in accordance with the law if it changes the scope of the order or interprets an order in a manner contrary to the order's terms, Commerce's (k)(2) determination that Elysium's composite tile is out of scope merchandise cannot lawfully supplant its prior determination that the plain language of the scope and (k)(1) analysis results in finding Elysium's composite tile as in-scope merchandise. *See Fedmet Resources Corp. v. United States*, 755 F.3d 912, 921 (Fed. Cir. 2014) (explaining that "the (k)(1) sources are afforded primacy in the scope analysis"). Nonetheless, Commerce's (k)(2) analysis and resulting redetermination that Elysium's composite tile is not covered by the scope of the *Orders* is also unsupported by substantial evidence on the record. Below, we explain, in order of appearance in the regulation, why

Commerce's analysis of the (k)(2) factors is deficient.

The regulations at 19 C.F.R. § 351.225(k)(2)(i) list the following (k)(2) factors:

(A) The physical characteristics (including chemical, dimensional, and technical characteristics) of the product;
(B) The expectations of the ultimate users;
(C) The ultimate use of the product;
(D) The channels of trade in which the product is sold; and
(E) The manner in which the product is advertised and displayed.

The regulations also state that, in the event of a conflict between these factors, the physical characteristics of the product will normally be allotted greater weight. *See* 19 C.F.R. § 351.225(k)(2)(ii). However, the preamble to the regulations, "recognize{s} that there could be scenarios in which Commerce considers and determines that the physical characteristics factor should not be given greater weight in its analysis." *See 2021 Final Rule*, 86 Fed. Reg. at 52324.

*Physical characteristics*. In its second remand results, Commerce declared that Elysium's composite tile "shares some physical characteristics with ceramic tile but that it also possesses physical characteristics which ceramic tile does not." *See* Second Remand Results at 6-7. Commerce further determined that because composite tile contains a naturally occurring metamorphic stone layer which imparts physical characteristics which ceramic tile does not have then the "physical characteristics" factor weighs in favor of finding Elysium's composite tile outside the scope of the *Orders*. *Id.* at 5-7, 11-16. Commerce also placed greater weight on this factor. *Id.* However, Commerce's determination regarding this factor is unsupported by substantial evidence.

First, Commerce recognized that the porcelain element, which makes up a majority of the composite tile, "*imbues the composite tile as a whole* with some of the same physical characteristics as ceramic tile." *See id.* at 6 (emphasis added). Elysium's composite tile shares the same dimensional physical characteristics as subject tile – 3.2 cm in actual thickness or less. *Id.* at

5-6.  Additionally, because the polished surface of the composite tile is also a feature found in many subject ceramic tile, the surface finish is another physical characteristic of the composite tile which is akin to subject tile, particularly marble-look tile.  *Id.*  Moreover, the base of the composite tile is non-porous and non-absorbent, just like ceramic tile.  *Id.* at 6.  Finally, "the porcelain tile element makes the composite tile less susceptible to breakage by dropping and gives the composite tile lighter weight than marble tile."  *Id.*  Even if the decorative marble surface of Elysium's product imparts a certain "look" or "feel," the entire point of all tile decorative surfaces is to impart a distinctive "look" or "feel".  An unusual decorative surface cannot constitute a physical characteristic that removes a product from the scope when the scope explicitly covers ceramic tile with decorative features.

Regarding the chemical characteristics, Commerce made a single statement on this topic in its second remand results – "ceramic and marble have different *chemical* and physical properties."  *See* Second Remand Results at 6 (emphasis added).  As support for this statement, Commerce cites Elysium's conclusory statement in its July 19, 2022 comments to the agency for which Elysium also provides no evidence for support.  *See* Elysium's Letter, "Elysium Tile Inc. Reply to Petitioner's July 5, 2022 Response," at 7, dated July 19, 2022 ("Elysium's July 19 Comments") (P.R. 24) (stating that "critically, ceramics and marble have different chemical and physical properties," but providing no citations for that statement).  Nowhere else in its July 19 comments does Elysium provide any evidence to support this statement or expand on the chemical differences between the two.  *See generally* Elysium's July 19 Comments.  More importantly, Elysium and Commerce's analysis is misplaced because the comparison should not be between ceramics and marble, but between subject ceramic tile and Elysium's composite tile.

