23-00041

_____

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

_____

ELYSIUM TILES, INC., and ELYSIUM TILE
FLORIDA, INC.,

Plaintiffs,

v.

UNITED STATES,

Defendant

and

THE COALITION FOR FAIR TRADE IN
CERAMIC TILE,

Defendant-Intervenor.

_____

DEFENDANT'S RESPONSE TO REMAND COMMENTS

_____

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

OF COUNSEL

VANIA WANG
Senior Attorney
U.S. Department of Commerce
Office of Chief Counsel for
Trade Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, DC 20230-0001

TARA K. HOGAN
Assistant Director

ANNE M. DELMARE
Trial Attorney
Commercial Litigation Branch, Civil Division
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-0531
E-mail: Anne.M.Delmare@usdoj.gov

*Attorneys for Defendant*

September 9, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. ii

BACKGROUND................................................................................................................ 2

    I.   Final Scope Ruling And First Remand Order...................................................... 2

    II.  Second Remand Order And Second Remand Proceeding....................................... 3

ARGUMENT ................................................................................................................... 4

    I.   Standard Of Review.......................................................................................... 4

    II.  Commerce's Second Remand Redetermination That The Composite Tile Imported By Elysium Is Not Covered By The Orders Complied With The Remand Order ....... 5

    III. Commerce's Analysis Of The (k)(2) Factors Was Lawful And Supported By Substantial Evidence......................................................................................... 6

        i.   Physical Characteristics............................................................................. 7

        ii.  Expectations of The Ultimate Users ......................................................... 12

CONCLUSION ............................................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES**                                                                      **PAGE(S)**

*Am. Silicon Techs. v. United States*,
   261 F.3d 1371 (Fed. Cir. 2001) ........................................ 5

*Apex Frozen Foods Pvt. Ltd. v. United States*,
   862 F.3d 1322 (Fed. Cir. 2017) ........................................ 10

*Bethlehem Steel Corp. v. United States*,
   223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ................... 4

*Crawfish Processors Alliance v. United States*,
   483 F.3d 1358 (Fed. Cir. 2007) .................................... 4-5

*Diamond Sawblades Mfrs. Coalition v. United States*,
   301 F. Supp. 3d 1326 (Ct. Int'l Trade 2018) ................. 10

*Dillinger France S.A. v. United States*,
   350 F. Supp. 3d 1349 (Ct. Int'l Trade 2018) ................. 9

*Downhole Pipe & Equip., L.P. v. United States*,
   776 F.3d 1369 (Fed. Cir. 2015) ................................. 8, 13

*Elysium Tiles, Inc. v. United States*,
   719 F. Supp. 3d 1289 (Ct. Int'l Trade 2024) .......... 2, 3, 12, 14, 15

*Elysium Tiles, Inc. v. United States*,
   762 F. Supp. 3d 1352 (Ct. Int'l Trade 2025) .......... 1, 3, 4, 6, 11, 12

*Fastening Sys., Ltd. v. United States*,
   279 F. Supp. 3d 1172 (Ct. Int'l Trade 2017) ................. 9

*Fedmet Resources Corp. v. United States*,
   755 F.3d 912 (Fed. Cir. 2014) ..................................... 5

*Goldlink Indus. Co. v. United States*,
   431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ................. 5

*Hanon Sys. Ala. Corp. v. United States*,
   Ct. No. 24-00013, Slip Op. 25-94, 2025 Ct. Intl. Trade LEXIS 96 at *23
   (Ct. Int'l Trade July 21, 2025) ..................................... 8

*Jiangsu Zhongji Lamination Materials Co., (HK) v. United States*,
   435 F. Supp. 3d 1273 (Ct. Int'l Trade 2020) ................. 9

*MacLean-Fogg Co. v. United States*,
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015)(i) ............. 4

*Mid Continent Nail Corp. v. United States*,
   725 F.3d 1295 (Fed. Cir. 2013) ................................................................. 5

*Mittal Steel Point Lisas Ltd. v. United States*,
   548 F.3d 1375 (Fed. Cir. 2008)........................................................... 13, 14

*Nippon Steel Corp. v. United States*,
   458 F.3d 1345 ............................................................................... 8, 13

