Slip Op. 25-138

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ELYSIUM TILES, INC., AND ELYSIUM TILE FLORIDA, INC., | |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | Before: Jane A. Restani, Judge |
| Defendant, | Court No. 23-00041 |
| and | |
| THE COALITION FOR FAIR TRADE IN CERAMIC TILE, | |
| Defendant-Intervenor. | |

## OPINION AND ORDER

[Sustaining the Department of Commerce's final remand redetermination in scope proceeding regarding composite tile.]

Dated: October 20, 2025

David John Craven, Craven Trade Law LLC, of Chicago, IL, on the brief for plaintiffs Elysium Tiles, Inc., and Elysium Tile Florida, Inc. With him on the brief was Jennifer R. Diaz, Diaz Trade Law, P.A., of North Miami, FL.

Anne Marie Delmare, Lead Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of Washington, DC, on the brief for the defendant. Of counsel on the brief were Leslie Mae Lewis, U.S. Department of Commerce, of Washington, DC, and Vania Y. Wang, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

David Matthew Spooner, Barnes & Thornburg, LLP, of Washington, DC, on the brief for defendant-intervenor The Coalition for Fair Trade in Ceramic Tile. With him on the brief were Christine Juliet Sohar Henter, Hendricks Vidal Valenzuela Sandoval, and Nicholas Andrew Galbraith.

Restani, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") final remand redetermination pursuant to the court's second remand order, see Elysium Tiles, Inc. v. United States, 762 F. Supp. 3d 1352 (CIT 2025) ("Elysium II"), on Commerce's final determination in its antidumping and countervailing duty orders on ceramic tile from the People's Republic of China ("China"). See generally Final Results of Redetermination Pursuant to Court Remand, ECF No. 62-1 (June 6, 2025) ("Second Remand Results"). In Elysium II, the court sustained in part, and remanded in part, Commerce's first remand determination. See Elysium II at 1355 n.1, 1360; Final Results of Redetermination Pursuant to Court Remand, ECF No. 52-1 (Oct. 29, 2024) ("First Remand Results"). The court instructed Commerce to consider the five factors set out in 19 C.F.R. § 351.225(k)(2)(i) to determine whether Elysium Tiles, Inc. and Elysium Tile Florida, Inc.'s (collectively, "Elysium") composite tile is covered by the scope of Commerce's order on ceramic tile. Elysium II at 1360. For the following reasons, the court sustains Commerce's determination.

## BACKGROUND

The court presumes familiarity with the facts of this case as set out in its previous opinions ordering remand to Commerce, see Elysium Tiles, Inc. v. United States, 719 F. Supp. 3d 1289 (CIT 2024) ("Elysium I") and Elysium II, and now recounts only those facts relevant to the court's review of the Second Remand Results. On June 1, 2020, Commerce issued antidumping and countervailing duty orders on ceramic tile from China. Ceramic Tile From the People's Republic of China: Antidumping Duty Order, 85 Fed. Reg. 33,089 (Dep't Commerce June 1, 2020) ("Antidumping Duty Order"); Ceramic Tile From the People's Republic of China: Countervailing Duty Order, 85 Fed. Reg. 33,119 (Dep't Commerce June 1, 2020) ("Countervailing Duty Order") (collectively, the "orders"). On May 24, 2022, Elysium requested that Commerce conduct a scope

inquiry to determine that its composite tile is not covered by the scope of the orders. Request to Reconsider and Scope Application, C.R. 2, P.R. 8 (May 20, 2022) ("Scope Application").

On January 25, 2023, Commerce issued its final scope ruling which Elysium challenged before this court. Final Scope Ruling on Elysium's Composite Tile, P.R. 40 (Jan. 25, 2023). Commerce found that the composite tile falls within the scope of the orders. Id. On July 18, 2024, the court remanded Commerce's final scope ruling as unsupported by substantial evidence and not in accordance with law. See Elysium I, 719 F. Supp. 3d at 1292. The court concluded that Commerce failed to provide an adequate summary of an ex parte meeting held between Commerce and Florida Tile, Inc. Id. at 1296. This issue is now resolved.[1] The court further instructed Commerce to reconsider its analysis of the composite tile under either the (k)(1) sources or (k)(2) factors. See 19 C.F.R. § 351.225(k) (2024); Elysium I, 719 F. Supp. 3d at 1302.