Commerce also stated that "the marble layer is from a naturally occurring metamorphic rock and is absorbent and less susceptible to breakage by weight."  *See* Second Remand Results at

6 (citing Elysium's Letter, "Scope Ruling Request Regarding Composite Marble Tile from the People's Republic of China," at Attachment II, 13, 5-6, filed May 24, 2022 ("Elysium Scope Application") (P.R. 8)). Yet, Commerce's statements are also contradicted by its own statements elsewhere in the document and unsupported by evidence on the record. In its analysis, Commerce indicates that the marble layer is "less susceptible to breakage by weight," but only 2 pages later recognizes that "the advertised advantages of Elysium's composite tile are that combining marble with ceramic tile reduces *the natural fragility of the marble*…and *the ceramic backing imparts strength* to the marble surface layer." *Compare* Second Remand Results at 6 *with id.* at 8 (emphasis added). Commerce's statements at first credit the marble layer with making the composite tile "less susceptible to breakage" but later recognizes, as does Elysium, that it is the ceramic backing which imparts strength to a naturally fragile marble layer. *Id.* Furthermore, Commerce later acknowledges that it does not have information on the record to better compare the strength or absorbency of the 3 mm marble layer of the composite tile. *See* Second Remand Results at 16. This can hardly amount to substantial evidence.

Again, we also disagree with an analysis of the physical characteristics of the marble layer alone, such as the one performed by Commerce when comparing it to the physical characteristics of ceramic tile. This is, in part, because the record indicates that the marble layer cannot be separated from the rest of the composite tile. *See* Second Remand Results at 16 ("We agree with the petitioner that nothing on the record indicates the marble layer can be separated from the rest of the composite tile."). Thus, a proper comparison should be of the entire composite tile. Additionally, the surface of all ceramic tile products differs from the back side and body of the tile. Thus, analyzing the physical characteristics of each tile's surface materials in an attempt to determine whether the surface material makes for an out-of-scope product is a Sisyphean task that runs

counter to the plain language of the scope.[4] As such, a proper analysis of the "physical characteristics" factor should emphasize the composite tile, as a whole, and not focus on the marble layer or decorative surface.

For reference, take the 3-dimensional crackled glass finished tile considered by Commerce in the investigation's scope memo. *See* Investigation Scope Decision Memorandum at 9-11. Such crackled glass, or the paint used for hand painting the same tile, would have different chemical and physical properties than the ceramic tile layer and would certainly impart a unique decorative surface to the tile. The physical characteristics of the decorative features, however, were not in that instance, nor should they be in this instance, a reasonable distinguishing factor from subject ceramic tile. Commerce should consider the physical characteristics of Elysium's composite tile, as a whole, when considering whether this factor weighs in favor of finding Elysium's composite tile is in-scope merchandise. We posit that such an analysis would weigh in favor of finding Elysium's composite tile as in-scope merchandise.

Because the porcelain element of the composite tile makes up the "chief weight" of Elysium's composite tile, the composite tile as a whole, shares many, if not most, of the same physical characteristics with subject ceramic tile. Therefore, contrary to Commerce's conclusion in its second remand results, substantial evidence indicates that the physical characteristics element should have weighed in favor of finding Elysium' composite tile as subject merchandise under a

---

[4] This also why the Coalition urged Commerce to consider not assigning greater weight to the "physical characteristics" factor in its (k)(2) analysis. The decorative surface of a tile is simply not a distinguishing physical characteristic that differentiates any tile from subject merchandise. Finding that a tile's surface decoration imparts a "physical characteristic" that differentiates the tile from subject merchandise contravenes the plain language of the scope, as well as other (k)(1) material. Ceramic tile is commonly painted, polished, and covered with such things as cracked glass. These decorative surfaces certainly are different from the underlying ceramic tile – imparting a certain look, feel, or performance feature – but the fact that the decorative surface imparts a "physical characteristic" to the tile does not remove the tile from the *Orders'* scope.

(k)(2) analysis. Notably, if the Court agrees with the Coalition on this factor, then this alone

warrants further remand given the greater weight afforded to it by Commerce in its (k)(2) analysis.