*Rhone Poulenc, Inc. v. United States*,
   899 F.2d 1185 (Fed. Cir. 1990) .............................................................. 10

*Sandvik Steel Co. v. United States*,
   164 F.3d 596 (Fed. Cir. 1998) ............................................................. 5, 9

*Universal Camera Corp. v. NLRB*,
   340 U.S. 474 (1951) ............................................................................. 5

## REGULATIONS

85 Fed. Reg. 33,089 ................................................................................. 2

85 Fed. Reg. 33,119 ................................................................................. 2

19 C.F.R. § 351.225 ............................................................................. 2, 6

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:  THE HONORABLE JANE A. RESTANI, JUDGE**

_____

|  |  |  |
|---|---|---|
| ELYSIUM TILES, INC., and ELYSIUM TILE FLORIDA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 23-00041 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| THE COALITION FOR FAIR TRADE IN CERAMIC TILE, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

_____)

## DEFENDANT'S RESPONSE TO REMAND COMMENTS

Defendant, the United States, respectfully submits this response to the comments submitted by plaintiffs, Elysium Tile Florida, Inc. and Elysium Tiles, Inc. (collectively, Elysium), Elysium Cmt, ECF No. 69, and defendant-intervenor, The Coalition for Fair Trade in Ceramic Tile (the Coalition), Coalition Cmt, ECF No. 70, concerning the second remand redetermination filed by the Department of Commerce following this Court's second remand order.  *See* Remand Redetermination (June 6, 2025), ECF No. 62.  As discussed below, the remand redetermination complies with the Court's remand order in *Elysium Tiles, Inc. v. United States*, 762 F. Supp. 3d 1352 (Ct. Int'l Trade 2025) (*Elysium II*) and is supported by substantial evidence and is in accordance with law.  *See* Final Results of Redetermination Pursuant to Court

Remand, ECF No. 62, June 6, 2025 (Remand Redetermination).  Accordingly, the Court should

sustain Commerce's remand redetermination.

## BACKGROUND

### I.    Final Scope Ruling And First Remand Order

On January 25, 2023, Commerce issued a final scope ruling on Elysium's composite tile

for the ceramic tile from China antidumping and countervailing duty orders.  *See* Ceramic Tile

from the People's Republic of China: Final Scope Ruling on Elysium's Composite Tile (Dep't of

Commerce Jan. 25, 2023) (Final Scope Ruling), P.R. 40.[1]  In the final scope ruling, Commerce

found that composite tile imported by Elysium is within the scope of the orders.  Final Scope

Ruling at 1; *see also Ceramic Tile from the People's Republic of China*, 85 Fed. Reg. 33,089

(Dep't of Commerce June 1, 2020) (AD order); *Ceramic Tile from the People's Republic of

China*, 85 Fed. Reg. 33,119 (Dep't of Commerce June 1, 2020) (CVD order) (collectively, the

*Orders*).  Elysium appealed Commerce's determination.

On July 18, 2024, the Court remanded Commerce's scope ruling, finding that the agency:

(1) failed to provide an adequate summary of an *ex parte* meeting; and (2) failed to support with

substantial evidence either that under a 19 C.F.R. § 351.225(k)(1) analysis the scope language

contemplates products such as marble composite tile, or that under the 19 C.F.R. 351.225(k)(2)

factors, the marble composite tile truly is considered a form of ceramic tile in purpose, function,

advertising and use.  *Elysium Tiles, Inc. v. United States*, 719 F. Supp. 3d 1289, 1302 (Ct. Int'l

Trade 2024) *(Elysium I)*.  Specifically, the Court observed that Commerce referenced only two

---

[1]  Public documents on the administrative record are designated as "P.R." and
confidential document are designated as "C.R."  References to the public documents on the
administrative record for the first remand redetermination are designated as "P.1R."  References
to the public documents on the second administrative record for the first remand redetermination
are designated as "P.2R."