On October 29, 2024, Commerce filed its First Remand Results, concluding that Elysium's composite tile is covered by the scope of the orders. See generally First Remand Results. After briefing was complete, the court remanded the substantive scope issue on March 11, 2025. See Elysium II at 1355. The court again concluded that Commerce's determination that Elysium's composite tile was covered by the scope of the orders was unsupported by substantial evidence. Id. at 1355.

On June 6, 2025, Commerce filed its Second Remand Results, concluding that Elysium's composite tile is not covered by the scope of the orders. See Second Remand Results at 18. On July 21, 2025, Elysium filed its comments on the second remand results and requested that the

---

[1] In its First Remand Results, Commerce supplemented its ex parte memorandum to provide a substantive summary of the ex parte meeting held between Commerce and Florida Tile, Inc. First Remand Results at App'x 1–2. In Elysium II, the court concluded that this substantive summary was sufficient. Elysium II at 1355 n.1.

court sustain the Second Remand Results. See generally Pls.' Comments in Supp. of Commerce's Second Remand Determination, ECF No. 69 (July 21, 2025) ("Pls.' Cmts."). On July 21, 2025, defendant-intervenor, The Coalition for Fair Trade in Ceramic Tile ("the Coalition"), filed its comments and argued that Commerce's determination that Elysium's composite tile is not covered by the scope of the orders was in error. See generally Def.-Intervenor's Comments in Opp'n to Commerce's Second Remand Redetermination, ECF No. 70 (July 21, 2025) ("Def.-Interv.'s Cmts.").

### A. Scope of the Orders

Commerce defined the scope of the orders, in relevant part, as follows:

> The merchandise covered by [the orders] is ceramic flooring tile, wall tile, paving tile, hearth tile, porcelain tile, mosaic tile, flags, finishing tile, and the like (hereinafter ceramic tile). Ceramic tiles are articles containing a mixture of minerals including clay (generally hydrous silicates of alumina or magnesium) that are fired so the raw materials are fused to produce a finished good that is less than 3.2 cm in actual thickness. All ceramic tile is subject to the scope regardless of end use, surface area, and weight, regardless of whether the tile is glazed or unglazed, regardless of the water absorption coefficient by weight, regardless of the extent of vitrification, and regardless of whether or not the tile is on a backing. Subject merchandise includes ceramic tile with decorative features that may in spots exceed 3.2 cm in thickness and includes ceramic tile "slabs" or "panels" (tiles that are larger than 1 meter$^2$ (11 ft.$^2$)).
>
> Subject merchandise includes ceramic tile that undergoes minor processing in a third country prior to importation into the United States. Similarly, subject merchandise includes ceramic tile produced that undergoes minor processing after importation into the United States. Such minor processing includes, but is not limited to, one or more of the following: Beveling, cutting, trimming, staining, painting, polishing, finishing, additional firing, or any other processing that would otherwise not remove the merchandise from the scope of [these orders] if performed in the country of manufacture of the in-scope product.

Antidumping Duty Order at 33,117.

Elysium's composite tile is made of multiple layers of material. Scope Application, C.R. 2 at 24, P.R. 8 at 36. The base layer is made of porcelain tile, the middle layer consists of aviation-grade epoxy used to bond the base layer to the top layer, and the top layer consists of a thin layer of marble. Id.; Scope Application Exhibits, C.R. 3 at 55, P.R. 9 at 67 (Feb. 6, 2024). To create the composite tile, two porcelain tiles are sandwiched around a 6 mm thick marble layer, creating a "biscuit" glued together with the epoxy. Scope Application Exhibits, C.R. 3 at 62, 64, P.R. 9 at 74, 76; see Scope Application, C.R. 2 at 28, P.R. 8 at 40; Response from Diaz Trade Law to Sec. of Commerce, C.R. 8 at 304, P.R. 31 at 336 (Oct. 11, 2022). Then, the biscuit is split in half, resulting in two composite tiles with a 3 mm marble top layer. Scope Application Exhibits, C.R. 3 at 55, 64–65, P.R. 9 at 67, 76–77.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2020) and 19 U.S.C. § 1516a(a)(2)(B)(vi) (2020). Section 1516a(a)(2)(B)(vi) provides for judicial review of a determination of "whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi). In conducting its review, the court must set aside any determination, finding, or conclusion found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."[2] Id. § 1516a(b)(1)(B)(i).

In reviewing Commerce's scope determinations, "the court will not re-weigh the evidence presented to Commerce" and will uphold decisions by Commerce when the agency "chooses from among the range of possible reasonable conclusions based on the record." OTR Wheel Eng'g v.

---

[2] "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F. Supp. 2d 1255, 1259 (CIT 2014) (citation modified).