_Expectations of Ultimate Users_. Commerce determined that "end-users of composite tile

are seeking to buy a product with different physical characteristics than ceramic tile." *See* Second

Remand Results at 7 (citing Elysium's July 19 Comments at 7-8). Commerce discredited, without

evidentiary or legal support, the fact that ultimate users expect both ceramic and composite tile to

function in construction and home projects, because "we find this expectation is true of users of tile

in general, regardless of the type of tile." *Id.* Instead, Commerce determined expectations of

ultimate users differ "because of the expectation to interact with *a natural stone surface*." As we

explain below, Commerce's analysis of the ultimate users' expectations is unsupported evidence

and suffers from a restricted viewpoint.

In support of its finding with respect to this (k)(2) factor, Commerce quotes two

unsupported statements by Elysium – that "{p}urchasers of composite tile expect to purchase a tile

with the look and feel of a natural marble surface, with the shine and durable surface imparted by

the natural marble layer that forms the outer, visible, surface," and that "end-users of composite tile

are seeking to buy a product with different physical characteristics than ceramic tile." *See* Second

Remand Results at 7 (citing Elysium's Scope Application at Attachment II, 13 and Elysium's July

19 Comments at 7-8). In the original submissions by Elysium, both of these statements lack any

cite to supporting evidence. Moreover, both of these unsubstantiated claims are contradicted by

evidence on the record demonstrating that marble-look flooring tile is indistinguishable from

marble (assuming *arguendo* that Elysium's composite tile with a 3 mm marble laminate glued to

the top imparts the same "look and feel" as 100% marble flooring).

From the investigation, the Coalition has provided Commerce with evidence of the

prevalence of stone-look tile in the market, as well as evidence that Elysium's composite tile

competes with stone-look tile. The Petition itself contained numerous photographs of stone look tile that are indistinguishable from actual marble (let alone a ceramic tile with a 3 mm marble laminate). *See* Elysium's Scope Application at Exhibit 4, Petition Vol. I at Exhibit 2 (P.R. 10). Additionally, Elysium's suppliers, on their English language websites, advertise marble-look tile, while not advertising composite marble tile – a strong indication that both products serve common consumer expectations. *See* Petitioner's Letter, "Comments on Elysium's Supplemental Questionnaire Response," at 4, Exhibits 1-4, dated October 25, 2022 (P.R. 33). Furthermore, Elysium, in its marketing material, repeatedly touts the tile-like properties of its composite tile, further evidencing a clear understanding that its product serves the same market as marble-look ceramic tile. Elysium touts, for example, its product's "strong porcelain backing," the "high strength" of the tile below the marble laminate, and the fact that its product is lightweight as compared to "normal marble," just like tile. *See* Elysium's July 19 Comments at Exhibit C. Finally, Elysium's commercial invoice also describes the products, not as marble tile, but as "PORCELAIN TILE." *See* Elysium's Scope Application at Exhibit 5. Therefore, the record is replete with evidence supporting a determination that users do not expect Elysium's product to differ from in-scope ceramic tile.

In response to the Coalition's arguments regarding ultimate user expectations, Commerce did not provide supporting evidence for the claim that ultimate users expect to interact with a natural stone surface with different physical characteristics than ceramic tile. *See* Second Remand Results at 16-17. Instead, Commerce states that "it is ambiguous what market niche composite tile fills, based on the information on the record." *Id.* at 17. Yet somehow it maintained that "ultimate users of composite tile expect to interact with a natural stone surface." *Id.* Again, such a statement is unsupported by record evidence. Nonetheless, the evidence on the record clearly indicates that customers of subject ceramic tile also expect to interact with a natural stone surface. *See*

Elysium's Scope Application at Exhibit 4, Petition Vol. I at Exhibit 1, ITC Preliminary Staff Conference Transcript ("In fact, once a customer decide they want a *stone look* for their bathroom -- like the samples we have today – it is just a matter of who can provide the lowest price") (emphasis added); *see also id.* at Exhibit 2 (depicting a large variety of stone designs and colors).

Again, Commerce attempts to dismiss this evidence as addressing only visual appearance because it is only one aspect of the expectations of the end user. *See* Second Remand Results at 16-17. However, appearance is one of *only two* elements Commerce considered relevant for this factor, *i.e.,* "look and feel." And regarding feel, Commerce already established earlier in its analysis that the surface of the composite tile is a polished surface, and that both composite tile and ceramic tile have polished surfaces. *See* Second Remand Results at 5-6. Therefore, the feel of a polished surface would be a common feature in both Elysium's composite tile and subject ceramic tile.