(k)(1) sources and relied upon the purpose, function, and physical characteristics of the products, which are all (k)(2) factors. *Elysium I*, 719 F. Supp. 3d at 1298-99. As such, "the Court assum{ed} arguendo that Commerce found it necessary to consider the (k)(2) factors." *Id.*

The Court found that the scope language did not include any clear exclusionary language and the decorative features language was irrelevant. *Id.* at 1299. Thus, the question was not whether the marble layer was decoration. *Id.* at 1299-1300. The Court further explained that the gluing and splitting used for Elysium's composite tile was neither enumerated in the scope language nor so similar to the enumerated processes to be considered minor processing. *Id.* at 1300-1301. Finally, the Court found that Commerce's reliance on a table that showed the purposes, functions, and characteristics shared by the flooring option was unreasonable because the table equally supports the opposite conclusion. *Id.* at 1301-1302.

On October 29, 2024, Commerce filed its first remand redetermination with the Court. *See* First Remand Redetermination (Oct. 29, 2024), P.1R. 5, ECF No. 52. In the first remand redetermination, Commerce supplemented an *ex parte* memorandum with a substantive meeting summary and Commerce continued to find that Elysium's composite tile is within the scope of the orders based upon a (k)(1) analysis and the orders' plain language. *Id.*

## II.    Second Remand Order And Second Remand Proceeding

On March 11, 2025, the Court remanded for a second time. Although the Court found that the supplemental *ex parte* memorandum provided a sufficient summary regarding the merits of the scope ruling, the Court held that Commerce did not adequately address the Court's first opinion. *Elysium II*, 762 F. Supp. 3d at 1354, 1358. Contrary to Commerce's determination, the Court found that the decorative features language did not resolve the matter because decoration is an undefined term, and the firing language was too ambiguous to definitively resolve the scope

question.  *Id.* at 1359.  The Court further found that splitting and gluing the composite tile was a complicated process, and it is unclear from the minor processing language alone whether the ceramic tile is in-scope.  *Id.* at 1359-1360.  Therefore, the Court instructed Commerce on remand to perform an analysis of the (k)(2) factors.  *Id.* at 1360.

On May 8, 2025, Commerce issued a draft remand redetermination, s*ee* Draft Results of Redetermination (May 8, 2025), P.2R. 1, and interested parties commented on Commerce's draft redetermination.  *See* Elysium Draft Remand Cmts (May 15, 2025), P.2R. 2; Coalition Draft Remand Cmts (May 15, 2025), P.2R. 3.  On June 6, 2025, Commerce filed its final remand redetermination with the Court.  In the final redetermination, based upon the (k)(2) factors, Commerce found that Elysium's composite tile is not within the scope of the orders because of the physical characteristics imparted by the marble layer to Elysium's composite tile and the purchaser's expectatinons for the look and feel of a marble tile surface.  Remand Redetermination at 6-7.

## ARGUMENT

### I.      Standard of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination."  *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002).  Accordingly, the Court will sustain Commerce's redeterminations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law."  *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

"'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Crawfish Processors Alliance v. United States*,

483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) ("{s}ubstantial evidence is more than a mere scintilla"). But "{e}ven if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996)). "{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citations and internal quotations omitted).

In undertaking this analysis, the Court grants "'significant deference to Commerce's interpretation of a scope order,' so long as Commerce's interpretation is not 'contrary to the order's terms,' and does not 'change the scope of the order.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (quoting *Global Commodity Group LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)). This is because scope rulings involve "'a highly fact intensive and case-specific determination.'" *Fedmet Resources Corp. v. United States*, 755 F.3d 912, 918 (Fed. Cir. 2014) (quoting *King Supply Co. LLC v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012)). Thus, scope rulings are "particularly within the expertise of {Commerce}." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998).

## II. Commerce's Second Remand Redetermination That The Composite Tile Imported By Elysium Is Not Covered By The *Orders* Complied With The Remand Order

Commerce's second remand redetermination, which found that the composite tile imported by Elysium was not covered by the orders, complies with the second remand order and

is supported by substantial evidence.  Commerce complied with the Court's second remand order by analyzing the (k)(2) factors.  The Coalition argues that Commerce's first remand redetermination was supported by substantial evidence and in accordance with law.  Coalition Cmts at 4-7.  However, the Court's second remand order found "that the scope language is not so clear that either party must prevail, and Commerce did not provide evidence using the (k)(1) sources to substantially support its conclusion that the composite tile is covered by the scope orders."  *Elysium II*, 762 F. Supp. 3d at 1360.  "Without more evidence that the decorative features language was meant to cover composite tile with a marble top layer, the Court conclude{d} that the scope language is not dispositive."  *Id.*  The second remand order also explained that "it is not Commerce's role to disagree with the court's analysis" and "{r}ejecting the court's analysis for purposes of completing a remand determination is tantamount to disobeying the court."  *Id*. at 1358.  Therefore, Commerce applied "the road map set out by the court" and considered "the five additional factors set out in 19 C.F.R. § 351.225(k)(2)(i)" as the Court instructed.  *Id.* at 1358, 1360.