United States, 37 CIT 409, 414–15, 901 F. Supp. 2d 1375, 1380 (2013). Although the court grants significant deference to Commerce's interpretation of its own orders, Commerce "cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." See Walgreen Co. v. United States, 620 F.3d 1350, 1354 (Fed. Cir. 2010) (quoting Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1095 (Fed. Cir. 2002)).

## DISCUSSION

### I. Legal Background

To determine whether a certain product is within the scope of an order, Commerce first must consider the language of the order itself. See Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1302 (Fed. Cir. 2013). If the language of the order is ambiguous with regard to the particular product at issue, then Commerce considers the (k)(1) factors, which include the descriptions of the merchandise contained in the petition, the descriptions of the merchandise contained in the initial investigation, and the determinations of Commerce, including prior scope determinations, and the Commission. 19 C.F.R. § 351.225(k)(1)(i). If the (k)(1) factors are not dispositive, only then will Commerce consider the (k)(2) factors, which are "(A) [t]he physical characteristics . . . of the product; (B) [t]he expectations of the ultimate purchasers; (C) [t]he ultimate use of the product; (D) [t]he channels of trade in which the product is sold; and (E) [t]he manner in which the product is advertised and displayed." Id. § 351.225(k)(2)(i). In considering these five factors, "it is well settled" that Commerce has discretion in how to weigh and balance these factors. Diamond Sawblades Mfrs.' Coal. v. United States, 540 F. Supp. 3d 1338, 1343 (CIT 2021) (quoting Meridian Prods., LLC v. United States, 851 F.3d 1375, 1382 (Fed. Cir. 2017)).

## II. Redetermination Under the (k)(2) Factors

In its Second Remand Results, Commerce analyzed Elysium's composite tile under the factors set out in 19 C.F.R. § 351.225(k)(2)(i) and determined that Elysium's composite tile is not covered by the scope of the orders. Second Remand Results at 2, 18. Elysium argues that the court should sustain Commerce's determination because Commerce properly addressed the issues raised in Elysium II when it conducted its (k)(2) analysis and determined that Elysium's tile was out of scope. Pls.' Cmts. at 1. Elysium further argues that Commerce correctly rejected the Coalition's comments on the physical characteristics and the expectations of the ultimate users. Id. The Coalition first argues that Commerce's scope determination is not in accordance with law because it changes the scope of the orders and interprets the orders in a manner contrary to the orders' terms. Def.-Interv.'s Cmts. at 7. Second, the Coalition argues that Commerce's (k)(2) analysis is unsupported by substantial evidence on the record. Id. The government, however, contends that Commerce's (k)(2) analysis is supported by substantial evidence because "the marble layer imparts physical characteristics which ceramic tiles do not possess," and purchasers of the composite tile have a different expectation—a natural marble surface—than purchasers of ceramic tiles. See Def. Resp. to Remand Comments, ECF No. 74 at 7, 12 (Sep. 9, 2025) ("Def.'s Cmts.").

The court now addresses Commerce's analysis of each of these factors in its Second Remand Results to determine whether Commerce's conclusions are reasonable and supported by substantial evidence. For the reasons that follow, Commerce's Second Remand Results are sustained.

### i. Physical Characteristics

The first of the (k)(2) factors instructs Commerce to review the physical characteristics of the product to determine whether the product, in this case composite tile, has the same physical characteristics as the product subject to the orders. 19 C.F.R. § 351.225(k)(2)(i)(A). The physical characteristics of the product include chemical, dimensional, and technical characteristics. Id. In the event of a conflict between the (k)(2) factors, the physical characteristics of the product will normally be allotted greater weight than the other factors. Id. § 351.225(k)(2)(ii).

After examining the physical characteristics of the composite tile, Commerce concluded that the composite tile shares some physical characteristics with ceramic tile, but that it also possesses physical characteristics which ceramic tile does not. Second Remand Results at 6–7. Commerce determined that while the porcelain base layer is similar to ceramic tile, the marble top layer is not. Id. Commerce explained that the porcelain base layer has the same physical characteristics as ceramic tile. Id. at 6. It is non-porous, non-absorbent, less susceptible to breakage by dropping, and lighter than marble. Id. Commerce contrasted the physical characteristics of the porcelain base layer with that of the marble top layer. Id. Commerce explained that the marble top layer imparts physical characteristics that ceramic tile does not possess. Id. For example, the marble top layer is made from naturally occurring metamorphic rock, is absorbent, and is less susceptible to breakage by weight. Id.