Finally, with respect to expectations of ultimate users, we stress that Commerce erred in its analysis when it discredited the fact that users of both ceramic tile and composite tile expect the products to function in construction and home projects in a similar manner. *See* Second Remand Results at 7. This is the very kind of evidence regarding the expectations of ultimate users of a product which informs whether or not a product was intended to be included in the scope of an order. *Cf. 2021 Final Rule*, 86 Fed. Reg. at 52324. Specifically, in the case of building material such as tile, it is unclear why one would prioritize how the product will feel, but disregard how it will function in a home project.

*Ultimate Use of the Product*. Both Elysium's composite tile and subject ceramic tile serve the same purpose, as a flooring or surface product. Indeed, as noted above, this is particularly evident when considering that stone look tile is a common consumer choice as a flooring option. *See* Elysium's Scope Application at Exhibit 4, Petition Vol. I at Exhibit 1, ITC Preliminary

Conference Transcript at 42 ("Once a customer chooses an aesthetic design, ceramic tiles are typically commodity products…In fact, once a customer decides they want *a stone look* for their bathroom…it is just a matter of who can provide the lowest price") (emphasis added). Both products are also used interchangeably in the application where ceramic tile is consumed – flooring or similar surface products. *See* Second Remand Results at 7. Commerce therefore correctly found in the second remand results that tile and Elysium's product share common end uses. *Id.* at 8.

<u>*Channels of Trade*</u>. We agree that ceramic tile and Elysium's composite tile are sold in the same channels of trade. Both products are sold by tile stores and big box stores. *Id.*

<u>*Advertising and Display*</u>. We agree here with Commerce's analysis. Both Elysium's composite tile and ceramic tile can and are advertised and displayed in similar manners. *Id.* Importantly, Elysium's advertising materials refers to the composite tile as "laminated marble tile" and emphasizes both the marble and ceramic tile layers. *Id.*

On the last three (k)(2) factors, we do not substantively disagree with Commerce's analysis given that it determined that Elysium's composite tile and subject ceramic tile share common ultimate uses of the products; channels of trade; and advertising and display methods. However, we do disagree with Commerce's decision to discredit or diminish these factors because they would also be "the same across many types of tiles of different materials." *See* Second Remand Results at 8. Such reasoning is unclear, but again, these factors inform Commerce's (k)(2) analysis and weigh in favor of finding Elysium's composite tile within the scope of the *Orders.*

For the aforementioned reasons, Commerce's (k)(2) analysis is unsupported by substantial evidence, specifically as it relates to the "physical characteristics" and "expectations of ultimate end users" factors.

## IV.    CONCLUSION

For the reasons discussed above and in the Coalition's prior submissions to this Court, we respectfully submit that Commerce's prior scope determination, as further explained in the first remand results, that Elysium's composite tile is covered by the scope of the *Orders* was supported by substantial evidence and in accordance with law.   Additionally, we further submit that Commerce's (k)(2) analysis as reflected in its second remand results is unsupported by substantial evidence.

Respectfully submitted,

*/s/ David M. Spooner*
David M. Spooner, Esq.
Christine J. Sohar Henter, Esq.
Nicholas Galbraith, Esq.
Hendricks Valenzuela, Esq.

**BARNES & THORNBURG LLP**
555 12th ST NW Ste 1200
Washington, DC 20004
(202) 289-1313
David.Spooner@btlaw.com

*Counsel for The Coalition for Fair Trade in Ceramic Tile*

Dated:  July 21, 2025

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for the Defendant-Intervenors' Comments on the Final Results of the Second Remand Redetermination, as computed by Barnes & Thornburg LLP's word processing system (Microsoft Word 365), is 5,177 words.

/s/ David M. Spooner
David M. Spooner, Esq.

**BARNES & THORNBURG LLP**
555 12th ST NW Ste 1200
Washington, DC 20004
(202) 289-1313

*Counsel for The Coalition for Fair Trade in Ceramic Tile*

Dated: July 21, 2025