### III.    Commerce's Analysis Of The (k)(2) Factors Was Lawful And Supported By Substantial Evidence

Commerce's consideration of Elysium's composite tile under the (k)(2) factors is lawful and supported by substantial evidence.  When the (k)(1) sources are not dispositive as to whether a product is within the scope of an order, Commerce will consider the five additional criteria set forth in 19 C.F.R. § 351.225(k)(2):  (1) the physical characteristics of the product; (2) the expectations of the ultimate purchasers; (3) the ultimate use of the product; (4) the channels of trade in which the  product is sold; and (5) the manner in which the product is advertised and displayed.

*i.  Physical Characteristics*

Commerce's determination that despite some common physical characteristics, Elysium's composite tile had different physical characteristics than ceramic tile because of the marble layer is reasonable and supported by substantial evidence.  When examining the first factor, physical characteristics, Commerce observed that Elysium's composite tile is made up of a porcelain layer and marble layer, which are bounded together by an epoxy layer.  Remand Redetermination at 5 (citing P.R. 8, at Att. II, pages 3 and 12).  Commerce explained that the polishing on the composite tile was minor processing that would not take the composite tile out of the scope and the composite tile falls within the dimensions of ceramic tile considered by the scope.  Remand Redetermination at 5-6.  Commerce considered that composite tile shared some physical characteristics with ceramic tile, such as the base of the composite tile being non-porous and non-absorbent.  Remand Redetermination at 6.

Commerce also considered the facts that the porcelain layer makes the composite tile less susceptible to breakage and gives the composite tile a lighter weight than marble tile.  Remand Redetermination at 6.  Commerce, however, had to also consider the fact that the marble layer imparts physical characteristics which ceramic tiles does not possess.  Marble and ceramic tile have different physical and chemical properties; marble is from a naturally occurring metaphoric rock, is absorbent, and is less susceptible to breakage by weight.  Remand Redetermination at 6 (citing P.R. 3, at Att. II, pages 5-6 and 13).  Commerce also considered that the Court previously held that a table comparing the characteristics of ceramic tile, marble tile, and composite tile shows that composite tile is an ambiguous middle ground between ceramic and solid marble tile on all fronts.  Accordingly, the table does not support finding the composite tile to be more similar to either ceramic tile or solid marble tile.  Remand Redetermination at 6.  As such,

Commerce concluded that "although composite tile shares some physical characteristics with ceramic tile, composite tile has physical characteristics which ceramic tile does not, because composite tile contains a naturally occurring metamorphic stone layer." Remand Redetermination at 7.

The majority of the Coalition's arguments center on its disagreement with Commerce's weighing of the evidence. This Court's role is not to reweigh evidence, but to review whether Commerce's determinations are based on substantial evidence. *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1377 (Fed. Cir. 2015) ("While Appellants invite this court to reweigh this evidence, this court may not do so."); *Nippon Steel Corp. v. United States*, 458 F.3d 1345 (explaining that under the substantial evidence standard, the Court of International Trade does not make the determination and merely vets the determination and finding the Court of International Trade erred in reweighing the evidence); *Hanon Sys. Ala. Corp. v. United States*, Ct. No. 24-00013, Slip Op. 25-94, 2025 Ct. Intl. Trade LEXIS 96 at *23 (Ct. Int'l Trade July 21, 2025) ("Hanon's argument . . . calls on the court to reweigh the evidence, which is not required by the substantial evidence standard.") (citing *Nippon Steel*, 458 F.3d at 1352).

Here, Commerce's determination was based on substantial evidence. For example, the Coalition contends that the porcelain tile makes up most of the composite tile and imbues the composite tile as a whole with some of the same physical characteristics as ceramic tile. Coalition Cmts at 8-9. However, Commerce considered that fact, along with the characteristics that the marble layer also imparts to the composite tile. Remand Redetermination at 5-7.