The Coalition counters that Commerce's determination is unsupported by substantial evidence. Def.-Interv.'s Cmts. at 7. The Coalition argues that the marble top layer is a decorative feature that cannot constitute a physical characteristic that removes the composite tile from the orders' scope. Id. at 9. Further, the Coalition argues that because the marble top layer cannot be separated from the rest of the composite tile, the comparison should be of the composite tile as a

whole to ceramic tile. Id. at 10. The Coalition adds that Commerce did not support its conclusions about the physical properties of the ceramic and marble tiles with evidence. Id. at 9–10. The Coalition takes issue with the greater weight Commerce placed upon the physical characteristics of the composite tile and suggests that, even if the court sustains Commerce's findings on physical characteristics, the court does not need to put a premium on the differences in physical characteristics. Id. at 8.

Elysium argues that Commerce correctly determined that its composite tile is not covered by the scope because the marble layer is a distinct physical characteristic of the composite tile. Pls.' Cmts. at 2. Elysium adds that Commerce correctly rejected the Coalition's comments on physical characteristics. Id. at 3–4. The government agrees that Commerce correctly concluded that the composite site is out of scope because Commerce considered all five of the (k)(2) factors and supported its analysis with substantial record evidence. See generally Def.'s Cmts.

The court concludes that Commerce acted reasonably when it determined that Elysium's composite tile shares some but not all of the physical characteristics of ceramic tile. See Second Remand Results at 6. As a whole, the composite tile features both ceramic and non-ceramic elements. It is comprised of naturally occurring metamorphic rock and a non-porous, non-absorbent layer. Id. at 6–7. Because the marble layer is permanently bonded to the ceramic layer, the court agrees that Commerce reasonably concluded the marble layer is a distinct physical characteristic of the composite tile and a feature that ceramic tiles generally do not possess. Id. at 5. In addition, the court does not find the Coalition's argument that the marble layer is a decorative feature relevant. As the court has previously ruled, the "decorative feature" language is not dispositive as to whether Elysium's composite tile is covered by the scope. Elysium II at 1359. The court concludes there is no reason to revisit that issue.

Moreover, the Coalition's argument that physical characteristics should not be given more weight is unpersuasive. The Coalition cites the preamble of 86 Federal Register 52,324 which states that "there could be scenarios in which Commerce considers and determines that the physical characteristics factor should not be given greater weight in its analysis." Def.-Interv.'s Cmts. at 8 (citing Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. 52,300, 52,324 (Sep. 20, 2021). As Commerce correctly pointed out in the Second Remand Results, the rest of the preamble recognizes "Commerce's consistent practice [of giving] greater weight to [its] analysis of the physical characteristics of the particular product." Second Remand Results at 11 (citing Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. at 52,324). 19 C.F.R. § 351.225(k)(2)(ii) expressly states that in the event of a conflict between the (k)(2) factors, physical characteristics normally will be allocated greater weight than other factors. 19 C.F.R. § 351.225(k)(2)(ii). Thus, the court finds that Commerce reasonably determined that the composite tile does not share important physical characteristics with ceramic tile and afforded this determination the proper weight.

  ii. **Expectations of the Ultimate Users**

Commerce analyzed the second (k)(2) factor, the expectations of the ultimate purchasers, and found that the ultimate users of composite tile expect to interact with (i.e., see and feel) a marble surface. See Second Remand Results at 7; 19 C.F.R. § 351.225(k)(2)(i)(B). The end-users of composite tile, therefore, are seeking to buy a product with different physical characteristics from ceramic tile. Second Remand Results at 7.

The Coalition argues that Elysium's product brochure highlights ceramic tile-like properties when advertising its composite tile, such as a "strong porcelain backing," "lightweight"

material, and "high strength" due to its base layer. Def.-Interv.'s Cmts. at 13. The Coalition contends that users, therefore, expect a product similar to a ceramic tile. Id. The Coalition emphasizes that ceramic tiles with a stone or marble-like look are indistinguishable from actual marble tiles. Id. at 12. The Coalition argues that visually, therefore, both ceramic tiles with a stone look and real marble tiles meet a common consumer expectation. Id. at 13. The Coalition adds that Commerce unreasonably found that purchasers of the polished marble-look tile have different expectations than those of ceramic tile because a fully polished marble tile and a fully polished ceramic tile have the same look and feel. Id. at 13–14.