The Coalition argues that Commerce's statement that "ceramic and marble have different chemical and physical properties" is unsupported by the record. Coalition Cmts at 9. The Coalition also argues that Commerce's analysis regarding breakage of marble tiles and the fact

that the ceramic layer makes the composite tile less susceptible to breakage is contradictory. Coalition Cmts at 10. The Coalition failed to exhaust these arguments. A party is not "'entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Sandvik Steel Co. v. United States,* 164 F.3d 596, 599 (Fed. Cir. 1998) (citations omitted); *see also Stanley Works (Langfang) Fastening Sys., Ltd. v. United States*, 279 F. Supp. 3d 1172, 1189 (Ct. Int'l Trade 2017) (stating that exhaustion promotes judicial efficiency "by enabling an agency to correct its own errors so as to moot judicial controversies."). "The exhaustion doctrine . . . extends to remand proceedings." *Jiangsu Zhongji Lamination Materials Co., (HK) v. United States*, 435 F. Supp. 3d 1273 (Ct. Int'l Trade 2020)") (citing *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375 (Fed. Cir. 2008)). Commerce made these findings in the draft remand, Draft Remand Redetermination at 6, and the Coalition had an opportunity to make these arguments in its comments on the draft remand. It did not do so.

Moreover, none of the exceptions to the exhaustion doctrine such as futility, intervening judicial act, or pure legal question applies here. The futility exception is narrow and strictly viewed, and the "mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies." *Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349, 1371 (Ct. Int'l Trade 2018) (quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1378-81 (Fed. Cir. 2007)). There was no intervening judicial act, and this is an argument about the facts and evidence on the record, rather than a pure question of law.

The Coalition's breakage argument about marble slab versus 3mm tile made in its draft remand comments does not incorporate another, different, argument about breakage and does not

preserve this argument for review by this Court.  P.2R. 3 at 10; *Apex Frozen Foods Pvt. Ltd. v. United States*, 862 F.3d 1322, 1331-34 (Fed. Cir. 2017) (affirming the Court's refusal to consider a plaintiff's unexhausted argument that the meaningful difference test does not speak to whether the average-to-average method can account for masked dumping specifically where the plaintiff had previously only criticized the meaningful difference test for its "uneven" use of zeroing); *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (finding that "it would have been unjust to the ITA and wasteful of public resources to allow Rhone Poulenc to belatedly raise the argument under these circumstances" in reference to an argument that was characterized as "simply another angle to an issue" raised) (emphasis omitted); *Diamond Sawblades Mfrs. Coalition v. United States*, 301 F. Supp. 3d 1326, 1354-55 (Ct. Int'l Trade 2018) ("The requirement of exhaustion, generally speaking, imposes a more rigorous standard on the precision of argumentation at the administrative level…") (citing, e.g., *Boomerang Tube LLC v. United States*, 856 F.3d 908 (Fed. Cir. 2017)).

Next, the Coalition asserts that the proper comparison is between ceramic tile and composite tile, not marble tile.  Coalition Cmts at 10.  However, the Coalition ignores the fact that composite tile also includes a marble layer.  Consequently, Commerce correctly compared the physical characteristics of the composite tile, which includes characteristics imparted by the marble tile, with the ceramic tile.  Remand Redetermination at 5-6.

The Coalition claims that analyzing the physical characteristics of each tile's surface material to determine whether the surface material makes for an out-of-scope product is a Sisyphean task that runs counter to the orders' plain scope language.  Coalition Cmts at 10-11.  The Coalition further argues that the decorative surface imparting a "physical characteristic" to the tile does not remove the tile from the orders' scope (Coalition Cmts at 11 n.4).  The Coalition

cites to the 3-dimensional crackled glass finished tile considered by Commerce in the investigation's scope memorandum (Coalition Cmts at 11).  Marble tile, however, is not a decorative surface accounted for by the orders' scope language.