Elysium argues that Commerce correctly rejected the Coalition's comments on expectations of the ultimate users because the end users expect to feel marble tile. Pls.' Cmts. at 5. The government echoes Commerce's determination that users accordingly expect to interact with a product with marble features rather than a ceramic tile. Def.'s Cmts. at 12.

Commerce reasonably concluded that users of composite tiles expect to interact with a marble tile.[3] Though users may expect some features of a ceramic tile, Commerce reasonably concluded that users are not expecting ceramic tile. The Coalition highlights that Elysium's product brochure states numerous benefits of the ceramic base, but the brochure also highlights

---

[3] According to Elysium's Scope Ruling Application, ceramic tile is a cheap flooring option, whereas composite marble tile is an intermediate option between traditional marble and ceramic tile. See Request to Reconsider and Scope Application, C.R. 2 at 5–6, P.R. 8 at 5–6 (May 20, 2022) ("[Composite marble tile] also is less expensive than traditional marble tile as it uses significantly less of the highly expensive marble constituent in the final product[;] . . . [it] combines the prestige of marble with the cost of tile."). Commerce, however, did not find this argument relevant to its determination because value and cost of materials are not factors in the (k)(1) sources used to conduct a scope analysis. See Final Scope Ruling on Elysium's Composite Tile, P.R. 40 at 8 (Jan. 25, 2023) ("Final Scope Ruling"); see also Def.'s Resp. to Pls.' Mot. for J. on the Agency R. at 17, ECF No. 35 (Dec. 13, 2023). On this record, however, the court considers the prestige, price, and cost difference between the two products as both relevant to users' desire to "interact" (using the agency's word) with the product and consistent with Commerce's determination.

the "natural," "superior" quality, and "unique beauty" of its marble layer. Second Remand Results at 17. Moreover, the court agrees with Commerce that determining customer expectations, specifically the "feel" of a product, through product brochures alone is insufficient. Id. at 16–17.

    iii. **Ultimate Use of the Product**

With respect to the ultimate use of the product, 19 C.F.R. § 351.225(k)(2)(i)(C), Commerce found that composite tile and ceramic tile have similar ultimate end uses because they are both primarily used as flooring or similar surface products. Second Remand Results at 7. Commerce further noted, however, that composite tile is used to provide the appearance of marble tile. Id. This, Commerce explained, does not change the fact that the end use of the tile is the same across many types of tile of different materials. Id. at 8. No party disputes this finding.[4] See Pls.' Cmts.; Def.-Interv.'s Cmts. at 14–15; Def.'s Cmts. at 15 (agreeing that the end use of the tiles is the same).

As Commerce's conclusion is supported by the evidence on the record, and it is reasonable to determine that the ultimate use of tile is for flooring or similar surface products, the court concludes that Commerce appropriately analyzed this factor to find that the composite tile is ultimately used in the same way as ceramic tile. See Def.'s Cmts. at 7.

    iv. **Channels of Trade**

Commerce found that composite and ceramic tile are sold in the same channels of trade. Second Remand Results at 8. Commerce also found that many types of tile, regardless of material, are sold in the same channels of trade. Id. Neither Elysium, the Coalition, nor the government dispute this finding. See Pls.' Cmts.; Def.-Interv.'s Cmts. at 15; Def.'s Cmts. at 15.

---

[4] The Coalition notes that, although it does not substantively disagree with Commerce's analysis on the last three factors, it does disagree with Commerce's decision to diminish the importance of these factors because they would be "the same across many types of different materials." Def.-Interv.'s Cmts. at 15 (quoting Second Remand Results at 8).

        **v.**       **Advertising and Display**

Commerce found that both composite tile and ceramic tile are similarly displayed in tile stores and big box stores. Second Remand Results at 8. Commerce further found that Elysium's advertising emphasized both the marble layer and the porcelain layer of its composite tile. See id. No party disputes this finding. See Pls.' Cmts.; Def.-Interv.'s Cmts. at 15; Def.'s Cmts. at 15.

The court determines that Commerce properly considered the (k)(2) factors and reasonably found that the composite tile is not covered by the scope orders. Elysium's composite tile shares some but not all of the physical characteristics of ceramic tile, and users of composite tiles expect to interact with a marble tile. While both composite tile and ceramic tile have similar ultimate uses, are sold in the same channels of trade, and are similarly displayed and advertised, these factors are outweighed by the first two (k)(2) factors.

## CONCLUSION

For the foregoing reasons, Commerce's determination is sustained. Judgment will be entered accordingly.

                                                                     /s/ Jane A. Restani
                                                                    Jane A. Restani, Judge

Dated: October 20, 2025
New York, New York