Indeed, Commerce agreed that ceramic tiles may have a variety of surface features, each with unique physical characteristics, and that many of these features were contemplated either in the scope language or in the investigation.  Remand Redetermination at 12.  Commerce explained that while "ceramic tile may have a large variety of surface finishes, the scope provides information on the types of finishes covered by the scope."  Remand Redetermination at 14.  For example, the orders cover all ceramic tile whether glazed or unglazed and also contemplates staining, painting, and polishing as kinds of minor processing that ceramic tile may undergo.  Remand Redetermination at 12; Final Scope Ruling, P.R. 40 at 2; *see also* Scope Application (May 24, 2022) at Attachment II, Exhibit 4, P.R. 10-11, C.R. 4-5.  Although Commerce agreed that a surface finish such as paint imparts physical characteristics that unpainted tile does not have, and that such characteristics would not remove a tile from the scope of the orders, Elysium's composite tile does not have a surface finish contemplated by the scope language.  Remand Redetermination at 14.  Specifically, Commerce concluded that glaze, staining, painting, and polishing are surface features contemplated by the scope language, but marble tile is not.  Remand Redetermination at 12-14.

Moreover, although the scope also includes language regarding decorative features, the Court stated, "{c}oncentrating on 'decoration' does not help to resolve this matter.  Without more evidence that the decorative features language was meant to cover composite tile with a marble top layer, the court concludes that the scope language is not dispositive."  *Elysium II*, 762 F.Supp.3d at 1359.  Additionally, Commerce recognized that other surface decorations, such as

three-dimensional crackled glass, were contemplated in the final scope memorandum of the investigation.  Remand Redetermination at 13.  In the first remand order, however, the Court acknowledged, in a footnote to its analysis of the "decorative features" scope language, that Commerce relied on the crackled glass decoration in the final scope memorandum from the investigation, and the Court determined that the "decorative features" language "does not expand the scope to include all instances where the ceramic tile is used as a backing for decoration, or other additions." *Elysium I*, 719 F. Supp. 3d at 1300.  Additionally, the Court assumed, *arguendo*, that Commerce found it necessary to consider (k)(2) factors because Commerce considered the purpose, function, and physical characteristics.  *Id.* at 1299.  Therefore, consistent with Court's road map, Commerce concluded that consideration of the marble layer or physical additions does not run counter to the plain language of the orders.  *Id.*; *Elysium II*, 762 F. Supp. 3d at 1358; Remand Redetermination at 13-14.

### ii.  Expectation of the Ultimate Users

Commerce's determination regarding the expectation of ultimate users is reasonable and supported by substantial evidence.  Commerce found that purchasers of composite tile expect to purchase tile with the look and feel of a natural marble surface and a product with different physical characteristics than ceramic tile.  Remand Redetermination at 7 (citing P.R. 3, at Att. II, page 13).  Commerce determined that "the expectations of the ultimate users of composite tile are distinguished from those of users of ceramic tile because of the expectation to interact with a natural stone surface."  *Id.*

The Coalition argues that Commerce relied upon Elysium's statements about the purchasers of composite tile expecting tile with the look and feel of marble and that those statements are unsupported.  Coalition Cmts at 12.  This argument, however, goes to the weight

of the evidence.  *Downhole Pipe*, 776 F.3d at 1377; *Nippon Steel*, 458 F.3d at 1345.

Additionally, Elysium's product brochure highlights the marble surface layer as superior and

unique beauty along with the strong porcelain backing.  P.R. 9, C.R. 3, Scope Application at

Attachment II, Exhibit 2.

      The Coalition further contends that there is evidence of other tile that has a stone-look

and is indistinguishable from actual marble and that the tile-like qualities advertised for

composite tile meant that they were in the same market.  Coalition Cmts at 12-13.  Commerce,

however, found that "these photos alone do not demonstrate that 'marble-look' tile is

indistinguishable from either marble or composite tile" because the "product brochure does not

mention marble or draw a comparison between ceramic tile and marble or composite tile."

Remand Redetermination at 16.  Commerce explained that "visual appearance is only one aspect

of both physical characteristics and the expectations of the end user," and "the U.S.

manufacturer's brochure on the record does not provide any information on how the feel of

ceramic tile compares to that of a product with a marble surface."  Remand Redetermination at

16-17.

      The Coalition asserts that composite tile and ceramic tile both can have polished surfaces.

Coalition Cmts at 14.  As an initial matter, the Coalition did not present this argument to

Commerce, and thus it is waived.  *Mittal Steel*, 548 F.3d at 1375.  Moreover, the Coalition

misses the point.  Commerce's analysis focused on whether the composite tile with its marble

layer, which is a physical addition not contemplated by the scope language, has a different feel

from a ceramic tile.  Remand Redetermination at 13-14, 16-17.  Under the Coalition's logic, a

polished fully marble tile without the porcelain base would have the same look and feel of a

ceramic tile, and the ultimate user would have the same expectations of the look and feel of

polished marble and polished ceramic tile.  Commerce explained that polishing is a minor process that would not take a product out of the scope of the orders.  Remand Redetermination at 12-13.  The Coalition's assertion suggests that the inverse would be true, *i.e.* that polishing is a substantial enough process to bring out-of-scope merchandise, such as marble tile, within the scope of the orders.  This contention is unsupported by the record.

The Coalition claims that Elysium's commercial invoice describes composite tile as porcelain tile.  Coalition Cmts at 12-13; C.R. 6.  But "the commercial invoice from the Chinese exporter to Elysium is not a document that the ultimate user typically has access to."  Remand Redetermination at 17.  Consequently, Commerce found that "the description of the product on the commercial invoice to Elysium does not provide evidence for the expectations of the ultimate users."  *Id.*

Finally, the Coalition misunderstands Commerce's analysis of the expectation that composite and ceramic tile are used in construction and home projects in a similar manner.  Coalition Cmts at 14.  Commerce did not dispute that users of ceramic and composite tile expect products to function in construction and home projects, but rather that this expectation is also true of uses of tile in general, regardless of the type of tile.  Remand Redetermination at 7.  As a result, Commerce concentrated on the expectations of the ultimate users regarding interacting, seeing, and feeling a natural stone surface as opposed to a ceramic tile.  Remand Redetermination at 7.  The Court has previously found that Commerce's reliance on a table that showed purposes, functions, and characteristics are shared to some extent by all flooring options was unreasonable because the table was ambiguous and did not support that composite tile was more like a marble or a ceramic tile.  *Elysium I*, 719 F. Supp. 3d at 1301-02.  The Court explained that the table "equally supports the opposite conclusion that the composite tile is like

marble tile rather than ceramic tile.  A single piece of evidence cannot support one conclusion if it is equally authoritative in its support of an opposite conclusion."  *Id.*  The Coalition's reliance solely on the expectation for use in construction and home projects presents the same issue here.

The Coalition does not challenge Commerce's findings with respect to the other three factors: ultimate use of the product, channels of trade, and advertising and display.  Commerce found that  "the end use of tile is the same across many types of tile of different materials," composite and ceramic tile are sold in the same channels of trade but "that many types of tile, regardless of material, are sold in the same channels of trade," and stone, composite, and ceramic tile "are displayed and sold in tile stores and big box stores."  Remand Redetermination at 7-8. Therefore, Commerce found that these factors were general.  Draft Remand Redetermination at 9.  As explained above, the Court has previously found that evidence that equally support both conclusion is ambiguous and supports neither.  *Elysium I*, 719 F. Supp. 3d at 1301-02.  Thus, consideration of the ultimate use of the product, channels of trade, and advertising and display does little to further illuminate the question of whether the Elysium's composite tile is covered by the scope of the orders.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter judgment in favor of the United States.

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/ Anne M. Delmare
ANNE M. DELMARE
Trial Attorney
United States Department of Justice
Civil Division, Commercial Litigation
Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 305-0531
Anne.M.Delmare@usdoj.gov

*Attorneys for Defendant*

VANIA WANG
Senior Attorney
U.S. Department of Commerce
Office of Chief Counsel for
Trade Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, DC 20230-0001

September 9, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the Rules of this Court and the

Court's scheduling order in that it contains 4414 words, including text, footnotes, and headings.


<u>/s/ Anne M. Delmare</u>

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 9th day of September, 2025, a copy of the foregoing "Defendant's Response to Remand Comments" was filed electronically.

X  This filing was served electronically on all parties by operation of the Court's electronic filing system.

/s/ Anne M. Delmare
ANNE M. DELMARE